IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CVS PHARMACY, INC., One CVS Drive, Woonsocket, Rhode Island 02895,<br><br>RITE AID CORPORATION, 30 Hunter Lane, Camp Hill, Pennsylvania 17011,<br><br>RITE AID HDQTRS. CORP., 30 Hunter Lane, Camp Hill, Pennsylvania 17011,<br><br>                Plaintiffs,<br><br>   v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC.,<br><br>                Defendants. | Civ. Action No.: 1:06-CV-00795-CKK<br><br>Judge Colleen Kollar-Kotelly<br><br>JURY TRIAL DEMANDED |

**DEFENDANT WARNER CHILCOTT'S MOTION TO COMPEL
ANSWERS TO INTERROGATORIES AND THE PRODUCTION OF DOCUMENTS**

        Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company, Inc. ("Warner Chilcott") bring this motion to compel CVS Pharmacy, Inc. ("Plaintiff" or "CVS") to produce documents responsive to Warner Chilcott's First Request for Production of Documents Numbers 2, 4, 5, 6, 8, 9, and 18, to compel answers to Warner Chilcott's First Set of Interrogatories Numbers 4 and 5, and to produce any documents responsive to the discovery requests as they apply to Plaintiff's assignor.

**INTRODUCTION**

        CVS refuses to produce documents that are directly relevant to the claims and defenses in this litigation. CVS apparently fails to recognize that by bringing this complex

antitrust action it undertook certain discovery obligations. To date, CVS, one of the largest chain drug stores in the United States, has produced fewer than 70 documents and only 3 spreadsheets and has refused to produce the vast majority of documents requested by Warner Chilcott. CVS has produced documents responsive to only six of Warner Chilcott's twenty-two document requests and has answered only three of Warner Chilcott's nine interrogatories. This production is clearly inadequate.

First, CVS refuses to produce any responsive documents in the custody and control of its assignor, Cardinal Health, Inc. ("Cardinal"). CVS believes it can sue for alleged damages incurred by its assignor without also having to provide discovery on these claims. The law is clear: CVS, as assignee of Cardinal, steps into the position of its assignor for purposes of this litigation and must provide discovery in that capacity.

Second, CVS refuses to produce any documents relating to combined hormonal contraceptives ("CHCs") other than Ovcon 35. With respect to product market definition, Plaintiff erroneously contends that the relevant product market is strictly limited to Ovcon and its AB-rated generic equivalents. (Compl. ¶ 48.) That allegation necessarily contends that Ovcon 35 does not compete with any of the more than sixty-seven other CHC products in the crowded and intensely competitive CHC therapeutic category. Warner Chilcott needs information regarding other CHCs to refute Plaintiff's alleged (and incorrect) market definition. Moreover, in order to calculate any purported damages in this case it is necessary to try to estimate what would have happened if a hypothetical generic Ovcon 35 entered the market in 2004. The only way to do this is to look at the prices Plaintiff paid for other generic CHCs during this time period and Plaintiff's responses to the entry of other generic CHCs. In the related litigation brought by a purported class of third-party payors,

Warner Chilcott, Barr, and the third-party payors have all produced documents and information on other CHCs.[1]  CVS must do so as well.

Finally, CVS has refused to produce any documents regarding its downstream sales of any product, including Ovcon 35.  These documents should be produced because they are clearly relevant to class certification in these coordinated cases.

## BACKGROUND

CVS, Rite Aid Corporation, and Rite Aid Headquarters Corporation filed this lawsuit against Warner Chilcott and Barr Pharmaceuticals, Inc. ("Barr") on May 1, 2006.  CVS brings the action "in its own right and as the assignee of Cardinal."[2]  (Compl. ¶ 2.)  On September 1, 2006, Warner Chilcott served CVS with its First Request for Production of Documents and First Set of Interrogatories ("First Request," attached as Exhibits A and B), seeking the production of routine documents and information regarding Plaintiff's or its assignor's purchase and sale of Ovcon 35 and other CHC products.[3]  CVS served its objections on September 20, 2006.  Plaintiff objected to and narrowed the definition of "you" and "your" set forth in the First Request to eliminate the requirement that it produce documents in the possession of Cardinal, despite the fact that, as the assignee, it is legally obligated to produce such documents.  (Pl. CVS Pharmacy, Inc.'s Resp. to Warner Chilcott's

---

[1]  In addition, Warner Chilcott has moved to compel the consumer plaintiffs to produce documents and information on other CHCs.  (Def. Warner Chilcott's Mot. to Compel the Prod. of Docs. from Indirect Purchaser Consumer Pls., Aug. 7, 2006.)

