IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CVS PHARMACY, INC., <br> RITE AID CORPORATION, <br> RITE AID HDQTRS. CORP, <br>     Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS CO. III, INC., <br> WARNER CHILCOTT CORP., WARNER <br> CHILCOTT (US), INC., WARNER CHILCOTT CO., <br> INC., and BARR PHARMACEUTICALS, INC. <br>     Defendants. | CIVIL ACTION <br> No. 06-00795-CKK <br><br> Judge Colleen Kollar-Kotelly <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM OF PLAINTIFF CVS PHARMACY, INC. IN OPPOSITION
TO DEFENDANT WARNER CHILCOTT'S MOTION
TO COMPEL ANSWERS TO INTERROGATORIES AND
<u>THE PRODUCTION OF DOCUMENTS</u>**

Plaintiff CVS Pharmacy, Inc. ("CVS") respectfully submits this memorandum in opposition to the Warner Chilcott defendants' (collectively "Warner Chilcott") Motion to Compel Answers to Interrogatories and the Production of Documents ("Motion to Compel") (Dkt. No. 39, filed, Oct. 27, 2006).

## BACKGROUND

On October 25, 2006, two days before filing the subject Motion to Compel, counsel for Warner Chilcott sent correspondence to counsel for CVS that issued an ultimatum to CVS that it either withdraw its objections by the end of the following day or Warner Chilcott would file a motion to compel. Consistent with its obligations under the Federal and Local Rules of Civil Procedure, counsel for CVS responded to Warner Chilcott the very next day, October 26, 2006. In a three page single-spaced letter, CVS set forth in detail the bases for its objections

to Warner Chilcott's discovery and requested more information regarding the bases for Warner Chilcott's requests. (*See* Letter from Ms. Rebuck to Ms. Sertich (Oct. 26, 2006) (attached hereto as Ex. "A")). Rather than attempting to resolve the discovery disputes by providing that requested information, as required by the Federal and Local Rules of Civil Procedure, Warner Chilcott filed this Motion to Compel the very next day.[1]

Warner Chilcott's Motion to Compel seeks three categories of documents.[2] First it seeks documents from CVS that are in the possession of Cardinal, CVS's wholesaler. Cardinal assigned its claims to CVS with respect to CVS's purchases. Second, Warner Chilcott seeks so-called downstream sales data from CVS. Third, Warner Chilcott seeks information regarding 67 different Combined Hormonal Contraceptive ("CHC") products.

Warner Chilcott is not entitled to any of this discovery on the present record. CVS cannot be compelled to produce documents in the possession of its wholesaler without any showing that CVS has any control over those documents. This District and other district courts in the Circuit have unambiguously concluded that downstream discovery is not available from an antitrust plaintiff suing as a direct purchaser. Finally, the discovery relating to 67 different CHC products is of doubtful relevance, overbroad, and unduly burdensome. Accordingly, Warner Chilcott's Motion to Compel must be denied.

---

[1] Warner Chilcott's failure to make reasonable efforts to resolve the issues in dispute, as required by Local Rule 7(m), is alone sufficient reason to deny Warner Chilcott's motion. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006) ("The obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation.").

[2] Warner Chilcott's Motion to Compel seeks "documents responsive to Warner Chilcott's First Request for Production of Documents Numbers 2, 4, 5, 6, 8, 9, and 18 . . . . answers to Warner Chilcott's First Set of Interrogatories Numbers 4 and 5, and . . . . any documents responsive to the discovery requests as they apply to Plaintiff's assignor." (*See* Def. Br. at 1.)

2

## ARGUMENT

### A. CVS Cannot Be Compelled to Produce Documents That Are Not Within Its Possession, Custody or Control.

Warner Chilcott seeks responsive documents not only from CVS, but also from non-party Cardinal Health, Inc. ("Cardinal), a wholesaler that assigned claims relevant to this litigation to CVS. (*E.g.*, Def. Br. at 5.)

