IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CVS PHARMACY, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*,<br><br>Defendants. | Civ. Action No.: 1:06cv00795 CKK<br><br>Judge Colleen Kollar-Kotelly<br><br>JURY TRIAL DEMANDED |

**DEFENDANT WARNER CHILCOTT'S REPLY TO PLAINTIFF CVS PHARMACY'S OPPOSITION TO WARNER CHILCOTT'S MOTION TO COMPEL**

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company, Inc. ("Warner Chilcott" or "Defendant") respectfully submit this reply to Plaintiff CVS Pharmacy, Inc.'s ("CVS" or "Plaintiff") Memorandum in Opposition to Defendant Warner Chilcott's Motion to Compel Answers to Interrogatories and the Production of Documents. CVS has offered no valid justification for its refusal to produce the discovery Warner Chilcott seeks. As a plaintiff that sought an assignment and brought this complex antitrust lawsuit, CVS is required to produce documents and information that will allow Warner Chilcott to defend against these claims.[1]

---

[1] The suggestion by CVS that Warner Chilcott failed to make reasonable efforts to resolve the discovery dispute as required by Local Rule 7(m) is disingenuous. Warner Chilcott only filed this motion to compel after CVS unequivocally and repeatedly refused to produce certain categories of documents, despite efforts by Warner Chilcott to narrow the scope of its requests. In fact, contrary to CVS's assertion, Warner Chilcott is ***not*** seeking to compel information related to third party payor contracts. (Memorandum of Plaintiff CVS Pharmacy, Inc. in Opposition to Defendant Warner Chilcott's Motion to Compel Answers to Interrogatories and the Production of Documents ("Pl.'s Br.") 12-13) During a meet and confer, counsel for CVS agreed to consider Warner Chilcott's request that CVS provide select third party payor information. (*See* Letter from Ms. Rebuck to Ms. Sertich (Oct. 26, 2006) (attached hereto as Ex. "A")). As the parties are continuing to negotiate a compromise in good faith, Warner Chilcott did not request such information in this motion to compel.

**ARGUMENT**

I.  **Plaintiff/Assignee CVS Must Provide Discovery On Behalf Of Its Assignor Cardinal**

CVS utterly fails to recognize the significance of the fact that it is an ***assignee*** suing for claims on behalf of its assignor, Cardinal Health.  Instead, CVS repeatedly refers to Cardinal Health as its "wholesaler" as if Cardinal Health is an entity with no relation to this litigation.  The law is clear: as an assignee, CVS must assume the position of its assignor, Cardinal Health, in the discovery process.  CVS cannot be permitted to pursue claims, let alone seek damages, on behalf of Cardinal Health while denying Warner Chilcott necessary discovery from that entity.[2]

As Plaintiff acknowledges, in determining whether a party has an obligation to produce documents, the question is not whether that party has physical custody of the documents at issue, but whether it has the legal right to obtain such documents.  (Pl.'s Br. 4); *see, e.g., Alexander v. FBI*, 194 F.R.D. 299, 301 (D.D.C. 2000).  Nevertheless, Plaintiff contends that Warner Chilcott has failed to identify "any legal right, authority, or ability of CVS to exercise lawful possession over the documents at issue." (Pl.'s Br. 4)  This contention wholly ignores the significance of CVS's position as an assignee of Cardinal Health.  Quite simply, CVS received the benefit of an assignment, and in doing so, incurred the legal obligation to produce the documents of its ***assignor***.  *See JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507 (S.D.N.Y. 2005) (compelling assignee to produce documents in the possession of its assignors).

---

[2] In the alternative, if the Court determines that CVS is not required to produce discoverable information on behalf of Cardinal Health, Warner Chilcott asks the Court to join Cardinal Health as a party to this litigation for purposes of discovery, as was done in *In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465 (N.D. Fla. Jan. 13, 1992). *See also Jee v. Hanil Bank, Ltd.*, 104 B.R. 289, 296 (Bankr. C.D. Cal. 1989) (recognizing that real parties in interest may be deemed "to be a party for the limited purpose of conducting discovery").  At that time, Warner Chilcott will provide any further briefing or notice that the Court may require.

