

30 North Third Street, Suite 700
Harrisburg, PA 17101-1701
717-364-1020 /facsimile

One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
215-568-0300 /facsimile

20 Brace Road, Suite 201
Cherry Hill, NJ 08034
856-616-2170 /facsimile

www.hangley.com

**Monica L. Rebuck**
**Direct Dial:  717-364-1007**
**E-mail:  mrebuck@hangley.com**

Direct all responses to our Harrisburg address

October 26, 2006

<u>VIA Email</u>

Manda Sertich, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

    Re:    CVS Pharmacy, Inc., et al. v. Warner Chilcott Holdings
            Company III, Ltd., et al - No. 06-CV-00795 CKK
            United States District Court for the District of Columbia

Dear Manda:

      This is in response to your October 25 letter.

      With regards to your request for third party payor contracts, it is our understanding that Warner Chilcott does not want these contracts for use in the above-captioned case (brought by CVS), but rather for use in other cases. The request is therefore being posed to CVS as a non-party. As we discussed, CVS is only one of many retail pharmacy chains, and its contracts may not be typical of those entered into with the rest of the marketplace. As such, the usefulness of CVS's contracts is less than clear. Furthermore, it is our understanding that the defendants have subpoenaed managed care entities. Those entities would be a more appropriate source for the information Warner Chilcott seeks, since they would be able to provide complete information. CVS has objected to the production of these contracts upon multiple grounds, and CVS does not withdraw any of those objections. In order to avoid a dispute, CVS is willing to consider your proposal that it produce a sampling of the contracts. One difficulty that CVS faces, however, is that confidentiality provisions in many such agreements prevent CVS from producing those contracts. This is true regardless of whether there is a protective order in place; certain contracts do not provide any carve-outs, not for production pursuant to legal process and not for production in cases where a protective order is in place. As such, CVS could not agree to produce any contracts without first knowing which 10 entities Warner Chilcott has identified.

Manda Sertich, Esq.
October 26, 2006
Page 2

      CVS stands by its objections regarding the production of documents and data that relate to downstream sales. Under well-established federal antitrust laws, information regarding CVS's sales is irrelevant to CVS's claims and its overcharge damages theory. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968); *see also In re Vitamins,* 198 F.R.D. 296, 301 (D.D.C. 2000) ("no court has ever allowed production of individualized downstream data"). Warner Chilcott has not articulated any argument to the contrary. To the extent Warner Chilcott is seeking this information for use in other litigation, there exists vastly superior and more comprehensive sources of data reflecting retail pricing information, namely data vendors such as IMS, which could compile such information. That data would provide Warner Chilcott with nationwide data, not just the snapshot that CVS's data would provide. Furthermore, obtaining that data from such a vendor would avoid the substantial burden that would otherwise be placed upon CVS, a non-party to that other litigation.

      Likewise, CVS stands by its objections to producing data and documents regarding all Combined Hormonal Contraceptives ("CHCs"). The requests at issue are overbroad and extremely burdensome. According to one estimate, there are over 60 separate CHC products, and Warner Chilcott has requested that CVS produce a broad range of documents and data related to each of those CHC products. *See* Request Nos. 4-6, 8. Given the breadth of the requests and the number of products involved, producing the requested information would be extremely burdensome. Furthermore, as we discussed, CVS does not agree that information regarding all CHCs is relevant to this case. Based upon our conversation, our understanding is that you want documents and data regarding all CHCs to calculate shares in what you contend is the relevant market. If that is Warner Chilcott's goal, there is a more appropriate source for this data; the data is available from third-party vendors and I suspect that your client may already have this data. Moreover, data from third-party vendors would cover the entire retail pharmacy market, not just CVS's share.

      CVS also continues to object to producing documents in the custody and control of a completely different corporation -- Cardinal Health, Inc. As your letter seems to acknowledge, the documents at issue are in the possession, custody and control of Cardinal, not CVS. CVS does not have a legal right to obtain the requested documents on demand. *See Alexander v. F.B.I.*, 194 F.R.D. 299, 301 (D.D.C. 2000) ("It is well-established that 'control,' which is defined not as possession, but as the legal right to obtain documents on demand, is the test as to whether production is required."). As such, CVS has no obligation to produce those documents. Moreover, Cardinal is an absentee class member in another pending suit. If Warner Chilcott believes it needs documents from Cardinal, it has a mechanism for obtaining those documents – a subpoena under Rule 45.

      Finally, I disagree with your characterization of our conversation regarding the request for documents relating to any exclusive contracts CVS has with third parties. CVS has lodged – and continues to stand by – multiple objections to the production of such

Manda Sertich, Esq.
October 26, 2006
Page 3

documents.  This request is not only overly broad and unduly burdensome, but it also seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  The request calls for the production of, *inter alia*, documents related to the sale of pharmaceutical products; for the reasons discussed above, such downstream sales documents are irrelevant.  Additionally, the contracts at issue might be subject to confidentiality provisions.   Depending upon the content of those provisions, just as with the managed care contracts discussed above, the existence of a protective order would not alleviates CVS's concerns.  At the same time, Warner Chilcott has not articulated any reason why these documents would be relevant to this litigation.  For all of these reasons, CVS stands by its objections.

                                        Very truly yours,

                                        Monica L. Rebuck

cc:     Contact Attorneys via DealRoom (w/o enc.)