IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALGREEN CO. et al., | Civil Action No. 06-494 (CKK) |
| Plaintiffs, | |
| v. | |
| WARNER CHILCOTT HOLDINGS COMPANY III, LTD., et al., | |
| Defendants. | |

| | |
|---|---|
| CVS PHARMACY, INC. et al., | Civil Action No. 06-795 (CKK) |
| Plaintiffs, | |
| v. | |
| WARNER CHILCOTT HOLDINGS COMPANY III, LTD., et al., | |
| Defendants. | |

**NON-CLASS PLAINTIFFS' MEMORANDUM RESPONDING
TO DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION**

Plaintiffs in the *Walgreen* and *CVS Pharmacy* cases respectfully submit this brief memorandum in response to Defendants' Opposition to Direct Purchaser Plaintiffs' Motion for Class Certification, dated April 12, 2007. While Plaintiffs in these two cases have no direct interest in the *outcome* of the class certification motion, we have an interest in ensuring that the Court's decision does not adopt Defendants' erroneous analysis of the so-called "generic bypass" phenomenon, which Defendants would then attempt to apply in the *Walgreen* and *CVS Pharmacy* cases. This is

particularly so given that the issue involved is a merits issue that need not be decided in order to decide class certification. *See In re Lorazepam and Clorazepate Antitrust Litigation*, 289 F.3d 98, 106-07 (D.C. Cir. 2002) (issues of antitrust standing are unrelated to class certification).

"Generic bypass" is a reference to the fact that some retailers purchase brand-name drugs indirectly through wholesalers but purchase the corresponding AB-rated generic drug directly from the generic manufacturer. To take the most extreme possible example, suppose there were only one drug wholesaler, McCardsource, and only one drug retailer, WalCVS. Prior to the entry of generic Ovcon, McCardsource buys all of its Ovcon from Warner Chilcott and resells all of it to WalCVS. Once generic Ovcon becomes available, WalCVS continues to buy small quantities of Ovcon from McCardsource but replaces the balance of its Ovcon purchases with generic Ovcon purchased directly from Barr.

Now consider the effects of this distribution pattern in an antitrust case alleging that Warner Chilcott and Barr illegally conspired to delay the entry of less expensive generic Ovcon for two-and-a-half years. During the damage period, Warner Chilcott and Barr are sharing the monopoly profits that result from the higher prices being paid for branded Ovcon by McCardsource rather than the lower prices that would have been paid for generic Ovcon by WalCVS. Defendants argue in their opposition brief that, under these circumstances, neither McCardsource nor WalCVS is "overcharged" as a result of the absence of generic Ovcon. Def. Opp. at 19. According to Defendants, WalCVS is not overcharged because it is not a direct purchaser of branded Ovcon. According to Defendants, McCardsource is not overcharged because it would not have purchased generic Ovcon absent the violation; its customer would. The result, according to Defendants, is that *no one* can recover the monopoly profits unquestionably earned by Warner Chilcott and Barr.

2

This precise legal issue—whether either purchaser has been overcharged in these circumstances and, if so, whether it is the wholesaler or the retailer—was addressed in *In re Relafen Antitrust Litigation*, 346 F. Supp. 2d 349, 367-70 (D. Mass. 2004), which rejected Defendants' view of the law.[1] In the *Relafen* case, many of the same retail chains that are plaintiffs in these two cases held assignments from their wholesalers entitling them to recover the wholesaler's overcharges on the units of branded Relafen that the wholesaler purchased and resold to the retailers. As in this case, the damages sought were based on the allegation that, but for the defendant's conduct, less expensive generic Relafen would have been available during the damage period and would have been purchased by the retailer. And as in this case, there was reason to believe that the retailers would have purchased generic Relafen directly from the generic manufacturer rather than indirectly from the wholesaler.

On the basis of these facts, the defendant in *Relafen* (GlaxoSmithKline, or GSK) argued that *no one* could recover overcharges on those units of branded Relafen that were actually purchased by a wholesaler but would have been replaced with units of generic Relafen that would have been purchased directly by the retailer had the violation not occurred.[2] GSK argued that the

---

[1] To our knowledge, *Relafen* is the only published opinion that has squarely addressed this precise issue. In *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297, 317 (E.D. Mich. 2001), the class plaintiffs waived the overcharges arising from bypassed units and the court observed that this adjustment, while not relevant to class certification, would become relevant at the damages stage. Because the issue was not disputed, the court's opinion did not address the appropriateness of such an adjustment.

[2] In our hypothetical involving McCardsource and WalCVS, *all* of the units sold during the damage period are subject to generic bypass. In the real world, only a portion of the units sold are subject to bypass, either because some retailers buy the brand-name drug directly from the manufacturer or because some retailers buy the generic through the wholesaler (or both). The legal issue, however, is the same.

3

retailers could not recover in their own name because they were indirect purchasers of branded Relafen, and could not recover by assignment because the wholesaler would not have purchased the generic in the "but-for world" and therefore had no overcharges to assign.

Chief Judge Young disagreed, holding that the wholesaler was overcharged within the meaning of section 4 of the Clayton Act on *all* of its purchases of branded Relafen, including those units that would have been replaced with units of generic Relafen that would have been purchased by the wholesaler's customer. 346 F. Supp. 2d at 369-70. The wholesaler therefore could assign the overcharges on those units to its customer.

Chief Judge Young concluded, first, that GSK's argument was inconsistent with *Hanover Shoe*[3] because it attempted to limit the wholesaler's damages based on the benefit allegedly received by the wholesaler in maintaining sales volume that would otherwise have been lost as a result of the bypass. Under *Hanover Shoe*, this alleged benefit is legally irrelevant to quantifying the amount of overcharge damages suffered by the wholesaler. As Judge Young put it, "*Hanover Shoe* precludes not only the 'passing on' defense, but also the subtle variation asserted here, which might be termed the 'otherwise benefiting' defense." *Id.* at 369. Thus, "[n]otwithstanding the unique 'channel of distribution' alleged here," the court "declined to create an exception to *Hanover Shoe*." *Id.*

Second, Judge Young realized that "the unstated consequence of [GSK's] argument was that '*no one* [could] recover the illegal overcharges that [GSK] in fact collected on these bypassed units.'" *Id.* (emphasis in original). The court quoted with approval a passage from the Seventh Circuit's opinion in *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 483 (7th Cir. 2002):

---

[3] *Hanover Shoe Co. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968).

> [T]he antitrust laws create a system that, to the extent possible, permits recovery in rough proportion to the actual harm a defendant's unlawful conduct causes in the market without complex damage apportionment. This scheme at times favors plaintiffs (*Hanover Shoe*) and at times defendants (*Illinois Brick*), but it never operates entirely to preclude market recovery for an injury.

This Court need not resolve the issue of Defendants' liability for overcharges on "bypassed units" in order to decide class Plaintiffs' motion for class certification. However, if the Court chooses to resolve the issue now, it should reject Defendants' view for the reasons cogently expressed by Judge Young in *Relafen*.

Respectfully submitted,

Date: May 21, 2007

s/_____
Robert D.W. Landon III
Richard Alan Arnold
Scott E. Perwin
Lauren C. Ravkind
KENNY NACHWALTER, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-1000
(305) 372-1861

Steve D. Shadowen
Monica L. Rebuck
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713
(717) 364-1030
(717) 364-1020

*Counsel for Plaintiffs*