IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MEIJER, INC., et al.,                                    Civil Action No. 05-2195 (CKK)

       Plaintiffs,

   v.

WARNER CHILCOTT HOLDINGS COMPANY
III, LTD. et al.,

      Defendants.

---

WALGREEN CO., et al.,                                    Civil Action No. 06-494 (CKK)

       Plaintiffs,

   v.

WARNER CHILCOTT HOLDINGS COMPANY
III, LTD., et al.,

      Defendants.

---

CVS PHARMACY, INC., et al.,                              Civil Action No. 06-795 (CKK)

       Plaintiffs,

   v.

WARNER CHILCOTT HOLDINGS COMPANY
III, LTD., et al.,

      Defendants.

---

**PUBLIC COPY**

**APPENDIX OF EXHIBITS
IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBITS 3, 5, 7, 8 HAVE BEEN FILED UNDER SEAL**

## INDEX OF EXHIBITS

Tab 1        Warner Chilcott's Answer to Class Action Complaint (*Meijer*);

Tab 2        Barr Pharmaceutical, Inc.'s Answer to Plaintiff's Complaint

             (*Walgreen*);

Tab 3        Option and License Agreement (Barr-29-00011-39) **(FILED UNDER**

             **SEAL)**;

Tab 4        News Release, *Barr's Generic Ovcon-35 Tablets Approved* (April

             23, 2004);

Tab 5        Finished Product Supply Agreement (WCO0156110-36) **(FILED**

             **UNDER SEAL)**;

Tab 6        News Release*, Barr Announces Warner Chilcott Waives Exclusive*

             *License for Ovcon 35* (Sept. 26, 2006);

Tab 7        Warner Chilcott Price Increase Notice dated March 1, 2006

             (KGR 0003) **(FILED UNDER SEAL)**;

Tab 8        Barr Laboratories Letter to Brooks/Eckerd dated October 17, 2006

             (BRK 000086-87) **(FILED UNDER SEAL)**;

Tab 9        News Release, *Warner Chilcott Reports Operating Results for the*

             *Quarter Ended March 31, 2007 and Raises 2007 Full Year*

             *Guidance*, p.1 (May 11, 2007);

Tab 10       Selected pages from Warner Chilcott 's 2006 Annual Report (SEC

             Form 10-K filed 3/26/07);

Tab 11       News Release, *Warner Chilcott and Watson Pharmaceuticals*

             *Announce Launch of Zenchent* (Jan. 29, 2007).

1

TAB 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MEIJER, INC., 2929 Walker Avenue NW, Grand
Rapids, Michigan 49544

MEIJER DISTRIBUTION, INC., 2929 Walker
Avenue NW, Grand Rapids, Michigan 49544

LOUISIANA WHOLESALE DRUG CO., INC.,
2085 I-49, South Service Road, Sunset, Louisiana
70584

ROCHESTER DRUG CO-OPERATIVE, INC., 50
Jet View Drive, Rochester, New York 14624

VALLEY WHOLESALE DRUG COMPANY, INC.,
1401 West Fremont Street, Stockton, California
95203-2627

AMERICAN SALES COMPANY, INC., 4201
Walden Ave, Lancaster, New York 14086

SAJ DISTRIBUTORS, INC. 3017 N. Midland Pine
Bluff, Arkansas 71603

STEPHEN L. LaFRANCE HOLDINGS, INC., 3017
N. Midland, Pine Bluff, Arkansas 71603

on behalf of themselves and all others similarly
situated,

              Plaintiffs,

       v.

WARNER CHILCOTT HOLDINGS COMPANY
III, LTD.

WARNER CHILCOTT CORPORATION

WARNER CHILCOTT (US) INC.

WARNER CHILCOTT COMPANY, INC.

GALEN (CHEMICALS), LTD.

BARR PHARMACEUTICALS, INC.

             Defendants.

Civil Action No. 1:05-cv-02195-CKK

**Judge Colleen Kollar-Kotelly**

**JURY TRIAL DEMANDED**

**DEFENDANT WARNER CHILCOTT'S**
**ANSWER TO CLASS ACTION COMPLAINT**

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott

Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals),

Ltd. (collectively, "Warner Chilcott") answer the allegations of Meijer, Inc., Meijer Distribution,

Inc., Louisiana Wholesale Drug Company, Inc., Rochester Drug Co-operative, Inc., Valley

Wholesale Drug Company, Inc., American Sales Company, Inc., SAJ Distributors, Inc., and

Stephen L. LaFrance Holdings, Inc. (collectively, "Plaintiffs") in their Class Action Complaint

("Complaint") as follows:

**PLAINTIFFS' ALLEGATION**

1.      This case involves a horizontal agreement between Warner Chilcott and Barr not
to compete in the sale of Ovcon 35 ("Ovcon"), an oral contraceptive.

**ANSWER**

Warner Chilcott states that Paragraph 1 of the Complaint is a description of

Plaintiffs' claims to which no response is required.  To the extent a response is required, Warner

Chilcott denies the allegations contained in Paragraph 1 of the Complaint, except admits that

Ovcon 35 ("Ovcon") is an oral contraceptive product.

**PLAINTIFFS' ALLEGATION**

2.      Warner Chilcott is a pharmaceutical company that develops, manufactures,
markets, and distributes proprietary women's healthcare and dermatological pharmaceutical
products. Pursuant to an agreement with Bristol-Myers Squibb Company, Warner Chilcott is the
exclusive marketer of Ovcon in the United States.

**ANSWER**

          Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 2 of the Complaint.  Warner Chilcott denies each and every allegation contained in the

second sentence of Paragraph 2 of the Complaint.


**PLAINTIFFS' ALLEGATION**

       3.     Barr is a pharmaceutical company that develops, manufactures, markets, and
distributes generic and proprietary pharmaceutical drugs. Barr developed a generic version of
Ovcon, which was approved for sale by the United States Food and Drug Administration on or
about April 22, 2004.

**ANSWER**

          Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 3 of the Complaint.  Warner Chilcott denies knowledge or information sufficient to

form a belief as to the truth of each and every allegation contained in the second sentence of

Paragraph 3 of the Complaint.


**PLAINTIFFS' ALLEGATION**

       4.     Barr planned to market its generic drug in competition with Warner Chilcott's
branded Ovcon. Both Warner Chilcott and Barr had predicted that the entry of Barr's lower-
priced generic into the market would reduce Warner Chilcott's Ovcon sales, with generic
versions of Ovcon capturing approximately 50% of Ovcon's sales in the first year alone.

**ANSWER**

          Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in the first sentence of Paragraph 4 of the

Complaint.  Warner Chilcott denies each and every allegation contained in the second sentence

of Paragraph 4 of the Complaint as it refers to Warner Chilcott and denies knowledge or

information sufficient to form a belief as to the truth of each and every allegation contained in

the second sentence of Paragraph 4 of the Complaint as it refers to Barr.

**PLAINTIFFS' ALLEGATION**

5.    As alleged more fully herein, Warner Chilcott entered into an agreement with
Barr, in which Barr agreed not to market its generic Ovcon for five years in exchange for Warner
Chilcott's payment of approximately $20 million (the "Agreement").

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 5 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

6.    Defendants' Agreement denied Plaintiffs and other purchasers of Ovcon the
benefits of competition and of less expensive, generic versions of Ovcon. As a result, Plaintiffs
and members of the class defined below have paid supracompetitive prices for Ovcon and its
generic equivalents.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 6 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

7.    This action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§
15 and 26, to recover treble damages and the costs of suit, including reasonable attorneys' fees,
for injuries sustained by Plaintiffs and members of the Class as a result of Defendants' violations
of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged herein.

**ANSWER**

Warner Chilcott states that Paragraph 7 of the Complaint is a description of

Plaintiffs' claims to which no response is required.  To the extent a response is required, Warner

Chilcott denies each and every allegation contained in Paragraph 7 of the Complaint, and further

denies that Plaintiffs are entitled to any relief whatsoever.