[2]  In its document production CVS also produced an assignment agreement between it and McKesson Corporation ("McKesson"), executed May 4, 2006.  During a telephonic meet and confer on October 18, 2006, counsel for CVS confirmed that CVS plans to amend its complaint to assert these claims.  If CVS seeks to amend its complaint to bring complaints as McKesson's assignee, and the Court finds such an amendment appropriate under the Federal Rules of Civil Procedure, any arguments in this brief that apply to the production of Cardinal documents will apply to McKesson documents.

[3]  On August 22, 2006, Barr served CVS with a First Request for Production of Documents and First Set of Interrogatories.  However, on August 28, 2006, CVS dismissed all claims against Barr, reserving its claims against Warner Chilcott.

First Request for Prod. of Documents to CVS Pharmacy, Inc. ("Pl.'s Resp.") at Gen. Obj. 7, attached as Exhibit C.)  Plaintiff also generally objected to Warner Chilcott's definition of CHCs, and only produced documents relating to Ovcon 35.  (Pl.'s Resp. at Gen. Obj. 10.)  Finally, Plaintiff raised objections to Request Numbers 2, 4, 5, 8, and 9 and Interrogatory Numbers 4 and 5, wherein Plaintiff claims that what it characterizes as "downstream sales" are not relevant.

On October 18 and 19, 2006, pursuant to L. Civ. R. 7(m), CVS and Warner Chilcott met and conferred regarding CVS's discovery responses.  Warner Chilcott made a further attempt to resolve these issues by its letter dated October 25, 2006.  (Letter from M. Sertich to M. Rebuck, Oct. 25, 2006, attached as Exhibit D.)  CVS, however, has refused to produce the requested information, thereby requiring this motion.[4]

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) permits litigants to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).  It is well-established that relevance is broadly construed.  *See, e.g., Anton v. Prospect Cafe Milano, Inc.,* 233 F.R.D. 216, 218 (D.D.C. 2006).  Plaintiff nevertheless asserts blanket relevance and burden objections to producing information requested by Warner Chilcott.  Such blanket objections as to relevance and burdensomeness do not comply with Fed. R. Civ. P. 34(b) and are disfavored by courts.  *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998).

---

[4] To the extent any of Plaintiff's objections are based on burden, Warner Chilcott has repeatedly offered to discuss limiting the scope of CVS's responses.  However, CVS has been unwilling to discuss any limitation on the scope of these requests and refused to produce any documents or information on these matters.

I.  **Plaintiff/Assignee CVS Must Produce Documents Within the Custody and Control of Its Assignor, Cardinal**

CVS brings claims, in part, as the assignee of Cardinal. (Compl. ¶ 2.) Accordingly, Warner Chilcott is entitled to discovery by CVS of all documents and information within the custody or control of Cardinal. CVS simply cannot be permitted to bring claims by Cardinal without also providing the discovery Cardinal would be required to provide if it was the named plaintiff. Nevertheless, CVS has refused to produce relevant documents from its assignor.

It is black letter law that when claims are assigned from one party to another, the assignee must stand in the same position as the assignor. *Nat'l Union Fire Ins. Co. v. Riggs Nat'l Bank*, 5 F.3d 554, 556 (D.C. Cir. 1993). The assignee is subject to any defense available to the opposing party against the assignor. *Ned Chartering & Trading, Inc. v. Republic of Pak.*, 294 F.3d 148, 153 (D.C. Cir. 2002); *see also Univ. Creek Assoc. v. Boston Am. Fin. Group, Inc.*, 100 F. Supp. 2d 1337, 1341 (S.D. Fla. 1998) ("The assignee steps into the shoes of the assignor and is subject to all equities and defenses that could have been asserted against the assignor had the assignment not been made."). Thus, by executing the assignment agreement with Cardinal with respect to the claims in this case, CVS steps into the shoes of Cardinal and must litigate the case as such.

Courts have consistently held that assignees such as CVS must also assume the position of their assignors in the discovery process. *See, e.g., JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005) ("It is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees . . . free of the obligations that go with litigating a claim."). As one court recently noted: "Treatment of both assignor and assignee as parties for *discovery* . . . is proper when to do otherwise would frustrate discovery, regardless of whether this frustration is intentional or not." *In re Infant Formula Antitrust Litig.*, 1992 WL503465, *9-10 (N.D. Fla. Jan. 13, 1992) (internal citation omitted); *see also*

*Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 149 (S.D.N.Y. 1997) ("It would be patently unfair if [the assignee] were able to continue to discover relevant information from [defendant] while relegating [defendant] to seek information from [assignor] as a non-party"); *Firemen's Mut. Ins. Co. v. Erie-Lackawanna R.R. Co.*, 35 F.R.D. 297, 299 (N.D. Ohio 1964) (where plaintiff/assignee refused to produce information from the assignor to defendant, the court stated that such a refusal "would not be just, in that plaintiff would be entitled to obtain from defendant information which the defendant might possess as to the operative facts of the action, whereas defendant would be denied the same opportunity of inquiry to the plaintiff"). To hold otherwise simply would be inequitable, allowing the assignee to reap the rewards of a claim without any of the associated burdens or costs.