Preliminarily, Warner Chilcott does not specify what it wants CVS to obtain from Cardinal. It only says that CVS should produce "the discovery Cardinal would be required to provide if it was the named plaintiff." (Def. Br. at 5). But Cardinal is not the named plaintiff or CVS's alter ego. CVS has already provided discovery about its purchases from Cardinal, and Warner Chilcott makes no attempt to explain what more it needs. On this record, Warner Chilcott has not established its entitlement to anything more from Cardinal.

In any event, the Federal Rules of Civil Procedure require a party served with a request for production of documents to produce only those documents "which are in the possession, custody or control of the party upon whom the request is served." FED. R. CIV. P. 34(a). Here, Warner Chilcott seeks to impose upon CVS a burden far exceeding the scope of Rule 34 by demanding that it obtain documents within the custody and control of non-party Cardinal. The cases proffered by Warner Chilcott in support of its interpretation of Rule 34 do not support the relief it has requested.

#### 1. A Party May Only Be Compelled to Produce Documents That It Has a Legal Right, Authority, or Ability to Obtain.

Rule 34(a) of the Federal Rules of Civil Procedure provides: "Any party may serve on any other party a request [for] . . . any designated documents . . . which are in the possession, custody, or control of the party upon whom the request is served." FED. R. CIV. P. 34(a). The party seeking to compel compliance with Rule 34 bears the burden of proving that

3

the opposing party has control over the object of discovery. *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 77 (D.D.C. 1999) (*citing United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)). Warner Chilcott failed to sustain this burden. In fact, its argument that "Warner Chilcott is entitled to discovery by CVS of all documents and information **within the custody or control of Cardinal**," (Def. Br. at 5), concedes that it is seeking information that, by the plain terms of Rule 34, CVS is not obligated to produce.

In this District, "[i]t is well-established that 'control,' which is defined not as possession, but as the legal right to obtain documents on demand, is the test as to whether production is required." *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 299, 301 (D.D.C. 2000) (citations omitted); *see also McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999) ("Under Rule 34, the term control generally addresses the legal right, authority, or ability of the party to whom/which the Rule 34 request is directed to exercise lawful possession over the . . . documents at issue.") (citations omitted). Warner Chilcott has not identified any legal right, authority, or ability of CVS to exercise lawful possession over the documents at issue. *McKesson Corp.*, 185 F.R.D. at 78; *see also Sithon Maritime Co. v. Mansion*, No. CIV. A. 96-2262-EEO, 1998 WL 182785, at *6 (D. Kan. Apr. 10, 1998) (denying motion to compel as the moving party had offered "nothing of substance" to show the requisite control over documents held by a separate legal entity).

The cases from outside this District upon which Warner Chilcott relies do not compel a different conclusion. *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507 (S.D.N.Y. 2005), is unavailing. Significantly, the case does not apply the "legal right to obtain test" utilized in this District. Moreover, the case involved practical issues that are not

4

present here. In *Winnick*, the plaintiff brought claims on behalf of dozens of entities, leading the court to reason:

> The burden of these discovery obligations is not insubstantial. Many of the original lenders are located outside the United States and thus beyond the subpoena power of the Court. Even in connection with some domestic parties that are not within the immediate power of this Court, defendants would have to persuade courts in other districts, unfamiliar with the litigation, to enforce subpoenas.

*Id.* Such complexities simply do not apply in this case. Warner Chilcott seeks documents from a single assignor which would be subject to a properly issued subpoena.

The unpublished decision in *In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *9-10 (N.D.Fla. Jan. 13, 1992), is similarly inconsistent with the case law in this District concerning the limits of the reach of Rule 34 to documents under a party's "control." Moreover, the assignee in *Infant Formula* was not another corporation in the distribution chain of the product relevant to the antitrust litigation (as in this case), but was a government entity with no direct connection to the litigation and which was unable to produce any documents relevant to the transactions at issue on its own. *See id .at* *9-10.

Because CVS cannot be found on the record presented by Warner Chilcott to exercise "legal control" of Cardinal's documents, Warner Chilcott's motion must be denied.

### 2. The Motion to Compel Should Also Be Denied Because of the Inequity of Enforcing Any Order that the Court Might Issue.