Contrary to Plaintiff's assertion, the court in *JPMorgan Chase* not only recognizes the general legal right to obtain principal, but specifically applies that principal to a factual situation similar to the one at hand. The court in *JPMorgan Chase* articulates a narrow circumstance, an assignor/assignee relationship, where a named plaintiff has the legal right to obtain documents from a non-party. Nevertheless, CVS attempts to avoid its obligation to produce documents of its assignor, yet offers not a single case to support its position. The same legal standard should apply here, and CVS should assume the position of its assignor, Cardinal Health, for purposes of discovery.[3]

CVS also argues that requiring it to produce discovery from the party from whom it received its claim is inequitable. Tellingly, CVS does not claim that it is unable to obtain documents from its assignor.[4] Clearly, CVS should bear the burden of obtaining documents from Cardinal Health. CVS entered into the assignment agreement and brought suit against Warner Chilcott seeking damages allegedly incurred by Cardinal Health. Not surprisingly, CVS claims it would be fairer to require Warner Chilcott to bear the burden of

---

[3] Contrary to CVS's claim, Warner Chilcott's request for documents in Cardinal Health's possession is unambiguous. In its Interrogatories and Request for Production of Documents Warner Chilcott defined "you," or Plaintiff, to include CVS's assignor, Cardinal Health, and the Requests seek documents and information from Cardinal Health. (*See* Def.'s Interrogatories to Pl. ¶ 2 (attached hereto as "Ex. B"); Def.'s First Req. for Prod. of Docs. to Pl. ¶ 2 (attached hereto as "Ex. C")) Plaintiff's attempt to narrow the definition of "you" in Warner Chilcott's discovery requests to include only CVS does not make the request for documents unclear.

[4] CVS's assertion that the motion to compel should be denied because of the possibility that CVS could be sanctioned for not producing documents from Cardinal Health is premature. In addition, the cases cited by Plaintiff are inapposite. None of these cases involve an assignee/assignor relationship. In two of the cases, the courts hold that the plaintiff company is not bound to produce discovery for a foreign affiliate company with which the plaintiff company does no business and has no economic ties. *See Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 521 (D. Colo. 2003); *In re Citric Acid Litig.*, 191 F.3d 1090, 1106, 1108 (9th Cir. 1999). The third case involves the inability of a plaintiff to retrieve documents from a company with which it has no direct business relationship. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1423, 1427 (7th Cir. 1993). Unlike these cases, CVS and Cardinal Health have entered into an agreement in regards to this litigation specifically and have created an assignee/assignor relationship that is legally unique in the discovery context.

non-party discovery that is the result of its assignment agreement. To the contrary, as the court noted in *JPMorgan Chase*, it would be "patently unfair" to let an assignee like CVS "evade [the] discovery obligations" of its assignor. 228 F.R.D. at 506-507.  Consequently, CVS should be required to produce the requested Cardinal Health documents.

**II.     Data On Other CHCs Is Clearly Relevant To The Claims And Defenses In This Litigation**

Plaintiff admits, as it must, that defining a relevant market and showing that the defendant has a dominant share of that market is "***one way***" of establishing market power in an antitrust case such as this.  (Pl.'s Br. 14)  In order to conduct this analysis, it is necessary for Warner Chilcott to obtain data and information on all CHCs.  Yet Plaintiff seeks to limit Warner Chilcott to ***Plantiff's way*** of allegedly demonstrating market power.  Not surprisingly, Plaintiff's method requires virtually no discovery from CVS.  Plaintiff cannot allege that Warner Chilcott has market power and then prevent Warner Chilcott from discovery necessary to refute that claim.