**PLAINTIFFS' ALLEGATION**

8.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §
15 and 28 U.S.C. §§ 1331 and 1337(a).

**ANSWER**

Paragraph 8 of the Complaint contains legal conclusions to which no response is

required. To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 8 of

the Complaint.

**PLAINTIFFS' ALLEGATION**

9.    Venue is proper in this District under 15 U.S.C. §§ 15, 22, and 26 and under 28
U.S.C. § 1391, because (1) Warner Chilcott and Barr transact business and are found within this
District; and (2) a substantial portion of the affected trade and commerce described below has
been carried out in this District.

**ANSWER**

Paragraph 9 of the Complaint contains legal conclusions to which no response is

required. To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the

Complaint, except admits that Ovcon is sold in the District of Columbia.

**PLAINTIFFS' ALLEGATION**

10.    Plaintiff American Sales Company, Inc. ("American Sales") is a corporation
organized, existing, and doing business under and by virtue of the laws of the State of Delaware,
with its principal place of business located at 4201 Walden Ave, Lancaster, New York 14086.

4

American Sales purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph10 of the Complaint, except admits that

Plaintiff American Sales Company, Inc. purchased Ovcon from Warner Chilcott.


**PLAINTIFFS' ALLEGATION**

11.    Plaintiff Louisiana Wholesale Drug Company, Inc. ("Louisiana Wholesale") is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Louisiana, with its principal place of business located at 2085 I-49, South Service Road, Sunset, Louisiana 70584. Louisiana Wholesale purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 11 of the Complaint, except admits that

Plaintiff Louisiana Wholesale Drug Company, Inc. purchased Ovcon from Warner Chilcott.


**PLAINTIFFS' ALLEGATION**

12.    Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (collectively, "Meijer") are corporations organized under the laws of Michigan, with their principal place of business at 2929 Walker Avenue NW, Grand Rapids, Michigan 49544. Meijer is the assignee of the claims of the Frank W. Kerr Co., which purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 12 of the Complaint.

5

**PLAINTIFFS' ALLEGATION**

13.    Plaintiff Rochester Drug Co-operative, Inc. ("Rochester Drug") is a pharmaceutical wholesale company, with its principal place of business located at 50 Jet View Drive, Rochester, New York 14624. Rochester Drug purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 13 of the Complaint, except admits that

Plaintiff Rochester Drug Co-operative, Inc. purchased Ovcon from Warner Chilcott.

**PLAINTIFFS' ALLEGATION**

14.    Plaintiff Stephen L. LaFrance Holdings, Inc. ("LaFrance") is a holding company, with its corporate office located at 3017 N. Midland, Pine Bluff, Arkansas 71603. Plaintiff SAJ Distributors, Inc. ("SAJ") is a wholly-owned subsidiary of LaFrance, with its office also located at 3017 N. Midland, Pine Bluff, Arkansas 71603. LaFrance and SAJ have interests in retail and wholesale drug distribution, and they are the assignees of McKesson Corporation, which purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 14 of the Complaint.

**PLAINTIFFS' ALLEGATION**

15.    Plaintiff Valley Wholesale Drug Company, Inc. ("Valley Wholesale") is a corporation organized, existing, and doing business under and by virtue of the laws of the State of California, with its principal place of business located at 1401 West Fremont Street, Stockton, California 95203-2627. Valley Wholesale purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

6

**ANSWER**

      Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 15 of the Complaint, except admits that

Plaintiff Valley Wholesale Drug Company, Inc. purchased Ovcon from Warner Chilcott.

**PLAINTIFFS' ALLEGATION**

      16.    Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM 12 Bermuda. Its principal place of business is located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

      Warner Chilcott admits the allegations contained in Paragraph 16 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

      17.    Defendant Warner Chilcott Corporation is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is a for-profit company organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

      Warner Chilcott admits the allegations contained in Paragraph 17 of the

Complaint.

**PLAINTIFFS' ALLEGATION**

      18.    Defendant Warner Chilcott (U.S.) Inc. is a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (U.S.) Inc. is a for-profit company organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 18 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

19.     Defendant Warner Chilcott Company, Inc. is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., and is organized, existing, and doing business under and by virtue of the laws of the Commonwealth of Puerto Rico.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 19 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

20.     Defendant Galen (Chemicals) Ltd. ("Galen") is a for-profit enterprise organized, existing, and doing business under and by virtue of the laws of the Republic of Ireland. Galen is directly or indirectly owned or controlled by Warner Chilcott Holdings Company Ill, Ltd.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 20 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

21.     Unless otherwise specified, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (U.S.) Inc., Warner Chilcott Company, Inc., Galen (Chemicals) Ltd. and/or their predecessors, successors, parent corporations, and subsidiary corporations are referred to herein collectively as "Warner Chilcott" or the "Warner Chilcott Defendants." Warner Chilcott is engaged in the business of developing, manufacturing, marketing, and distributing women's healthcare and dermatological pharmaceutical products, including Ovcon.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 21 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

22.     Defendant Barr Pharmaceuticals, Inc., is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519. Barr is engaged in the business of developing, manufacturing, marketing, and distributing generic oral contraceptive products.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 22 of the Complaint.


**PLAINTIFFS' ALLEGATION**

23.     The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act"), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs.

**ANSWER**

Paragraph 23 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the

Complaint, except admits that the Drug Price Competition and Patent Term Restoration Act of

1984 ("Hatch-Waxman Act"), 21 U.S.C. § 355(j) (2005), and the Medicare Prescription Drug,

Improvement and Modernization Act of 2003, 35 U.S.C. § 271(e) (2005), have procedures

concerning pharmaceuticals sold in the United States.

9

**PLAINTIFFS' ALLEGATION**

24.     Before a manufacturer can market a new drug in the United States, it must obtain approval from the United States Food and Drug Administration ("FDA").

**ANSWER**

Paragraph 24 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the United States Food and Drug Administration ("FDA") has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFFS' ALLEGATION**

25.     The FDA maintains a list of approved "Reference Listed Drugs" in a publication entitled, "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly known as the "Orange Book."

**ANSWER**

Paragraph 25 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States, and further admits that a pharmaceutical may be listed in the "Orange Book."

**PLAINTIFFS' ALLEGATION**

26.     A manufacturer seeking to market a new drug must file with the FDA a New Drug Application (NDA), demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b) (2005). Once the FDA approves the NDA, the manufacturer may market the branded drug, and the branded drug may be listed in the Orange Book. The NDA process is typically time-consuming and expensive.

**ANSWER**

The first and second sentences of Paragraph 26 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, Warner

10

Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United

States. Warner Chilcott denies knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in the third sentence of Paragraph 26 of the

Complaint.


## PLAINTIFFS' ALLEGATION

27.    In 1984, Congress enacted the Hatch-Waxman Act, which accelerated the
approval process for generic drugs. Among other things, the Act permits a manufacturer seeking
FDA approval for a generic drug to file an Abbreviated New Drug Application ("ANDA"). 21
U.S.C. § 355(j) (2005). An ANDA filer may rely on the safety and efficacy data previously
provided in the NDA for its branded counterpart. FDA approval of an ANDA takes, on average,
about 18 months.

## ANSWER

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 27 of the Complaint, except admits that the

Hatch-Waxman Act has provisions concerning generic pharmaceuticals and that the FDA has

procedures concerning generic pharmaceuticals.


## PLAINTIFFS' ALLEGATION

28.    FDA-approved generic drugs are certified by the FDA as bioequivalent to the
branded drug whose NDA the generic drug relied upon in its ANDA and are completely
interchangeable with that branded drug. The FDA refers to such drugs as "AB-rated." A generic
drug that is "AB-rated" may be listed in the Orange Book and dispensed by a pharmacist in lieu
of its branded counterpart.

## ANSWER

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 28 of the Complaint, except admits that the

FDA has procedures concerning generic pharmaceuticals.