In *JPMorgan Chase*, discovery was imposed upon JPMorgan, the agent of debt assignees and debt owners. The court held that the real parties in interest, the debt assignees, the debt owners, and JPMorgan had "the duty to produce documents, information, and witness testimony to which defendants would be entitled in discovery from parties under the Federal Rules of Civil Procedure, just as if the [assignors] had brought this action themselves on their own claims." 228 F.R.D. at 507. The court further held that the discovery could be accomplished by serving discovery requests on JPMorgan because "the assignees are suing in the shoes of the original lenders . . . [and therefore] there is nothing unfair about imposing on them the cost of purchasing cooperation or otherwise complying with discovery obligations."[5] *Id.*

---

[5] At the very least, Warner Chilcott asks the Court to name Cardinal as a party to this suit for the purposes of discovery. *In re Infant Formula*, 1992 WL503465 (holding that assignors were to be treated as parties for the purpose of discovery); *Jee v. Hanil Bank, Ltd.*, 104 B.R. 289, 296 (Bankr. C.D. Cal. 1989) (recognizing that real parties in interest may be deemed "to be a party for the limited purpose of conducting discovery").

In this case, CVS is suing for claims originally held by Cardinal. As a result, Warner Chilcott is entitled to documents and information concerning these claims and defenses, even if they are within the control of Cardinal. To allow CVS to bring claims it has been assigned by Cardinal and not allow Warner Chilcott to discovery relating to these claims would be patently unfair.

## II. Information Regarding Other CHCs Is Relevant and Must Be Produced

Information pertaining to other CHC products is directly relevant to the central issues of this case. Accordingly, Warner Chilcott, Barr, and the third-party payor plaintiffs have not limited their production of documents and information solely to Ovcon 35 but have all produced documents relating to other CHCs. Plaintiff CVS must do the same.

According to Plaintiff, the appropriate market definition under which to analyze the legality of the agreement at issue in the complaint is strictly limited to "Ovcon and its generic equivalents." (Compl. ¶ 48.) Plaintiff provides no support for this alleged market. Under well-settled antitrust jurisprudence, to determine whether Ovcon 35 competes only with its generic or, in fact, competes with other CHCs, the Court must evaluate whether other CHCs are reasonably interchangeable with Ovcon 35. *See, e.g.*, *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 119 (D.D.C. 2004) ("In determining relevant product markets, courts have traditionally emphasized two factors: the reasonable interchangeability of use by consumers and the cross-elasticity of demand between the product itself and substitutes for it.") (internal citations omitted). As a matter of basic fairness, Plaintiff may not unilaterally define the relevant product market and then stymie efforts by Warner Chilcott to obtain discovery that is necessary to challenging Plaintiff's preferred definition.

Second, information regarding other CHCs is also relevant to Plaintiff's claimed injury. Plaintiff seeks damages in the form of overcharges it allegedly paid for Ovcon 35. (Compl. ¶ 50.) Here, to calculate any alleged overcharge damages, Plaintiff must

establish what would have happened in the "but-for world"—*i.e.*, what would have happened if a generic version of Ovcon 35 entered in 2004. A most common method of doing this is by using generic sales and substitution information of other CHCs as a yardstick. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 322-23 (E.D. Mich. 2001) (where plaintiffs sought overcharge damages for brand drug purchases that would have been substituted with generic drug purchases, an appropriate yardstick to determine overcharge damages was a single drug and its AB-rated generic or "an appropriate set of drug products that have gone off patent").

In order to calculate what if any damages Plaintiff or its assignor suffered Warner Chilcott must estimate: (1) the price of a hypothetical generic Ovcon 35; (2) the percentage of Ovcon 35 purchases that would have been replaced with generic Ovcon 35 purchases; and (3) the percentage of Ovcon 35 purchases that would have been replaced with sales of other brand and generic CHCs. In order to do this, Warner Chilcott needs discovery on: (1) prices CVS has paid for other generic CHCs; and (2) CVS's purchasing patterns of other CHCs. This information can be obtained only by looking at the CHC market as a whole and not in reference to a single product. The "but-for world" simply cannot be determined without reference to other CHCs. Accordingly, information regarding other CHCs is relevant to the calculation of damages and must be produced.