"[E]ven under the most expansive interpretation of 'control,' the 'practical ability' to demand production must be accompanied by a similar ability to enforce compliance with that demand." *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 520 (D. Colo. 2003). Here, it would be inequitable to sanction CVS if it were unable to secure documents in the custody of its wholesaler. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-1108 (9th Cir. 1999); *see*

5

*also Fonseca v. Regan*, 734 F.2d 944, 948 (2d Cir. 1984) ("[W]here the information sought is not properly discoverable, it is axiomatic that a district court should not impose a Rule 37 sanction for a party's failure to comply with an order to reveal such information."); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("[T]he fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody or control; in fact it means the opposite."). Obligating CVS to seek a protective order upon failing to obtain its wholesaler's cooperation would impose a burden not contemplated by the Federal Rules. *In re Citric Acid Litig.*, 191 F.3d at 1108.

Significantly, there is no reason to believe that Warner Chilcott's discovery efforts are being frustrated here. CVS is a participant in the market for the purchase and sale of prescription drugs and has produced documents responsive to Warner Chilcott's requests. Warner Chilcott's argument that equity requires that its Motion to Compel be granted, (*e.g.*, Def. Br. at 6), rings hollow. A subpoena under Rule 45 offers the appropriate mechanism by which Warner Chilcott can obtain the material that it seeks. Moreover, this mechanism minimizes the burdens on non-party Cardinal and provides it with the ability to protect its own interests instead of relying upon CVS to do so.[3]

**B. Downstream Sales Data Is Not Relevant To Any Issue In This Case and Is Extremely Burdensome.**

Warner Chilcott seeks documents and data from CVS concerning its sales to its customers, including confidential third-party payor contracts and data concerning CVS's sales to

---

[3] Warner Chilcott suggests in passing that the Court "name Cardinal as a party to this suit for the purposes of discovery." (Def. Br. at 6 & n.5.) It is unclear whether Warner Chilcott intended this suggestion to be a formal request for such relief. This relief does not appear in the summary of relief requested (*see* Def. Br. at 11.), and it does not appear that Warner Chilcott served Cardinal with a copy of the Motion to Compel. To the extent that Warner Chilcott properly serves such a request for relief, CVS will provide supplemental briefing.

customers. Efforts to obtain such downstream discovery have been denied as irrelevant by courts in this Circuit. Even if such downstream discovery were ever appropriate, the downstream discovery sought by Warner Chilcott is unduly burdensome and should be denied.

1. **Downstream Discovery Is Not Relevant.**

Under well-established precedent of the Supreme Court, direct purchasers are entitled to recover the full amount of an overcharge and any "downstream" effects of the overcharge – including the direct purchaser's own sales and profits – are irrelevant as a matter of law.[4] *See Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). S*ee also In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 (M.D. Pa. 2005) (listing cases where courts have disallowed discovery of downstream sales data).

As a result, this District has unambiguously concluded that efforts to obtain downstream discovery, like those of Warner Chilcott, should be denied. In *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000), the court denied such requests and observed that "no court has ever allowed production of individualized downstream data." Other courts in this Circuit that have considered the issue have also concluded that downstream discovery from a

---

[4] CVS has asserted a claim under Section 1 of the Sherman Act and Section 4 of the Clayton Act. As in virtually all federal antitrust cases brought by direct purchasers, CVS seeks to recover illegal overcharges it paid as a result of the absence of competition that flowed from the delay in the availability of generic Ovcon. The Supreme Court endorsed this measure of damages nearly 100 years ago. *See Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S 390, 396 (1906). An overcharge is "the difference between the price paid and the market or fair price that the [plaintiff] would have had to pay under natural conditions" if the antitrust violation had not occurred. *Id*. No additional information is relevant or admissible in determining the amount of an illegal overcharge. Specifically, the defendant is not permitted to introduce evidence that the actual harm suffered by the plaintiff is less than the full overcharge because the plaintiff recovered some of the overcharge from its own customers in the form of higher prices. *Hanover Shoe*, 392 U.S. at 494.

7

direct purchaser is irrelevant as a matter of law. *See In re Automotive Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2006 WL 1479819 at *8 (E.D. Pa. May 26, 2006) ("[W]e will deny Defendants' request that we depart from the long-held practice of proscribing discovery of downstream data and financial information."); *Pressure Sensitive Labelstock*, 226 F.R.D. at 498 (rejecting defendants' arguments to take downstream discovery).