It is axiomatic that Warner Chilcott is not bound by Plaintiff's theory of the case and is entitled to discovery to support its defenses.  Plaintiff's objection to discovery on CHCs other than Ovcon amounts to nothing more than a claim that its method of proof is sufficient to establish its case and should be preferred to the method proffered by Warner Chilcott.  However, "[i]n ruling on questions of discovery, typically, courts do not determine the legal sufficiency of claims and defenses." *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 59 (D.D.C. 1984).  As a result, Plaintiff's conclusory statement that information on other CHCs is not necessary to establish a relevant market because Plaintiff has already established market power through "information already obtained in discovery show[ing] that Ovcon was priced well above marginal cost" must be rejected.  (Pl.'s Br. 14)  Plaintiff cannot make a unilateral statement that it has definitive proof of market power and

proceed as if no discovery were required.[5]  Similarly, Plaintiff's bald statement that a cross-elasticity study is irrelevant because current prices are allegedly supracompetitive must be rejected.  Warner Chilcott is entitled to proffer its own theory of market power as a defense.  In order to do so, Warner Chilcott requires documents from Plaintiff regarding the numerous other CHCs in the market in order to establish that they are reasonably interchangeable with Ovcon 35.  *See*, *e.g.*, *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 119 (D.D.C. 2004).

Plaintiff next claims that the information Warner Chilcott seeks is not ***sufficient*** to prove damages or a relevant market.  (Pl.'s Br. 15-17)  In effect, Plaintiff's argument is not that the information sought is irrelevant, but that a ***different type*** of evidence is better.  However, the test for discoverability is not whether the information sought is the best evidence available, but whether such information is relevant to any claim or defense.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter . . . that is relevant to the claim or defense of any party . . ."); *see also Doe v. District of Columbia*, 231 F.R.D. 27, 30 (D.D.C. 2005) ("Relevance for discovery purposes is broadly construed.").

Thus, although Plaintiff is free to argue that the Court should examine the introduction of generic Ovcon in October 2006 to determine how much and at what price Plaintiff would have bought generic Ovcon in 2004, (Pl.'s Br. 16), Warner Chilcott is entitled to discovery to support its own damages methodology.  Despite Plaintiff's contention, a few months of data regarding the entry of a generic in 2006 cannot establish the "but-for world" that would have occurred in 2004.  Rather, information regarding other CHCs is necessary as a yardstick to determine damages over an extended period of time.  Similarly, Plaintiff's

---

[5] Even if it is possible to prove market power by showing that Ovcon was priced above marginal cost, there has been no such showing.  As noted by the ***monopoly*** case Plaintiff cites, monopoly power exists where a firm can "profitably raise prices ***substantially*** above the competitive level," but "[b]ecause such direct proof is only ***rarely*** available, courts more typically examine market structure in search of circumstantial evidence of monopoly power." *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001) (emphasis added).

claim that the information on other CHCs is not sufficient because it would reflect only information from CVS, rather than nationwide information, must be rejected. (Pl.'s Br. 14-15)  Once again, the information sought need not be the ultimate proof.  It is indisputable that documents and information from CVS, the largest retail pharmacy in the United States, operating over 6,000 stores in forty-three states and the District of Columbia, would constitute a significant portion of the necessary and relevant data.  *See* Press Release, CVS, CVS Reports Record October Revenues of $3.5 Billion, up 24.4% (Nov. 2, 2006) (*available at* http://phx.corporateir.net/phoenix.zhtml?c=183405&p=irolnewsArticle &ID=925557& highlight=). Moreover, as Plaintiff acknowledges, information on other CHCs is being produced by other parties to the litigation and Warner Chilcott is seeking such information pursuant to numerous subpoenas served on non-parties.  (Pl.'s Br. 17 n.10)

    Finally, Plaintiff seeks to be excused from its discovery obligations by making the conclusory allegation that production of documents regarding other CHCs would be overly broad and burdensome.  However, Plaintiff has failed to identify specific reasons why *each* document request is unduly burdensome or overbroad.[6]  Plaintiff gives no estimate of potential cost, time demand, or any other objective factor from which the court can quantify and evaluate the burden.  *See United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C. 1981) (the burden of proving good cause for a protective order requires a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . .") (internal citation omitted).  Nor does Plaintiff point to specific evidence or attach an affidavit attesting to the alleged burden.  *See Alexander v. FBI*, 194 F.R.D. 316, 326 (D.D.C.