**PLAINTIFFS' ALLEGATION**

29.     Upon their introduction, generic drugs generally enter the market at prices 30 to 50 % (or more) below the price of their brand-name equivalents. Because generic and branded drugs are fully interchangeable in terms of safety and efficacy, the vast majority of patients are switched to the less expensive generic in place of the brand-name drug.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 29 of the Complaint.

**PLAINTIFFS' ALLEGATION**

30.     Almost all states (and the District of Columbia) encourage generic competition through laws that allow pharmacists to substitute brand-name drugs with their "AB-rated" generic equivalents, unless a physician directs or the patient requests otherwise.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 30 of the Complaint.

**PLAINTIFFS' ALLEGATION**

31.     Many third-party payors of prescription drugs (*e.g.*, health insurance plans, Medicaid programs) have adopted policies to encourage the substitution of available AB-rated generic drugs for their branded counterparts.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 31 of the Complaint.

**PLAINTIFFS' ALLEGATION**

32.     Ovcon is an oral contraceptive, containing norethindrone and ethinyl estradiol as its active ingredients. It has been available to the general public as a prescription pharmaceutical product since approximately 1976 and is not subject to patent protection.

12

**ANSWER**

        Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 32 of the Complaint. Warner Chilcott denies knowledge or information sufficient to

form a belief as to the truth of the allegations contained in the second sentence of Paragraph 32

of the Complaint, except admits that Ovcon was approved by the FDA in approximately 1976,

and further admits that Ovcon is not subject to patent protection.


**PLAINTIFFS' ALLEGATION**

      33.     Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS")
manufactured, distributed, and marketed Ovcon in the United States.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 33 of the Complaint.


**PLAINTIFFS' ALLEGATION**

      34.     On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title,
and interests in Ovcon products, including an agreement with Bristol Myers Squibb Laboratories
Company ("BMSLC"), a wholly-owned subsidiary of BMS, to supply Ovcon products to Warner
Chilcott.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 34 of the Complaint, except admits that on

January 26, 2000 Warner Chilcott purchased from BMS certain rights, title, and interest in

Ovcon products. Warner Chilcott further admits that it entered into a supply agreement with

Bristol-Myers Squibb Laboratories ("BMSLC").

13

**PLAINTIFFS' ALLEGATION**

35.    Warner Chilcott then began marketing Ovcon manufactured by BMSLC and continues to be the exclusive marketer of Ovcon in the United States at the present time.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint, except admits that Warner Chilcott marketed Ovcon after entering into the agreement with BMSLC.

**PLAINTIFFS' ALLEGATION**

36.    Ovcon is highly profitable. It is, and has been, one of Warner Chilcott's highest revenue-producing products. Ovcon's net dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

**ANSWER**

Warner Chilcott denies the allegations contained in the first and second sentences of Paragraph 36 of the Complaint, except admits that Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products, and further admits that Warner Chilcott earns a profit on Ovcon. Warner Chilcott denies the allegations contained in the third sentence of Paragraph 36 of the Complaint, except admits that the price of Ovcon has risen. Warner Chilcott admits the allegations contained in the fourth sentence of Paragraph 36 of the Complaint.

**PLAINTIFFS' ALLEGATION**

37.    In September 2001, Barr filed an ANDA with the FDA for approval to market an AB-rated generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 37 of the Complaint.

14

**PLAINTIFFS' ALLEGATION**

      38.     In January 2003, Barr publicly announced its intention to launch a generic version of Ovcon by the end of that year.

**ANSWER**

              Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 38 of the Complaint.


**PLAINTIFFS' ALLEGATION**

      39.     Barr intended to sell its generic version of Ovcon at an initial price approximately 30% below the price Warner Chilcott charged for Ovcon.

**ANSWER**

              Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 39 of the Complaint.


**PLAINTIFFS' ALLEGATION**

      40.     Warner Chilcott expected Barr to enter the market with its generic Ovcon product priced approximately 30% below the price Warner Chilcott charged for Ovcon.

**ANSWER**

              Warner Chilcott denies each and every allegation contained in Paragraph 40 of the Complaint.


**PLAINTIFFS' ALLEGATION**

      41.     Barr projected that within its first year of introduction, generic Ovcon would capture approximately 50% of Warner Chilcott's branded Ovcon sales.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 41 of the Complaint.

**PLAINTIFFS' ALLEGATION**

42. Warner Chilcott projected that within its first year of introduction, generic Ovcon would capture at least 50% of Ovcon's new prescriptions. Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three-year period.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 42 of the Complaint.

**PLAINTIFFS' ALLEGATION**

43. Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic entry occurred. Warner Chilcott's strategy was to convert Ovcon patients to Ovcon Chewable, and to stop selling Ovcon once conversion was substantially complete. This is known as a "line extension" strategy. The January 17, 2003 publication of the IRISH TIMES quotes a Galen spokesperson as saying: "At some stage there was going to be generic competition to Ovcon, which is why we took the step of filing the line extension."

**ANSWER**

Warner Chilcott denies the allegations contained in the first three sentences of Paragraph 43 of the Complaint, except admits that Warner Chilcott has developed a new, innovative, patented product, Ovcon Chewable. Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the fourth sentence of Paragraph 43 of the Complaint.

16

**PLAINTIFFS' ALLEGATION**

44.    Prescriptions for Ovcon Chewable would not be able to be filled with a generic Ovcon product because any generic version of Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 44 of the Complaint.

**PLAINTIFFS' ALLEGATION**

45.    By mid-2003, however, Warner Chilcott's "switch" strategy of converting users from non-chewable Ovcon to Ovcon Chewable was in jeopardy. Warner Chilcott's planned Ovcon Chewable had not obtained FDA approval by the time that Barr's generic Ovcon entry appeared imminent.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 45 of the Complaint, except admits that Ovcon Chewable obtained FDA approval in November 2003.

**PLAINTIFFS' ALLEGATION**

46.    In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 46 of the Complaint.

**PLAINTIFFS' ALLEGATION**

47.    By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

17

**ANSWER**

      Warner Chilcott denies each and every allegation contained in Paragraph 47 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

    48.   In August 2003, Warner Chilcott and Barr discussed potential business
arrangements under which Barr would refrain from competing with Warner Chilcott's branded
Ovcon.

**ANSWER**

      Warner Chilcott denies each and every allegation contained in Paragraph 48 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

    49.   On September 10, 2003, Warner Chilcott and Barr signed a Letter of Intent to
enter into an agreement in which Warner Chilcott would pay Barr $20 million not to compete in
the United States for a term of five years with its generic Ovcon product following Barr's final
FDA approval for generic Ovcon. Rather than enter the market as a competitor, Barr would agree
to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested,
and Warner Chilcott would pay a premium price for Barr's generic Ovcon of up to 200% of
Barr's manufacturing costs.

**ANSWER**

      Warner Chilcott denies the allegations contained in Paragraph 49 of the

Complaint, except admits that on September 10, 2003 Warner Chilcott and Barr executed a letter

of intent.  Warner Chilcott respectfully refers the Court to the letter of intent for the terms

thereof.


**PLAINTIFFS' ALLEGATION**

    50.   On March 24, 2004, Defendants signed their Agreement, as contemplated by their
Letter of Intent, and Warner Chilcott paid Barr $1 million.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 50 of the Complaint, except admits that Warner Chilcott and Barr entered into an option agreement on March 24, 2004, and further admits that Warner Chilcott paid Barr $1 million in consideration for the option. Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

51.    Under the Agreement, within 45 days after FDA approval of Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's commitment to refrain from marketing generic Ovcon in the United States, either by itself, or through a license, for five years.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 51 of the Complaint, except admits that it entered into an option agreement with Barr. Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

52.    On April 22, 2004, the FDA granted final approval of Barr's ANDA for generic Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 52 of the Complaint.

19

**PLAINTIFFS' ALLEGATION**

53.     On April 23, 2004, Barr announced its intent to begin marketing generic Ovcon under the name "Balziva" in the event Warner Chilcott chose not to exercise its option under the Agreement.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 53 of the

Complaint, except admits that Barr publicly contemplated marketing a generic Ovcon if Warner

Chilcott did not exercise its option, subject to certain risks and uncertainties associated with

making generic Ovcon commercially available.