### III. Information Relating to CVS's Downstream Sales of Ovcon are Relevant and Must Be Produced

CVS claims that pricing and other data regarding CVS's downstream sales of Ovcon 35 are not relevant to this coordinated litigation. However, CVS's case has been coordinated with the indirect purchaser suits for the purposes of discovery. (*See* Amended Case Management Order ("ACMO"), Case 1:05-cv-02195-CKK, entered June 30, 2006 (coordinating state, direct purchaser, third-party payor, and consumer cases for pretrial purposes)). The Amended Case Management Order specifically requires all private parties

and defendants to "use their best efforts to cooperate with each other." (ACMO ¶ 15.) To minimize duplicative discovery requests, CVS should disclose the requested documents that are relevant to the coordinated indirect purchaser suits. *In re Qwest Communications Int'l*, 450 F.3d 1179, 1183 (10th Cir. 2006) (recognizing where there are numerous cases pending, coordinated discovery agreements would require disclosure of documents to all opposing parties). Withholding this information inappropriately delays and frustrates the discovery process.

The documents and information sought by Warner Chilcott are clearly relevant to the issue of whether class certification is appropriate in the indirect purchaser actions filed by the third-party payors and the consumers. Class certification would be appropriate only if the moving party can meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 106 (D.C. Cir. 2002). The documents and information Warner Chilcott requests are relevant to the issue of typicality, and are therefore discoverable. This downstream sales data is particularly relevant and important in class action cases because it can demonstrate "significant differences in the product market for different purchasers, such that individual issues overwhelm any common issues and render class certification inappropriate." *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 460 (D. Kan. 2006). In *In re Urethane*, the plaintiffs purported to represent a class alleging a price-fixing conspiracy among defendants in the market for polyether polypol products. In granting the defendants' motion to compel downstream data discovery, the court reasoned that "documents concerning changes in supply, demand, pricing, and discounting" were "necessary to establish or refute whether class members' claims share common questions of law and fact and whether named Plaintiffs' claims are typical of those of other class members." *Id*. at 459-60; *see also Valley Drug Co. v. Geneva Pharm.*, 350 F.3d 1181 (11th Cir. 2003) (reversing the certification of

the class because district court precluded "downstream discovery" that was critical to determining whether or not a conflict existed between the named and unnamed members of the wholesaler class).

In the case of indirect plaintiffs, downstream data is particularly relevant to determining the propriety of class certification. Whether consumers substitute a given product with a fungible alternative may affect "whether Plaintiffs will be able to establish that the alleged conspiracy had a class-wide impact." *In re Urethane*, 237 F.R.D. at 461; *Alaska v. Suburban Propane Gas Corp.,* 1995 WL 441987, at *7-8 (D. Alaska Jan. 12, 1995) (denying class certification where the relevant product had varying uses and some putative class members had available substitutes for some of the uses). Second, the downstream sales data requested from CVS may show that consumers paid varying amounts because: (1) cash paying consumers pay different prices depending on their locality; and (2) insured consumers pay different co-pays depending on their health insurance plans. *See Kenett Corp. v. Mass. Furniture & Piano Movers Ass'n.*, 101 F.R.D. 313 (D. Mass. 1984) (denying class certification where there was no apparent uniform supra-competitive price for a fungible product). The variation in prices paid for Ovcon, as well as the availability of fungible substitutes in the CHC market, may preclude a finding of typicality and class-wide impact, and therefore such information is discoverable. Similarly, the third-party payors have drastically different rates at which they reimburse Ovcon 35 due to the nature of their contracts with retailers or the volume of Ovcon 35 dispensed to their plan beneficiaries. Such differences in the prices paid for Ovcon 35 are also directly relevant to whether the putative classes of indirect purchasers should be certified. As a party to these coordinated cases, CVS should produce information and documents that would otherwise be perfectly appropriate to request from CVS as a non-party to the indirect plaintiff cases, especially because only CVS has this information, not the consumers or third-party payors.

## CONCLUSION

For the foregoing reasons, Warner Chilcott respectfully requests that the Court order CVS to produce documents and information responsive to Warner Chilcott's Document Request Numbers 2, 4, 5, 6, 8, 9, and 18, to compel answers to Warner Chilcott's Interrogatories Numbers 4 and 5, and to produce any documents responsive to the discovery requests as they apply to Cardinal.

Date:   October 27, 2006                Respectfully submitted,


/s/ Peter C. Thomas
Peter C. Thomas (D.C. Bar # 495928)
SIMPSON THACHER & BARTLETT LLP
601 Pennsylvania Avenue N.W.
Washington, D.C.  20004
(202) 220-7700
(202) 220-7702 (fax)

Charles E. Koob, *pro hac vice*
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017
(212) 455-2000
(202) 455-2502 (fax)

***Counsel for Warner Chilcott Defendants***