And, the prevailing rule outside of this Circuit is also that downstream discovery from a direct purchaser is irrelevant and not available as a matter of law. *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578, 578 (D. Minn. 1990) (plaintiff's financial information irrelevant in overcharge case); *Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.*, 508 F. Supp. 200, 206 & n.12 (N.D. Ill. 1981) (defendants' pass-on defense stricken and related downstream discovery terminated); *In re Folding Carton Antitrust Litig.*, No. MDL 250, 1978 U.S. Dist. Lexis 20409, at *9 (N.D. Ill. May 5, 1978) ("Whether purchasers absorbed, passed-on, or made a profit on the overcharges in comparison with the industry generally is irrelevant, and investigations into such matters are proscribed by Illinois Brick.").[5]

---

[5] Warner Chilcott relies on *Valley Drug Co. v. Geneva Pharmaceuticals Inc.*, 350 F.3d 1181 (11th Cir. 2003). That case is an anomaly and contrary to the case law of this circuit. It is contrary to the Third Circuit's holding in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977), that inquiries into the "net economic" or downstream effects of an overcharge are irrelevant to class certification. Moreover, even were this Court not bound by *Bogosian*, the reasoning of *Valley Drug* is seriously flawed. There, the Eleventh Circuit reasoned that there could be a conflict between members of a direct purchaser class based on whether some benefited and others were hurt by generic competition. Even if there were some wholesalers that benefited and others that lost from generic competition, *Illinois Brick* and *Hanover Shoe* entitle all wholesalers to recover the entire overcharge regardless of whether they passed on some or all of the overcharge. As a result, the supposed "conflict" that *Valley Drug* identified is legally irrelevant. Finally, the downstream discovery that Warner Chilcott seeks from CVS would not be relevant to whether conflicts exist in the class in any event. CVS has chosen to opt out of the class, and its sales to its retail customers would provide nothing relevant to whether there were conflicts among the wholesalers in the direct purchaser class.

8

Apparently recognizing the extent of the authority in this Circuit prohibiting downstream discovery from direct purchasers, with respect to damages and direct class certification, Warner Chilcott argues that the downstream discovery that it seeks is "relevant to the issue of typicality" with respect to the question as to whether class certification of the *indirect* purchaser action is appropriate. (Def. Br. at 9.) It claims that downstream data discovery is appropriate in this case because "the variation in prices paid for Ovcon, as well as the availability of fungible substitutes in the CHC market, may preclude a finding of typicality. . .." *Id.* Warner Chilcott's argument is factually and legally flawed.

As a factual matter, the downstream discovery sought by Warner Chilcott could not have any relevance to class certification issues related to the third-party payor and consumer class cases. For a majority of the time period for which Warner Chilcott seeks information about CVS's sales to its retail customers, there was no generic on the market since generic Ovcon did not launch until about a month ago. Nevertheless, Warner Chilcott seeks downstream discovery going back to January 2000. (*See* Def. Ex. A, Instruction No. 20) No amount of downstream discovery would show a difference in the retail prices charged for branded versus generic Ovcon because, as a result of Warner Chilcott's illegal scheme, no generic version of Ovcon was on the market until a month ago.

As a legal matter, this Court has made it clear that under Rule 23, typicality is met if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability. *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27-28 (D.D.C. 2001). Here, the claims of the proposed classes arise from the anticompetitive scheme perpetrated by Warner Chilcott. Typicality is met because the overarching scheme is the

9

linchpin of the class complaint. Varying amounts of damage sustained by individual members of the putative class "do not negate a finding of typicality, provided the cause of those injuries arises from a common wrong." *Id.* at 28.