---

[6] Plaintiff has only even attempted to explain the burden associated with one specific document request, Request 4. (Pl.'s Br. 13-14) However, Plaintiff's proffered reasons fail to provide Warner Chilcott with enough information to tailor its request to alleviate any alleged burden.  Plaintiff's argument is nothing more than that it is a large retail pharmacy chain that fills millions of prescriptions, it would have to gather information from individual stores, and that some unidentified amount of data is stored on archive tapes.  These general and unsupported claims would apply to virtually *any* discovery request served on CVS.

2000) ("An objection must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.") (internal citation omitted); *Chubb Integrated Sys. Ltd.*, 103 F.R.D. at 60 (same); *see also*, *Miller v. Holzmann*, No. 95-1231, 2006 WL 3082359, at *1 (D.D.C. Oct. 31, 2006) ("[l]ike every other judge," court refused to consider objection that discovery sought was overbroad and burdensome "without a showing by affidavit"). In addition, the mere fact that Plaintiff must look to several sources to gather large amounts of data does not in itself make the process **unduly** burdensome. *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 426 (N.D. Ill. 1977) (the fact that discovery is burdensome and expensive is not, standing alone, a valid basis for refusing to order discovery where discovery is otherwise appropriate). Discovery costs money and time for all parties. Plaintiff, having chosen to bring this complex antitrust litigation, should not be excused from its discovery obligations.

**III.    Downstream Sales Data Is Central To The Determination Of Class Certification**

Warner Chilcott requests documents and data from CVS concerning its sales to its customers. Plaintiff does not cite to a single case from this District holding that downstream discovery is irrelevant to the determination of class certification. Although downstream discovery is both relevant and important to the disposition of this case, Warner Chilcott has been and remains willing to narrow the request to limit any purported burden on CVS. Since CVS's objection that the request is burdensome is a byproduct of its own unwillingness to consider reasonable compromises, its objections should be overruled.

Plaintiff CVS asserts that in overcharge cases, "the direct purchaser's own sales and profits . . . are irrelevant as a matter of law." (Pl.'s Br. 7)[7] This over-simplified

---

[7] CVS erroneously contends that "[o]ther courts in this Circuit . . . have concluded that downstream discovery from a direct purchaser is irrelevant as a matter of law." (Pl.'s Br. 8) The two cases cited in support of this contention, however, were actually decided in the Eastern and Middle Districts of Pennsylvania. Further, neither case holds that downstream sales are irrelevant to the issue of class certification. In *In re Automotive Refinishing Paint*

interpretation of the law assumes that Defendant is asserting a pass-on defense, which is not the case here. In fact, the cases cited by CVS all deny downstream discovery because the discovery is sought to support a pass-on defense. *See*, *e.g.*, *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 (D.D.C. 2000) (indicating that the "general rule" for disallowing discovery of downstream data applies to cases where defendants assert a pass-on defense). Unlike these cases, Warner Chilcott's discovery request stems from the data's impact on class certification (Def.'s Mot. to Comp. 9), and the "general rule" relied upon by Plaintiff is inapposite to that issue.[8]

Document requests must only reach the low threshold of being likely to lead to admissible evidence in order to be discoverable. *See Doe*, 231 F.R.D. at 30. Plaintiff attempts to argue that downstream sales are not relevant to the typicality requirement in class actions by insisting, "[n]o amount of downstream discovery would show a difference in the retail prices charged for branded versus generic Ovcon . . . ." (Pl.'s Br. 9) This argument demonstrates Plaintiff's misunderstanding of Warner Chilcott's request. The data is not necessary to show the price difference between branded and generic Ovcon. Rather, it is necessary to determine whether class members share the common interests necessary to meet the requirements for class certification.