**PLAINTIFFS' ALLEGATION**

54.     On May 6, 2004, Warner Chilcott exercised its option under the Agreement. Warner Chilcott paid Barr $19 million in exchange for Barr's agreement not to compete with Warner Chilcott by introducing generic Ovcon into the market.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 54 of the

Complaint, except admits that on May 6, 2004 Warner Chilcott exercised the option, and further

admits that Warner Chilcott paid Barr $19 million upon the exercise of the option.  Warner

Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFFS' ALLEGATION**

55.     Warner Chilcott did not begin purchasing Ovcon supply from Barr at that time, but instead continued to purchase its Ovcon requirements solely from Bristol-Myers Squibb Co. Barr began purchasing Ovcon supply from Barr approximately one year later in May 2005.

20

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 55 of the

Complaint, except admits that product under Barr's ANDA could not be sold immediately upon

FDA approval, and further admits that Warner Chilcott purchased Ovcon from BMS.


**PLAINTIFFS' ALLEGATION**

56.    Under the terms of the Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 56 of the

Complaint.


**PLAINTIFFS' ALLEGATION**

57.    Absent this Agreement, Barr would have begun marketing its generic Ovcon after it received FDA approval of its ANDA on or about April 22, 2004.

**ANSWER**

Warner Chilcott denies knowledge and information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 57 of the Complaint, except denies that Barr

had the capability to market a generic Ovcon shortly after obtaining FDA approval.


**PLAINTIFFS' ALLEGATION**

58.    Barr has abided by the Agreement not to sell generic Ovcon in the United States. To date, no other company has received FDA approval to market a generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 58 of the Complaint.

21

**PLAINTIFFS' ALLEGATION**

59.    If Barr had introduced its generic product, Plaintiffs and members of the Class, defined below, would have substituted Barr's lower-priced generic Ovcon for all or a portion of their purchases of branded Ovcon, and/or would have paid substantially less for branded Ovcon because Warner Chilcott would have lowered net Ovcon prices in response to competition.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 59 of the Complaint.

**PLAINTIFFS' ALLEGATION**

60.    As a consequence of Defendants' Agreement, Plaintiffs and members of the Class have been deprived of the benefits of free and open competition in their purchases. Purchasers of Ovcon were required to continue purchasing brand name Ovcon when a less expensive generic product would have otherwise been available.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 60 of the Complaint.

**PLAINTIFFS' ALLEGATION**

61.    Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class (the "Class"):

> All persons and entities in the United States who purchased Ovcon directly from Warner Chilcott at any time from April 22, 2004, through the present and continuing until the effects of Defendants' anticompetitive conduct have ceased ("Class Period"). Excluded from the class are Defendants and their officers, directors, employees, subsidiaries, or affiliates, and all government entities.

**ANSWER**

Paragraph 61 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies that it engaged in

22

anticompetitive conduct, and further denies that Plaintiffs are entitled to any relief whatsoever.

Warner Chilcott further denies that this suit can be litigated as class action under Federal Rule of

Civil Procedure 23(b)(3) or any other rule.


## PLAINTIFFS' ALLEGATION

62.     The Class is so numerous that joinder of all members is impracticable. Class members include wholesalers, hospitals, health maintenance organizations, and/or retail chain drug stores. Upon information and belief, the Class includes one hundred or more members, and the exact identity of Class members is ascertainable from the records of Defendants.

## ANSWER

Paragraph 62 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 62

of the Complaint.


## PLAINTIFFS' ALLEGATION

63.     There are questions of law and fact common to the Class, including but not limited to, the following:

      a.     whether Defendants combined, agreed, or conspired as alleged herein in restraint of trade;

      b.     whether Defendants' agreement, combination, or conspiracy was lawful;

      c.     whether Defendants' unlawful conduct as alleged herein has affected interstate commerce;

      d.     whether Defendants' unlawful conduct caused Plaintiffs and the other members of the Class to pay more for Ovcon and its generic equivalents than they would have paid absent Defendants' conduct;

      e.     whether Defendants' unlawful conduct caused antitrust injury to the business or property of Plaintiffs and the member of the Class and, if so, the appropriate relief and/or measure of damages.

23

**ANSWER**

Paragraph 63 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 63 of the Complaint.

**PLAINTIFFS' ALLEGATION**

64.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting individual members because Defendants have acted on grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in Defendants' collusive conduct.

**ANSWER**

Paragraph 64 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 64 of the Complaint. Warner Chilcott denies each and every allegation contained in the second sentence of Paragraph 64 of the Complaint.

**PLAINTIFFS' ALLEGATION**

65.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class members suffered antitrust injury by the same wrongful conduct by the Defendants; they have all paid artificially inflated prices for Ovcon and its generic equivalents resulting from Warner Chilcott's agreement with Barr to exclude generic competition.

**ANSWER**

Paragraph 65 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 65 of the Complaint.

24

**PLAINTIFFS' ALLEGATION**

66.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel experienced in class action and antitrust litigation. Plaintiffs have no interest in this litigation that is adverse to, or in conflict with, the interests of the other members of the Class.

**ANSWER**

Paragraph 66 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies the allegations contained in the first sentence of Paragraph 66 of the Complaint, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 66 of the Complaint.

**PLAINTIFFS' ALLEGATION**

67.     A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require. The benefits of proceeding by way of class action, including providing injured persons or entities with a method for obtaining redress on claims that they might not be able to pursue individually, substantially outweigh any difficulties that may arise in the management of a class action.

**ANSWER**

Paragraph 67 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies that a class action is superior to any other available method for the fair and efficient adjudication of this controversy, and further denies that a class action is the proper vehicle for this action.

25

**PLAINTIFFS' ALLEGATION**

68.    Plaintiffs know of no difficulty that would be encountered in the management of the claims advanced by the Class that would preclude certification.

**ANSWER**

Paragraph 68 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 68 of the Complaint.

**PLAINTIFFS' ALLEGATION**

69.    During the period relevant to this litigation, Ovcon was sold throughout the United States. Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state lines. Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

**ANSWER**

Paragraph 69 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that Ovcon is sold in the United States, but denies that Warner Chilcott has engaged in any unlawful activity.

**PLAINTIFFS' ALLEGATION**

70.    In furtherance of their unlawful conduct, Defendants employed the United States mail and interstate and international telephone lines, as well as means of interstate and international travel.

**ANSWER**

Paragraph 70 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 70 of the Complaint.

26

**PLAINTIFFS' ALLEGATION**

71.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully stated herein.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 70 of the Complaint as if fully set forth

herein.

**PLAINTIFFS' ALLEGATION**

72.     By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon out of the market, the Defendants have engaged in a continuing contract, combination, or conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 72 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 72 of the Complaint.

**PLAINTIFFS' ALLEGATION**

73.     The Defendants' contract, combination, and/or conspiracy has included concerted actions and undertakings among Defendants with the purpose and effect of fixing, raising, maintaining, or stabilizing the price of Ovcon and its generic equivalents.

**ANSWER**

Paragraph 73 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 73 of the Complaint.

27

**PLAINTIFFS' ALLEGATION**

74.     For the purpose of formulating and effectuating their contract, combination, and/or conspiracy, Defendants performed the following acts:

a.     entering into an illegal agreement by which Barr agreed not to sell generic Ovcon in U.S. commerce in exchange for monetary payment by Warner Chilcott; and

b.     depriving direct purchasers of the ability to purchase Ovcon and its generic equivalents at a competitive price.

**ANSWER**

Paragraph 74 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 74 of the Complaint, including sub-parts a) and b).

**PLAINTIFFS' ALLEGATION**

75.     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, and/or conspiracy were authorized, ordered or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

**ANSWER**

Paragraph 75 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 75 of the Complaint.