Furthermore, to the extent that Warner Chilcott seeks downstream discovery from CVS for use in the third-party and consumer class case, CVS is not a party to either of those cases. As a result, Warner Chilcott should have to meet Rule 45's standards to obtain downstream discovery for purposes of evaluating those class claims. *Vitamins*, 198 F.R.D. at 299.[6] Under those standards, a party "has a duty to take reasonable steps to avoid imposing undue burden or expense on the person subpoenaed." MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL 4TH") § 11.447 (Supp. 2006); *see also Zukoski v. Philadelphia Elec. Co.*, No. CIV. A. 93-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994) ("It is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery."). Before resorting to subpoena, the party should consider "the possibility of acquiring the needed information . . . from other sources." MCL 4TH §21.447.

Here, not only can Warner Chilcott obtain third-party contracts and purchase data from the indirect class representatives, but, as Warner Chilcott well knows, comprehensive data reflecting prices paid by end payors is compiled by data vendors such as IMS. *See e.g., In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (recognizing that IMS is "the recognized industry leader in data collection for the pharmaceutical industry"). This is data

---

[6] Warner Chilcott attempts to justify its request by lifting out of its context a clause in the Amended Case Management Order ("ACMO"), arguing that it "specifically requires all private parties and defendants to 'use their best efforts to cooperate with each other.'" (Def. Br. at 9.) This argument is unavailing. First, this paragraph makes clear that the parties should use their best efforts to cooperate with each other "to avoid duplicating prior discovery requests." ACMO
(continued...)

that Warner Chilcott already has or could easily obtain. Such industry-wide data has been found to be preferable over the kind of burdensome individualized downstream discovery such as that sought by Warner Chilcott here. *See, e.g., Vitamins*, 198 F.R.D. at 299-300. Given this, and given that the Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive discovery that such an inquiry would entail, the marginal relevance of the information sought is clearly outweighed by the burden and expense that the proposed discovery would impose. *Pressure Sensitive Labelstock*, 226 F.R.D. at 497-98 (citing *Hanover Shoe*, 392 U.S. at 494).

2. **The Downstream Discovery Sought Is Unduly Burdensome.**

Even if it had some relevance, the downstream discovery sought by Warner Chilcott is so burdensome that it should be denied.

Rule 26(b)(1) of the Federal Rules of Civil Procedure was "designed to encourage district judges to identify instances of needless discovery and to limit the use of the various discovery devices accordingly." FED. R. CIV. P. 26(b)(1) advisory committee notes to 1983 amendments.[7] Federal district courts are given broad discretion to limit discovery where the

---

(continued...)

¶ 15. That is not an issue here. Second, nothing in the ACMO provides that a party's cooperation requires it to cede its rights under the Federal Rules of Civil Procedure.

[7] Rule 26(b)(1) provides that the "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). Rule 26(b)(1) was amended in 2000, in part to address overbroad discovery based upon the prior wording of the Rule which referred to "subject-matter of the action" by focusing the attention of both the parties and the Court on the actual claims and defenses involved in the suit in determining the proper scope of discovery. *See* FED. R. CIV. P. 26(b)(1) advisory committee notes to 2000 amendments.

burden or expense of the proposed discovery outweighs its likely benefit. It is within the sound discretion of courts to preclude discovery where on balance the burden outweighs the relevance of the discovery sought. *See id.*

Here, producing the requested downstream sales information would be a substantial undertaking. CVS currently has 6,200 stores in 43 states. Last year, CVS pharmacies filled over 433 million prescriptions. Responding to the downstream sales requests would require CVS to gather six years worth of CVS's prescription sales data. Because this data is not organized by drug, in order to obtain the requested data, a program would have to be written to search the relevant files and extract information. Furthermore, some of the requested data is now stored only in archives. To obtain that archived data, the entire year's worth of sales data would have to be reconstructed before the relevant data could be extracted. Clearly, the limited relevance this data would have is greatly outweighed by the enormous efforts that CVS will have to undertake to gather the requested information.

Although it would be extremely burdensome for CVS to collect this data, its utility to Warner Chilcott is questionable. CVS's sales account for only a small portion of the national sales of Ovcon. As a result, unless Warner Chilcott intends to subpoena all other retail pharmacies in the country, the data is of limited use.