---

*Antitrust Litig.*, No. MDL 1426, 2006 WL 1479819 (E.D. Pa. May 26, 2006), the court does not address whether such data would be material to class certification issues. Moreover, the court *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 498 (M.D. Pa. 2005), prohibits downstream discovery to advance a pass-on defense but explicitly acknowledges that such discovery may be permissible to determine the adequacy of named plaintiffs as class representatives.

[8] CVS relies heavily on *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296 (D.D.C. 2000), for the notion that all efforts to obtain downstream discovery should be denied. (Pl.'s Br. 7) The court in *In re Vitamins* denied downstream discovery because the request was deemed unduly burdensome, not because the court "unambiguously concluded," (id.), that such requests were irrelevant to the question of class certification. Moreover, this decision pre-dates the Eleventh Circuit's holding in *Valley Drug v. Geneva Pharmaceuticals Inc.*, 350 F.3d 1181 (11th Cir. 2003), where the court held that downstream sales would in fact bear directly on the propriety of class certification.

CVS next attempts to explain why class members would meet the typicality requirements for certification. This inquiry into the merits, however, is inappropriate and premature. *See*, *e.g.*, *Martin v. Potomac Elec. Power Co.*, No. 86-0603, 1989 U.S. Dist. LEXIS 15407, at *23 (D.D.C. Dec. 21, 1989). Discovery requests are intended to produce information that would inform a court's consideration of the merits. Whether the putative class members would satisfy typicality is not the appropriate question at this stage in the litigation. Rather, the Court should consider whether the documents may lead to information that will help the Court determine whether the class members would meet the typicality requirements for certification. Downstream discovery must be permitted because it will be used to show that consumers paid varied amounts for Ovcon 35 based on locality and different insurance plan co-pays. Further, the data will establish that third party payors reimburse Ovcon 35 at drastically different rates based on the nature of their contracts with retailers or the volume of Ovcon 35 dispensed to their plan beneficiaries. These significant differences in the purchases of Ovcon 35 may preclude a finding of typicality. *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 460 (D. Kan. 2006) (compelling discovery of downstream data on the grounds that divergent purchasing power of representative plaintiffs from the putative class, as evidenced by volume of sales, may render claims atypical).

Finally, CVS's attempt to foist its discovery obligations onto other parties and non-parties must be rejected.[9] The availability of requested information from other sources does not relieve Plaintiff of its discovery obligations. *See* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.60 (2006), *citing Fort Wash. Resources v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994); *Biggars v. Romans*, No. 05-CV-1260-JTM, 2006 WL

---

[9] CVS's argument that data can be purchased from a vendor such as IMS is simply wrong. (Pl.'s Br. 10) The data provided by IMS is aggregated and therefore uninformative. Warner Chilcott seeks unaggregated pricing information which CVS has and should be ordered to produce.

1313395, at *2 (D. Kan. May 11, 2006) (availability of requested information from other sources "does not . . . relieve Plaintiff from the obligation to disclose such information in discovery"). CVS must fulfill the discovery obligations incumbent upon it as a party to this action. The mere existence of other sources does not permit CVS to sidestep its duty to do so.

## CONCLUSION

For the foregoing reasons, Warner Chilcott respectfully requests that the Court order CVS to produce documents and information responsive to Warner Chilcott's Document Request Numbers 2, 4, 5, 6, 8, 9, and 18, Interrogatory Numbers 4 and 5, and produce any documents responsive to the discovery requests from CVS's assignor, Cardinal Health.

Date:   November 20, 2006            Respectfully submitted,

/s/ Peter C. Thomas
Peter C. Thomas (D.C. Bar # 495928)
SIMPSON THACHER & BARTLETT LLP
601 Pennsylvania Avenue N.W.
Washington, D.C.  20004
(202) 220-7700
(202) 220-7702 (fax)

Charles E. Koob, *pro hac vice*
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017
(212) 455-2000
(202) 455-2502 (fax)

***Counsel for Warner Chilcott Defendants***