**PLAINTIFFS' ALLEGATION**

76.     Defendants' illegal contract, combination, and/or conspiracy to prevent the introduction into the U.S. marketplace of a generic version of Ovcon resulted in Plaintiffs and members of the Class paying more than they would have paid for Ovcon and its generic equivalents absent Defendants' illegal conduct.

28

**ANSWER**

Paragraph 76 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 76 of the Complaint.

**PLAINTIFFS' ALLEGATION**

77.    Defendants' contract, combination, and/or conspiracy is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 77 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 77 of the Complaint.

**PLAINTIFFS' ALLEGATION**

78.    In the alternative, Defendants' contract, combination and/or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under the "quick look" and/or rule of reason analyses, because the purpose and effect of Defendants' conduct was to unreasonably restrain competition in the sale of Ovcon and its generic equivalents. To the extent required by law, the relevant product market is Ovcon and its AB-rated generic equivalents and the relevant geographic market is the United States. Defendants had monopoly power in the relevant product market in that through the Agreement, (a) Warner Chilcott allocated 100% of that relevant market in the United States to themselves, and (b) Ovcon and its generic equivalents was sold at prices well above the competitive level without losing substantial sales.

**ANSWER**

Paragraph 78 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 78 of the Complaint.

29

**PLAINTIFFS' ALLEGATION**

79.    Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

        a.      prices for Ovcon and its generic equivalents have been fixed, raised, maintained, or stabilized at artificially high and non-competitive levels;

        b.      buyers of Ovcon have been unable to purchase lower-priced generic versions of Ovcon;

        c.      buyers of Ovcon and its generic equivalents have been deprived of the benefits of free and open competition in their purchases; and

        d.      competition in the production and sale of Ovcon and its generic equivalents has been restrained, suppressed, and eliminated.

**ANSWER**

        Paragraph 79 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 79 of the Complaint, including sub-parts a) through d).

**PLAINTIFFS' ALLEGATION**

80.    During the relevant period, Plaintiffs and members of the Class purchased substantial amounts of Ovcon from Defendants. As a result of Defendants' illegal conduct, Plaintiffs and members of the Class were compelled to pay, and did pay, artificially inflated prices for Ovcon and its generic equivalents. Those prices were substantially greater than the prices they would have paid absent the illegal agreement, combination, or conspiracy alleged herein, because they were deprived of the opportunity to: (1) pay lower prices for the generic versions of the drug; (2) pay lower prices for their Ovcon requirements by switching some of the volume of their purchases from the brand to the generic versions; and (3) pay lower prices for the brand name drug Ovcon. Members of the Class have sustained substantial losses and damage to their businesses and property in the form of overcharges. The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

**ANSWER**

        Paragraph 80 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 80 of the Complaint.

## JURY DEMAND

### PLAINTIFFS' ALLEGATION

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

### ANSWER

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

### PLAINTIFFS' ALLEGATION

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request:

1.      Certification of this case as a class action;
2.      Judgment declaring Defendants' contract, combination, or conspiracy alleged herein to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act;
3.      Judgment in Plaintiffs' favor and against Defendants for damages representing three times the overcharge damages sustained by Plaintiffs and the other members of the Class defined herein;
4.      Joint and several judgment be entered against each Defendant in favor of Plaintiffs and the other members of the Class;
5.      An award to Plaintiffs of all costs incurred, including reasonable attorneys' fees;
6.      Pre- and post-judgment interest;
7.      Such other and further relief as the Court deems just and proper.

### ANSWER

WHEREFORE, Warner Chilcott denies that this suit can be litigated as class action, denies that Plaintiffs are entitled to any relief whatsoever, and respectfully requests judgment for Warner Chilcott along with costs and attorneys' fees, as may be allowed by law, and such further relief as the Court deems appropriate. Furthermore, Warner Chilcott denies every allegation contained in the Complaint not specifically herein admitted.

31

## AFFIRMATIVE DEFENSES

Warner Chilcott states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiffs.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim against Warner Chilcott on which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE
### (Justification)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.

## SIXTH AFFIRMATIVE DEFENSE
### (Preservation of Business)

Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Injury to Competition)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's actions have injured competition in any relevant market.

## EIGHTH AFFIRMATIVE DEFENSE
### (Pro-Competitive Effects)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's alleged actions have pro-competitive effects that benefit competition as a whole in any relevant market. Warner Chilcott's alleged actions increased competition and are in furtherance of trade.

33

## NINTH AFFIRMATIVE DEFENSE
### (No Consumer Harm)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed consumers.

## TENTH AFFIRMATIVE DEFENSE
### (No Harm to Plaintiffs)

Plaintiffs' claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed Plaintiffs.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Knowledge or Intent)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no knowledge, intention or belief that its actions might illegally restrain trade.  Further, Warner Chilcott could not have known that its actions might illegally restrain trade.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Willful or Flagrant Act)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any willful, flagrant or unconscionable act.

34

### THIRTEENTH AFFIRMATIVE DEFENSE
#### (Good Faith Reliance)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott relied in good faith on the actions of the Federal Trade Commission.


### FOURTEENTH AFFIRMATIVE DEFENSE
#### (No Notice)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.


### FIFTEENTH AFFIRMATIVE DEFENSE
#### (No Concealment)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.


### SIXTEENTH AFFIRMATIVE DEFENSE
#### (Failure to Identify Appropriate Markets)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not properly alleged either a relevant product market or a relevant geographic market.


### SEVENTEENTH AFFIRMATIVE DEFENSE
#### (No Market Power)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has and had no market power.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Causation)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott's actions were not the proximate cause in fact of Plaintiffs' alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent that Plaintiffs have failed to mitigate, minimize or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Lawful Conduct)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott has acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with respect to the Plaintiffs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Not Maintainable as a Class Action)

Plaintiffs' claims are barred, in whole or in part, because the action against Warner Chilcott is not properly maintained as a class action.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Lack of Antitrust Injury)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered antitrust injury.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Pattern or Practice)

Plaintiffs' claims are barred, in whole or in part, because Warner Chilcott did not engage in any pattern or practice of illegal activity.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (No Standing)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs do not have standing.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Failure to Plead a Proper Party)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to plead a proper party.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Reservation of Additional Defenses)

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

37

## JURY DEMAND

Warner Chilcott hereby demands a trial by jury on all claims so triable.


## WARNER CHILCOTT'S PRAYER FOR RELIEF

**WHEREFORE**, Warner Chilcott prays as follows:

1.     That the Court enter judgment for Warner Chilcott on all counts;

2.     That the Court award Warner Chilcott reasonable costs and expenses

including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as

may be appropriate.


May 3, 2006                                    Respectfully submitted,


                                              /s/ Peter C. Thomas
                              By:     _____
                                      Peter C. Thomas, D.C. Bar # 495928
                                      SIMPSON THACHER & BARTLETT LLP
                                      555 11th Street, N.W.
                                      Suite 725
                                      Washington, D.C.  20004
                                      (202) 220-7700

                                      Charles E. Koob, *pro hac vice*
                                      SIMPSON THACHER & BARTLETT LLP
                                      425 Lexington Avenue
                                      New York, New York 10017
                                      (212) 455-2000

                                      *Counsel for Warner Chilcott Defendants*

38

TAB 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALGREEN CO., 200 Wilmot Road, Deerfield, IL 60015, | |
| ECKERD CORPORATION, 50 Service Road, Warwick, RI 02886, | |
| MAXI DRUG, INC., d/b/a BROOKS PHARMACY, 50 Service Road, Warwick, RI 02886, | |
| THE KROGER CO., 1014 Vine Street, Cincinnati, OH 45202, | |
| ALBERTSON'S, INC. 250 East Park Center Blvd., Boise, ID 83706, | Civil Action No. 1:06-CV-00494-CKK |
| SAFEWAY, INC., 5918 Stoneridge Mall Road, Pleasanton, CA 94588, and | Judge Colleen Kollar-Kotelly |
| HY-VEE, INC., 5820 Westtown Pkwy., W. Des Moines, IA 50266, | JURY TRIAL DEMANDED |
|         Plaintiffs, | |
|     v. | |
| WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (U.S.) INC., WARNER CHILCOTT COMPANY, INC., AND BARR PHARMACEUTICALS, INC., | |
|         Defendants. | |

BARR PHARMACEUTICAL, INC.'S
ANSWER TO PLAINTIFFS' COMPLAINT

Defendant BARR PHARMACEUTICALS, INC. ("Barr") hereby responds to the allegations of Plaintiffs WALGREEN CO., ECKERD CORPORATION, MAXIDRUG, INC. d/b/a/ BROOKS PHARMACY, THE KROGER CO., ALBERTSON'S INC., SAFEWAY, INC., and HY-VEE, INC. (collectively, "Plaintiffs") in their Complaint ("Complaint"). Barr denies it

has engaged or is engaging in any unlawful or unfair methods of competition in or affecting

commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Barr further responds to

each paragraph of the Complaint as set forth below. Any allegation in the Complaint not

specifically addressed below is hereby denied.