The third-party payor contracts would also be of limited use to Warner Chilcott since CVS can only provide contracts to which it is a party.[8] Warner Chilcott can get a much more complete set of third-party contracts from representative third-party payor class members and from managed care entities that it has subpoenaed. In this respect, Warner Chilcott's motion

---

[8] CVS would also be forced to address the confidentiality provisions that appear in many of its third-party contracts.

is silent as to whether it has been able to obtain any of the information sought from CVS from the class representatives or other subpoenaed parties. If it has, there is no reason to put CVS to the burden and expense of reproducing that same information, especially when Warner Chilcott does not seek it for any use in CVS's case.

For all of these reasons, the Court should deny Warner Chilcott's Motion to Compel this downstream sales data. *See Vitamins*, 198 F.R.D. at 301 ("[T]he proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry [Warner Chilcott's] burden of showing that this information ought to be produced by the direct purchasers."); FED. R. CIV. P. 45(c)(1).

### C. Discovery of 67 Different Combined Hormonal Contraceptives is Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence and Its Production Imposes an Undue Burden on CVS.

Warner Chilcott has requested that CVS produce a broad range of documents for 67 separate CHC products (Def. Br. at 2). The documents and data sought are, at best, minimally relevant to this case. (*See* Def. Ex. A, Request Nos. 4-6, 8.) At the same time, these CHC requests are overbroad and unduly burdensome.

By way of example, Request No. 4 seeks, *inter alia*, all "documents identifying the prices you charge for all of the Combined Hormonal Contraceptives you sell" for the time period January 2000 to the present (*Id.* at Request No. 4, Instruction No. 20.) As described above, CVS pharmacies fill several hundred million prescriptions each year. Responding to this request would require CVS to extract from its data six years worth of pricing data for 67 CHC products, and some of that data would have to be reconstructed from archive tapes before it could be extracted. The burden would not stop there. Because the request is so broad, it would also call for the production of documents at the store level that relate to each of the relevant transactions. And it would call for the production of documents and data regarding

13

reimbursements, co-payments and other monies received from third-party payors. The sheer magnitude of this request is daunting.[9]

At the same time, the relevance of this burdensome discovery is doubtful. Warner Chilcott claims that this discovery is necessary to define the relevant market. That simply is not true. Defining a relevant market and showing that the defendant has a dominant share of that market is just one way to establishing that a defendant has market power. An antitrust plaintiff can show directly that the defendant has in fact profitably raised prices substantially above the competitive level, which is defined as the level at which price equals marginal cost. *See United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001); *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Here, information already obtained in discovery shows that Ovcon was priced well above marginal cost. As such, a relevant market analysis will not be necessary to show Warner Chilcott's market power.

Even if defining a relevant market were necessary, however, the focus of that analysis should be upon the entire market for the products at issue, not the limited subset that CVS could provide with great difficulty. Warner Chilcott alludes to the possibility of using the requested information to determine whether there is a cross-elasticity of demand between Ovcon and the CHC products. (Def. Br. at 7.) A cross-elasticity of demand analysis examines whether a price increase on one product relative to the other results in higher total sales of the other product. If such a pattern is found, one explanation is that consumers have shifted their

---

[9] Warner Chilcott's Motion to Compel also seeks three additional categories of discovery related to CHC products (Request Nos. 5, 6 and 8), thus multiplying the burden that would be associated with producing the requested CHC discovery.

purchases between the two products. The CHC data that Warner Chilcott seeks from CVS is not appropriate for such a study.

First, in order to be useful, a cross-elasticity study must be performed using total sales volumes across the relevant geographic market (in this case, the United States). Otherwise, there is no way to determine whether an increase in sales volume represents a shift in demand from product A to product B or simply a shift from one retail outlet to another. For example, suppose that CVS's purchase data shows an increase in purchases of Ovcon some time after a price increase on Seasonale (with no corresponding price increase on Ovcon). Without nationwide data, there is no way to know whether this increase in purchases reflects the fact that former Seasonale patients are now taking Ovcon instead or simply the fact that existing Ovcon patients are now getting their prescriptions filled at CVS rather than somewhere else. The only way to avoid this problem is to obtain data showing total sales of Ovcon and Seasonale in the United States, either from the manufacturers or from third-party vendors like IMS Health. Such data is available to Warner Chilcott should it choose to obtain it.