1.    This is a civil antitrust action seeking treble damages and other relief arising out of an unlawful horizontal agreement between Warner Chilcott and Barr, two competing sellers of an oral contraceptive marketed by Warner Chilcott under the brand name Ovcon 35 ("Ovcon"). Barr is the only company approved by the United States Food and Drug Administration ("FDA") to sell a generic version of Ovcon in competition with Warner Chilcott in the United States. Defendants have unlawfully conspired to prevent and suppress that competition. Defendants' unlawful conspiracy has deprived Plaintiffs and other Ovcon purchasers of the benefits of generic competition from approximately April 2004 to the present.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in the second sentence of Paragraph 1 of the Complaint. Barr

denies the remaining allegations contained in Paragraph 1 of the Complaint, and specifically

denies that it has engaged in any unlawful activity whatsoever.

2.    Plaintiff Walgreen Co. ("Walgreen") is an Illinois corporation having its principal place of business in Deerfield, Illinois. Walgreen owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Walgreen brings this action in its own behalf and as assignee of a pharmaceutical wholesaler, AmerisourceBergen Corporation, which purchased Ovcon directly from Warner during the relevant period for resale to Walgreen and which has assigned its antitrust claims arising from those purchases to Walgreen.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 2 of the Complaint.

3.    Plaintiff Eckerd Corporation ("Eckerd") is a Delaware corporation having its principal place of business in Warrick, Rhode Island. Eckerd owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Eckerd brings this action in its own behalf and as assignee of a pharmaceutical wholesaler, McKesson Corporation ("McKesson"), which purchased Ovcon directly from Warner during the relevant period for resale to Eckerd and which has assigned its antitrust claims arising from those purchases to Eckerd.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 3 of the Complaint.

2

4.     Plaintiff Maxi Drug, Inc. d/b/a/ Brooks Pharmacy ("Brooks") is a Delaware corporation having its principal place of business in Warrick, Rhode Island. Brooks owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Brooks brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Brooks and which has assigned its antitrust claims arising from those purchases to Brooks.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 4 of the Complaint.

5.     Plaintiff The Kroger Co. ("Kroger") is an Ohio corporation having its principal place of business in Cincinnati, Ohio. Kroger owns and operates retail stores in several states at which it dispenses prescription drugs to the public. During the relevant period, Kroger purchased Ovcon directly from Warner.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 5 of the Complaint.

6.     Plaintiff Albertson's, Inc. ("Albertson's") is a Delaware corporation having its principal place of business in Boise, Idaho. Albertson's owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Albertson's brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Albertson's and which has assigned its antitrust claims arising from those purchases to Albertson's.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 6 of the Complaint.

7.     Plaintiff Safeway, Inc. ("Safeway") is a Delaware corporation having its principal place of business in Pleasanton, California. Safeway owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Safeway brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during the relevant period for resale to Safeway and which has assigned its antitrust claims arising from those purchases to Safeway.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 7 of the Complaint.

8.     Plaintiff Hy-Vee, Inc. ("Hy-Vee") is an Iowa corporation having its principal place of business in West Des Moines, Iowa. Hy-Vee owns and operates retail stores in several states at which it dispenses prescription drugs to the public. Hy-Vee brings this action in its own behalf and as the assignee of McKesson, which purchased Ovcon directly from Warner during

the relevant period for resale to Hy-Vee and which has assigned its antitrust claims arising from those purchases to Hy-Vee.

**ANSWER:**   Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 8 of the Complaint.

9.    Defendant Warner Chilcott Holdings Company III, Ltd. is a privately owned for-profit company organized and existing under the laws of Bermuda, with its principal place of business in Rockaway, New Jersey.  Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacture and distribution of pharmaceutical products in the United States, including Ovcon.

**ANSWER:**   Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 9 of the Complaint.

10.    Defendant Warner Chilcott.Corporation is an indirect wholly owned subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct parent of Warner Chilcott (U.S.) Inc.  Warner Chilcott Corporation is a Delaware corporation with its principal place of business in Rockaway, New Jersey.

**ANSWER:**   Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 10 of the Complaint.

11.    Defendant Warner Chilcott (U.S.) Inc. is a wholly owned subsidiary of Warner Chilcott Corporation.  Warner Chilcott (U.S.) Inc. is a Delaware corporation with its principal place of business in Rockaway, New Jersey.

**ANSWER:**   Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 11 of the Complaint.

12.    Defendant Warner Chilcott Company, Inc. is a wholly owned subsidiary of Warner Chilcott Holdings Company III, Ltd.  Warner Chilcott Company, Inc. is organized and exists under the laws of the Commonwealth of Puerto Rico.

**ANSWER:**   Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 12 of the Complaint.

13.    The defendants identified in paragraphs 9 through 12 above will be referred to collectively as "Warner Chilcott."

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 13 of the Complaint.

14.    Defendant Barr Pharmaceuticals, Inc. ("Barr") is a Delaware corporation with its principal place of business in Pomona, New York.  Barr is engaged in the business of developing, manufacturing, marketing and distributing generic pharmaceutical products, including generic oral contraceptives.

**ANSWER:**    Barr admits that it is a corporation organized under the laws of the state of Delaware.  Barr further admits that its regular business activities include the development, manufacture, and marketing of various pharmaceutical products.  Barr denies the remaining allegations contained in Paragraph 14 of the Complaint.

15.    This action arises under section 1 of the Sherman Act, 15 U.S.C. § 1, and sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.  The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a).

**ANSWER:**    Paragraph 15 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 15 of the Complaint.

16.    Venue is proper in this Court pursuant to section 12 of the Clayton Act, 15 U.S.C. § 22, because each Defendant is an inhabitant of this District or is found or transacts business there.

**ANSWER:**    Paragraph 16 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 16 of the Complaint.

17.    The pharmaceutical products at issue in this case are sold in interstate commerce, and the unlawful activities alleged in this Complaint have occurred in, and have had a substantial effect upon, interstate commerce.

**ANSWER:**    Paragraph 17 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 17

of the Complaint, but denies that it has engaged in any unlawful activity that has had a

substantial effect upon interstate commerce.

      18.    Under the federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, approval by the FDA is required before a new drug may be sold in interstate commerce. Premarket approval for a new drug must be sought by filing a new drug application with the FDA, under either section 355(b) or section 355(j) of the Act, demonstrating that the drug is safe and effective for its intended use.

      **ANSWER:**    Paragraph 18 of the Complaint contains legal conclusions to which no

response is required.  To the extent a response is required, Barr admits that, among other things,

a drug manufacturer must obtain approval from the FDA before a manufacturer may lawfully

introduce a new drug in the United States.  Barr further admits that, among other things, a drug

manufacturer must file a New Drug Application with the FDA and demonstrate that a new drug

is safe and effective for its intended use.  Barr lacks knowledge or information sufficient to form

a belief as to the truth of the remaining allegations contained in Paragraph 18 of the Complaint.