Second, cross-elasticity studies using current prices are irrelevant if there is reason to believe that current prices are supracompetitive. Basic economic theory dictates that a firm with market power will raise prices to the profit-maximizing level. Under these circumstances, any *further* price increases will cause consumers to shift their purchases to other products, indicating that there is a positive cross-elasticity of demand between the monopolist's product and other products. But this does not mean that the monopolist lacks market power; it simply means he has already exercised it. Inferring a lack of monopoly power in these circumstances is known as the Cellophane fallacy, and it has been recognized as a fallacy by the Supreme Court and by lower courts. *See Eastman Kodak Co. v. Image Technical Services, Inc.,*

504 U.S. 451, 471 (1992) ("The existence of significant substitution in the event of *further* price increases . . . does not tell us whether the defendant *already* exercises significant market power") (quoting P. Areeda & L. Kaplow, ANTITRUST ANALYSIS ¶ 340(b) (1988)) (emphasis in original); *United States v. Aluminum Co. of America*, 148 F.2d 416, 426 (2d Cir. 1945) ("[S]ubstitutes are available for almost all commodities, and to raise the price enough is to evoke them.").

Equally as flawed is Warner Chilcott's claim that data related to CHC products is necessary in order to calculate damages. According to Warner Chilcott, the "only way" to determine what prices CVS would have paid for generic Ovcon and what CVS's "response" would have been to generic Ovcon entry would be to look at that information for other CHC products with generic entry in 2004. (Def. Br. at 2.) Warner Chilcott is wrong that utilizing data related to generic CHC launches in 2004 is the "only way" to construct a damage model. There are far superior ways to construct a damage model. In particular, data concerning the launch of generic Ovcon is now available. Barr finally has launched its generic Ovcon product last month. Accordingly, CVS now has available to it information regarding pricing and market response to generic Ovcon -- the very product at issue here. That is far superior data than anything that could result from a fishing expedition that would require the collection of documents and data concerning 67 different products.

Furthermore, Warner Chilcott's argument does not support the production of the discovery it seeks. Warner Chilcott is not seeking information regarding specific CHC products for which generic competition began in 2004. It has not even identified whether any such products exist. Rather, Warner Chilcott is seeking data on all 67 CHCs for a period beginning in

2000. There is an obvious disconnect between the argument advanced by Warner Chilcott and the discovery sought -- a disconnect that Warner Chilcott does not even attempt to justify.[10]

Given the limited relevance of the CHC discovery to this case and the enormous burden of producing it, CVS respectfully requests that the Court deny Warner Chilcott's Motion to Compel.

---

[10] Warner Chilcott also appears to argue that CVS should have to produce this CHC discovery because some other parties have produced it. (*See* Def. Br. at 7.) This argument completely ignores the fact that the burden associated with producing CHC information may vary substantially from party to party. While the burden associated with the third-party payors producing this information may not have been substantial, as demonstrated above, the burden to CVS would be enormous. Therefore, in the case of CVS, the limited relevance of the requested CHC data is greatly outweighed by the burden of producing it.

## CONCLUSION

For the foregoing reasons, CVS respectfully requests that the Court deny Warner Chilcott's Motion to Compel in its entirety.

                                         Respectfully submitted,

                                         s/ Robert D.W. Landon III
                                         Robert D.W. Landon III
                                         KENNY NACHWALTER P.A.
                                         1100 Miami Center
                                         201 South Biscayne Boulevard
                                         Miami, FL 33131
                                         Telephone: (305) 373-1000
                                         Facsimile: (305) 372-1861

OF COUNSEL:

Steve D. Shadowen
Monica L. Rebuck
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713
Telephone: (717) 364-1030
Telecopy: (717) 364-1020

*Attorneys for Plaintiff CVS Pharmacy, Inc.*

## CERTIFICATE OF SERVICE

      I, Monica L. Rebuck, certify that a copy of the foregoing Memorandum of Plaintiff CVS Pharmacy, Inc. In Opposition to Defendant Warner Chilcott's Motion to Compel Answers to Interrogatories and the Production of Documents was served on the 6th day of November, 2006, by ECF filing on all attorneys of record.

_____
Monica L. Rebuck