      19.    In 1984, Congress amended the Food, Drug and Cosmetic Act by enacting the Drug Price Competition and Patent Term Restoration Act, commonly known as the Hatch-Waxman Amendments or the Hatch-Waxman Act.  Hatch-Waxman simplified the regulatory hurdles for prospective generic drug manufacturers by eliminating the need for generic companies to file lengthy and costly New Drug Applications ("NDAs") in order to obtain FDA approval.  Instead, such companies are permitted to file Abbreviated New Drug Applications ("ANDAs") and to rely on the safety and effectiveness data already supplied to the FDA by the brand-name manufacturer.  Hatch-Waxman also added a number of patent-related provisions to the statutory scheme.  Congress's principal purpose in enacting the Hatch-Waxman Amendments was "to bring generic drugs onto the market as rapidly as possible." *Mova Pharmaceuticals Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

      **ANSWER:**    Paragraph 19 of the Complaint contains legal conclusions to which no

response is required.  To the extent a response is required, Barr admits that the Hatch-Waxman

Act established certain procedures relating to generic pharmaceuticals.  Barr lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 19 of the Complaint.

20.    Generic drugs are drugs which the FDA has found to be bioequivalent to particular brand name drugs. When the FDA finds that a generic drug is both bioequivalent and equivalent in all other respects to a brand-name drug, it assigns the generic drug an "AB" rating. Retail pharmacies are permitted (and in some states required) to dispense an AB-rated generic drug in place of the corresponding brand-name drug unless the physician expressly dictates otherwise.

**ANSWER:**    Paragraph 20 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr admits that in some states and under certain circumstances a pharmacist may dispense an AB-rated generic drug when presented with a prescription for its branded equivalent, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20 of the Complaint.

21.    The first generic competitor to enter a market typically does so at a price at least 30% lower than the price of the equivalent brand-name drug and quickly takes a substantial amount of market share away from the brand-name manufacturer. As additional generic competitors come to market, the price of the generics continues to fall, and their combined market share continues to grow. In some cases, generic competitors sell products equivalent to brand-name prescription drugs for as little as 10% of the price of the brand-name drug, and have captured as much as 90% of the brand-name drug's pre-generic sales.

**ANSWER:**    Barr admits that generic drugs can cost less than bioequivalent branded drugs, but that each drug must be considered individually to observe pricing behavior. Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 of the Complaint.

22.    The price competition engendered by generic drug manufacturers benefits all purchasers of the drug, who are able to buy the same chemical substance at much lower prices. Retail pharmacies, such as those owned and operated by Plaintiffs, substitute generic drugs for brand-name drugs wherever possible in order to lower their costs and those of their customers.

**ANSWER:**    Barr admits that generic drugs can cost less than bioequivalent branded drugs, but that each drug must be considered individually to observe pricing behavior. Barr further admits that in some states and under certain circumstances a pharmacist may dispense an AB-rated generic drug when presented with a prescription for its branded equivalent, but lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 22 of the Complaint.

23.    Ovcon was originally approved by the FDA in 1976, and is not subject to patent protection. Warner Chilcott acquired Ovcon from Bristol-Myers Squibb Company on January 26, 2006. As part of the acquisition, Bristol-Myers Squibb agreed to supply, and has supplied, Ovcon to Warner Chilcott.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 23 of the Complaint.

24.    Ovcon's net sales have more than doubled since 2000, even as Ovcon's price has risen.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 24 of the Complaint.

25.    Ovcon is, and has been, one of Warner Chilcott's highest revenue producing products.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 25 of the Complaint.

26.    Warner Chilcott sells Ovcon at a price substantially above its cost.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 26 of the Complaint.

27.    Ovcon is highly profitable for Warner Chilcott. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million. For that same time period, Warner Chilcott's gross margin on net sales of all its products was approximately 89%.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 27 of the Complaint.

28.    In September 2001, Barr filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon in the United States.

8

**ANSWER:**   Barr admits that it filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon.   Barr denies the remaining allegations contained in Paragraph 28 of the Complaint.

29.   In January 2003, Barr publicly announced its intention to market generic Ovcon by the end of that year.

**ANSWER:**   Barr denies the allegations contained in Paragraph 29 of the Complaint, except admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

30.   Barr planned to price generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

**ANSWER:**   Barr denies each and every allegation contained in Paragraph 30 of the Complaint.

31.   Barr projected that its generic Ovcon would capture approximately 50 percent of Warner Chilcott's unit sales of branded Ovcon within the first year of introduction.

**ANSWER:**   Barr admits that it made projections regarding the sales of a generic Ovcon product.  Barr denies the remaining allegations contained in Paragraph 31 of the Complaint.

32.   Warner Chilcott projected that Barr would price its generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

**ANSWER:**   Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 32 of the Complaint.

33.   Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescriptions within the first year of introduction.  Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period.

**ANSWER:**   Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 33 of the Complaint.

9

34.    Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic Ovcon entry occurred.  Warner Chilcott's strategy was to convert its Ovcon customers to Ovcon Chewable and to stop selling Ovcon.  Prescriptions for Ovcon Chewable could not be filled at the pharmacy with generic Ovcon, because Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 34 of the Complaint.

35.    By mid-2003, however, Warner Chilcott's "switch" strategy was in jeopardy.  Entry of generic Ovcon appeared imminent, and Ovcon Chewable had not yet obtained FDA approval.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 35 of the Complaint.

36.    In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 36 of the Complaint.

37.    In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 37 of the Complaint, except admits that in August 2003 representatives of Barr and Warner Chilcott discussed a number of possible business transactions.

38.    On September 10, 2003, Warner Chilcott and Barr executed a letter of intent.  Under the parties' agreement as described in the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not enter the market and compete in the United States for five years with its generic Ovcon product once Barr received final FDA approval.  Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 38 of the Complaint, except admits that on September 10, 2003,  Barr and Warner Chilcott executed a

letter of intent to enter into an agreement that would give Warner Chilcott an option to enter into

a five year exclusive license to Barr's Ovcon ANDA and a related supply agreement.

     39.    On March 24, 2004, Defendants signed their Final Agreement implementing the
letter of intent. Warner Chilcott paid Barr $1 million upon signing the Final Agreement.

    **ANSWER:**    Barr admits that on March 24, 2004, Barr and Warner Chilcott executed an

option agreement implementing the terms of the parties' letter of intent, and further admits that

Barr was paid $1 million in consideration for the option by Warner Chilcott.

     40.    Under the Final Agreement, within 45 days after the FDA approved Barr's
generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure
Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or
through a licensee, for five years. The Final Agreement referred to this arrangement as Warner
Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

    **ANSWER:**    Barr denies each and every allegation contained in Paragraph 40 of the

Complaint, except admits that Warner Chilcott exercised its option to a five-year exclusive

license to Barr's Ovcon ANDA in May 2004.

     41.  In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon
supply from Barr, pursuant to specified payment terms. The ability to purchase supply from Barr
would arise, however, only after Barr received final FDA approval for its generic Ovcon. Both
Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and
entered the market with its generic Ovcon product, Warner Chilcott's Ovcon supply needs would
immediately be drastically reduced.

    **ANSWER:**    Barr denies each and every allegation contained in Paragraph 41 of the

Complaint, except admits that Barr and Warner Chilcott entered into a supply agreement with

specified payment terms, and further admits that Barr could not supply Warner Chilcott with

generic Ovcon under its ANDA prior to receiving FDA approval.

     42.    On April 22, 2004, the FDA approved Barr's ANDA to produce and market
generic Ovcon.

    **ANSWER:**    Barr admits the allegations contained in Paragraph 42 of the Complaint.

43.    Upon receiving final FDA approval for its generic Ovcon ANDA, Barr had the capability to market generic Ovcon in the United States and, but for the illegal agreement, would have done so.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 43 of the Complaint.

44.    On April 23, 2004, Barr publicly announced its intention to market generic Ovcon if Warner Chilcott chose not to exercise its exclusive license option.

**ANSWER:**    Barr admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

45.    On May 6, 2004, Warner Chilcott exercised the exclusive license option under the Final Agreement by paying Barr $19 million.

**ANSWER:**    Barr admits that on or about May 6, 2004, Warner Chilcott exercised the option for an exclusive license and supply, and further admits that Warner Chilcott paid Barr $19 million under the Final Agreement.

46.    Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009. Absent its illegal agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 46 of the Complaint, except admits that until approximately May 2009 Barr is obligated to supply Warner Chilcott exclusively with product produced under Barr's ANDA on generic Ovcon.

47.    Entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon and led to a significant reduction in the average price Plaintiffs and other purchasers paid for Ovcon products. By paying Barr not to compete, Warner Chilcott was able to avoid the loss of its monopoly profits and to maintain inflated, supracompetitive prices for the drug.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 47 of the Complaint.

12

48.    Barr has abided by its agreement not to sell generic Ovcon in the United States.

**ANSWER:**    Barr admits that it has not sold generic Ovcon in the United States.  Barr

denies the remaining allegations contained in Paragraph 48 of the Complaint.

49.    As of the date of this complaint, Barr remains the only company that has received
FDA approval to market a generic version of Ovcon.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 49 of the Complaint.

50.    Since approximately September 10, 2004, when Defendants executed their letter
of intent, Defendants have engaged in a continuing horizontal agreement, combination or
conspiracy, the purpose and effect of which have been to allocate to Warner Chilcott the market
for the sale of Ovcon and its generic equivalents in the United States and to eliminate
competition between Warner Chilcott and Barr in the sale of Ovcon and its generic equivalents
in the United States.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 50 of the

Complaint.

51.    Defendants' illegal agreement is a conspiracy in restraint of trade and a *per se*
violation of section 1 of the Sherman Act.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 51 of the

Complaint and specifically denies that it has engaged in any illegal activity whatsoever.

52.    In the alternative, Defendants' agreement has had a substantially adverse effect on
competition in the relevant market—the sale of Ovcon and its generic equivalents in the United
States—and is illegal under the Rule of Reason.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 52 of the

Complaint and specifically denies that it has engaged in any illegal activity whatsoever.

53.    But for Defendants' illegal agreement, Barr would have entered the market with
generic Ovcon in or about April 2004.  Barr's entry would have allowed Plaintiffs and other
purchasers to substitute lower-priced generic Ovcon for higher-priced branded Ovcon for a
substantial portion of their Ovcon purchases.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 53 of the

Complaint and specifically denies that it has engaged in any illegal activity whatsoever.

13

54.     Plaintiffs (or their assignors) have been injured in their business and property by reason of Defendants' unlawful conspiracy in restraint of trade.  Plaintiffs' injury consists of paying higher prices for Ovcon and its generic equivalents than would have been paid in the absence of Defendants' illegal conduct.  Plaintiffs' injury is injury of the type the antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

**ANSWER:**     Barr denies each and every allegation contained in Paragraph 54 of the

Complaint and specifically denies that Plaintiffs have suffered any injury whatsoever.

55.     Defendants' violations threaten continuing loss and injury to Plaintiffs unless enjoined by this Court.

**ANSWER:**     Barr denies each and every allegation contained in Paragraph 55 of the

Complaint and specifically denies that Plaintiffs have suffered any injury whatsoever.


### DEFENSES

In addition to the foregoing responses, Barr asserts the following defenses to the claims

alleged in Plaintiffs' Complaint.  Barr does not assume the burden of proof of these defenses

except where the applicable substantive law provides otherwise.

### First Affirmative Defense

1.     The Complaint fails to state a claim against Barr upon which relief can be granted.

### Second Affirmative Defense

2.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### Third Affirmative Defense

3.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

4.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

14

### Fifth Affirmative Defense

5.     Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Barr has been reasonable, based upon independent and legitimate business and economic justifications, and was taken without the purpose or effect of injuring competition.

### Sixth Affirmative Defense

6.     Plaintiffs' claims are barred, in whole or in part, because any conduct engaged in by Barr was reasonable in relation to the development and preservation of its business.

### Seventh Affirmative Defense

7.     Plaintiffs' claims are barred, in whole or in part, because none of Barr's actions have injured competition in any relevant market.

### Eighth Affirmative Defense

8.     Plaintiffs' claims are barred, in whole or in part, because Barr's actions have pro-competitive effects that benefit competition as a whole in any relevant market.

### Ninth Affirmative Defense

9.     Plaintiffs' claims are barred, in whole or in part, because none of Barr's alleged actions have harmed competition and/or consumers.

### Tenth Affirmative Defense

10.     Plaintiffs' claims are barred, in whole or in part, because Barr had no knowledge, intention, notice, or belief that Barr's actions might illegally restrain trade.  Further, Barr could not have known that its actions might illegally restrain trade.

### Eleventh Affirmative Defense

11.     Plaintiffs' claims are barred, in whole or in part, because Barr did not engage in any willful or flagrant act.

15

### Twelfth Affirmative Defense

12.     Plaintiffs' claims are barred, in whole or in part, because Barr relied in good faith on the actions and statements of the Federal Trade Commission.

### Thirteenth Affirmative Defense

13.     Plaintiffs' claims are barred, in whole or in part, because Barr did not conceal any of its actions.

### Fourteenth Affirmative Defense

14.     Plaintiffs' claims are barred, in whole or in part, because Barr did not engage in any pattern or practice of illegal activity.

### Fifteenth Affirmative Defense

15.     Plaintiffs' claims are barred, in whole or in part, because Barr's actions were a result of a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error.

### Sixteenth Affirmative Defense

16.     Plaintiffs' claims are barred, in whole or in part, because Barr's actions did not cause harm to Plaintiffs.

### Seventeenth Affirmative Defense

17.     Plaintiffs' claims are barred, in whole or in part, because Barr did not engage in any unfair or deceptive act or practice.

### Eighteenth Affirmative Defense

18.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not properly alleged either a relevant product market or a relevant geographic market.

### Nineteenth Affirmative Defense

19.     Plaintiffs' claims are barred, in whole or in part, because Barr has and had no market power and Plaintiffs have failed to allege any market power.

### Twentieth Affirmative Defense

20.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs do not have standing.

### Twenty-First Affirmative Defense

21.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered antitrust injury.

### Twenty-Second Affirmative Defense

22.     Plaintiffs' claims are barred, in whole or in part, because Barr has acted at all times in conformity with all applicable laws, statutes, ordinances, and decrees with respect to Plaintiffs.

### Twenty-Third Affirmative Defense

23.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to plead a proper party.

### Twenty-Fourth Affirmative Defense

24.     Plaintiffs' claims are barred, in whole or in part, because Barr's actions were not the proximate cause in fact of Plaintiffs' alleged damages.

### Twenty-Fifth Affirmative Defense

25.     To the extent that Plaintiffs have failed to mitigate, minimize, or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

17

### Twenty-Sixth Affirmative Defense

26.    Barr reserves the right to assert and rely on other applicable defenses as may become available or apparent, to amend its answer and/or defenses, and/or delete defenses that it determines to be inapplicable.

### JURY DEMAND

Barr hereby demands trial by jury on all claims so triable.

### PRAYER FOR RELIEF

Wherefore, Barr prays as follows:

1.    That the Court enter judgment for Barr;

2.    That the Court award Barr reasonable costs and expenses, including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.

Dated: May 22, 2006                    Respectfully submitted,

                                       Karen N. Walker (D.C. Bar # 412137)
                                       Mark L. Kovner (D.C. Bar # 430431)
                                       Chong S. Park (D.C. Bar # 463050)

                                       KIRKLAND & ELLIS LLP
                                       655 Fifteenth Street, N.W.
                                       Washington, D.C. 20005
                                       (202) 879-5000
                                       (202) 879-5200 (fax)

                                       *Attorneys for Defendant Barr*
                                       *Pharmaceuticals, Inc.*

TAB 3

THIS EXHIBIT HAS BEEN DESIGNATED
CONFIDENTIAL
AND IS FILED UNDER SEAL