**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CVS PHARMACY, INC., *et al.*,      ) <br><br> Plaintiffs,      ) <br><br> v.      ) <br><br> WARNER CHILCOTT HOLDINGS CO. <br> III, LTD., *et al.*,      ) <br><br> Defendants.      ) | Civil Action No.: 1:06-CV-00795-CKK |

**BARR PHARMACEUTICALS, INC.'S MOTION TO COMPEL ANSWERS
TO INTERROGATORIES AND THE PRODUCTION OF DOCUMENTS FROM
RITE AID CORPORATION AND RITE AID HEADQUARTERS CORPORATION**

Defendant Barr Pharmaceuticals, Inc. ("Barr") brings this motion to compel Rite Aid
Corporation and Rite Aid Headquarters Corporation (collectively, "Rite Aid")—both Plaintiffs in
*CVS Pharmacy, Inc., et al., v. Warner Chilcott Holdings Co. III, Ltd., et al.* ("CVS
Pharmacy")—to produce documents and information responsive to its discovery requests,
including: (1) documents and information regarding Combined Hormonal Contraceptives
(CHCs) other than Ovcon 35 and its generic equivalents, (2) documents and information
regarding Rite Aid's sales and pricing of Ovcon 35 and other CHCs, (3) Rite Aid's supply
agreement with McKesson Corporation (under which it purchased Ovcon 35), and (4) documents
regarding Rite Aid's joint prosecution agreement with the Federal Trade Commission ("FTC").

**INTRODUCTION**

Rite Aid refuses to produce documents that are directly relevant to the claims and
defenses in this litigation. During the course of discovery and at Rite Aid's request, Barr has
produced to Rite Aid ***more than 895,000 pages*** of material including information regarding

Defendants' manufacture and sale of Ovcon 35 and ***dozens of other CHCs***. By comparison, Rite Aid has produced to Barr a paltry 384 pages and now refuses to produce documents—admittedly in its possession—that are directly relevant to the claims and defenses asserted in this case.

*First*, Rite Aid refuses to produce any documents regarding CHCs other than Ovcon 35 and its generic equivalents. But data regarding CHCs other than Ovcon 35 are directly relevant to this case. Rite Aid claims that Defendants' License and Supply Agreements ("Agreements") unreasonably restrained trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Accordingly, Barr is entitled to present evidence that Defendants had no market power within a properly defined product market (here, the market for CHCs) and thus could have not have "unreasonably restrained trade" as Rite Aid alleges. In other words, information regarding CHCs other than Ovcon 35 is directly relevant to Barr's affirmative defenses. (*See*, *e.g.*, Barr's Answer to Plaintiffs' Complaint, Affirmative Defense No. 19.) Additionally, Rite Aid's claims are founded on a "but-for" world in which a generic version of Ovcon 35 would have been available for purchase in 2004. Information about other CHCs from this period is relevant to Rite Aid's damages claims, insofar as it will permit Barr to assess the impact of Rite Aid's hypothetical generic version of Ovcon 35.

*Second*, Rite Aid has refused to produce documents and information regarding its sales and pricing of Ovcon 35 and other CHCs. This information is relevant to Rite Aid's damages claims, as it will permit Barr to evaluate the demand for Ovcon 35 in Rite Aid's "but-for" world.

*Third*, Rite Aid refuses to produce its supply agreement with McKesson Corporation, under which it purchased Ovcon 35. This document is clearly relevant to the subject-matter of this litigation and Rite Aid cannot plausibly argue otherwise.

*Fourth*, Rite Aid refuses to produce documents regarding the existence, scope, and terms of its joint prosecution agreement with the FTC. These documents are relevant and not privileged, and should be produced.

In short, Rite Aid has refused discovery into matters directly relevant to the claims and defenses asserted in these coordinated cases. Accordingly, Barr respectfully moves the Court to compel production of documents responsive to Barr's First Request for the Production of Documents Numbers 1, 2, 3, 4, 5, 6, 8, 9, 11, 15, 18, and 22, and Barr's First Set of Interrogatories Numbers 4, 5, 6, and 7.

## BACKGROUND

On August 22, 2006, Barr served Rite Aid with its First Request for Production of Documents and First Set of Interrogatories. Barr's discovery requests seek documents and information relating to:

- Rite Aid's sales of Ovcon (Request No. 2 and Interrogatory No. 4);

- resale of Ovcon by Rite Aid's direct or indirect customers (Request No. 3);

- the prices Rite Aid charges for the CHCs it sells (Request No. 4);

- how Rite Aid decides which CHCs to sell and how to price those CHCs (Request No. 5 and Interrogatory No. 5);

- competition among CHCs (Request No. 6);

- the impact of CHC detailing and sampling on Rite Aid's business (Request No. 8);

- insurance coverage, reimbursements, co-payments, third party payor coverage, and other health benefit coverage for Ovcon (Request No. 9 and Interrogatory No. 6);

- contracts between Rite Aid and third parties for the purchase, sale, manufacture, supply, or distribution of any pharmaceutical product on an exclusive basis (Request No. 15 and Interrogatory No. 7).

Rite Aid served its responses on September 20, 2006. In its responses, Rite Aid asserted blanket objections to the above requests on relevance and burden grounds, and refused to produce

3

documents and information regarding either: (1) CHCs other than Ovcon 35 and its generic equivalents, or (2) Rite Aid's sales and pricing of Ovcon 35 and other CHCs. (*See* Rite Aid's Responses to Barr's First Request for Production of Documents, attached as Exhibit A; Rite Aid's Responses to Barr's First Set of Interrogatories, attached as Exhibit B.)

Following the deposition of Rite Aid's Vice President of Pharmacy Purchasing, Barr contacted counsel for Rite Aid to request production of documents—identified during the deposition—that, although within the scope of Barr's original discovery requests, had not been produced. These documents include: (1) Rite Aid's supply agreement with McKesson Corporation (under which it purchased Ovcon 35), and (2) documents regarding Rite Aid's joint prosecution agreement with the FTC. These documents are responsive to Barr's Requests for Production Numbers 1, 11, 15, 18, and 22, and Interrogatory Number 7.

On May 29, 2007, Rite Aid and Barr met and conferred regarding Rite Aid's discovery responses and objections. However, Rite Aid refused to produce the requested information.

## ARGUMENT

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Fed. R. Civ. P. 26(b)(1). The definition of relevant information in Rule 26(b)(1) is extremely broad. "Relevant information need not be admissible at the trial if the discovery appears ***reasonably calculated*** to lead to the discovery of admissible evidence." *Id.* (emphasis added). It is well-established that information is discoverable if there is ***any possibility*** that it is relevant to some claim or defense present in the litigation. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under Rule 26(b)(1) is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or

4

may be in the case."); *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 676 (D.D.C. 1989) ("Relevancy under [ ] Rule 26 . . . is very broadly defined, including both directly relevant material and material likely to lead to the discovery of admissible evidence."); *United States v. Am. Telephone & Telegraph*, 461 F. Supp. 1314, 1341 n.81 (D.D.C. 1978) ("The clear policy of the rules is toward full disclosure. . . . [I]t is rare that a showing can be made that a particular item of requested information is not 'relevant' under the broad definition given that word in Rule 26."). Here, Rite Aid has—without basis—refused to produce documents that are directly relevant to the claims and defenses at issue in this litigation and, indeed, has refused production of certain documents regarding Ovcon 35.

## I. DOCUMENTS AND INFORMATION REGARDING OTHER COMBINED HORMONAL CONTRACEPTIVES ARE DIRECTLY RELEVANT TO MATTERS AT ISSUE IN THIS CASE AND SHOULD BE PRODUCED.

At its core, this is a case about competition in the market for CHCs. The applicable "rule of reason" analysis focuses on the impact of a challenged practice on competition within a particular product market. *GTE New Media Servs., Inc v. Ameritech Corp.*, 21 F. Supp. 2d 27, 43 (D.D.C. 1998) (*citing Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977)) ("courts focus on the challenged restraint[']s (1) market power and (2) the effect it will have on the competition in that market."). Rite Aid contends that the relevant market here consisted of only Ovcon 35 and its generic equivalents. Information regarding other CHCs is therefore directly relevant to Barr's affirmative defenses, insofar as it will permit Barr to rebut this erroneous assertion. Additionally, this information is relevant to an assessment of Rite Aid's damages claims.

A.    **Documents And Information Regarding CHCs Other Than Ovcon 35 And Its Generic Equivalents Are Relevant to Market Definition.**

Rite Aid erroneously claims that the market for Ovcon 35 consists only of Ovcon 35 and its generic equivalents. *CVS Pharmacy* Compl. at ¶¶ 46, 48 (defining the relevant market as "Ovcon and its generic equivalents"); *see also* Expert Report of Richard J. Derman, M.D., M.P.H., at ¶ 8.A. (concluding that oral contraceptives had "significant clinical and pharmacological differences" and that as a result of these differences "oral contraceptives are not reasonably interchangeable with one another."). It is well-settled that the scope of a product market is defined by "the reasonable interchangeability of use [by consumers] [or] the cross-elasticity of demand between the product itself and substitutes for it." *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 119 (D.D.C. 2004) (*quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). The key question in this regard is "whether and to what extent purchasers are willing to substitute one [product] for the other." *Id.*; *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1074 (D.D.C. 1997).

Information regarding CHCs other than Ovcon 35 and its generic equivalents—including information on how Rite Aid selects which CHCs to stock and which CHCs Rite Aid has purchased—will show whether and to what extent Rite Aid, as a purchaser, regards CHCs as substitutable for one another. Rite Aid has defined an exceptionally narrow product market. It should not be permitted to refuse discovery of information relevant to Barr's effort to rebut these claims.[1]

---

[1]   Rite Aid has itself requested from Barr production of documents and information regarding CHCs other than Ovcon 35 and its generic equivalents. *See, e.g.*, Government Plaintiffs' Joint First Request for the Production of Documents from Defendant Barr Pharmaceuticals, Inc., attached as Exhibit C (incorporated in Rite Aid Corporation and Rite Aid Headquarters Corporation's First Set of Requests for Production of Documents from Barr Pharmaceuticals, Inc. and seeking production of documents and information regarding other CHCs, including IMS and ImpactRX data, and Barr's sales and pricing data); *see also* Plaintiffs' First Set of Requests
(Continued...)

B.    **Documents And Information Regarding Other CHCs Are Relevant to Rite Aid's Damages Claims.**

Rite Aid's entire case is founded on a "but-for" world in which a generic version of Ovcon 35 would have been available for its purchase and resale beginning in 2004. Rite Aid's damages will therefore depend on three facts: (1) the price of a hypothetical generic version of Ovcon 35, (2) the percentage of Ovcon 35 purchases that would have been replaced with generic Ovcon 35 purchases, and (3) the percentage of Ovcon 35 purchases that would have been replaced with purchases of other branded and generic CHCs.[2] Other courts have concluded that is appropriate to look to data for other CHCs to fill-in these blanks. *See, e.g., In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 323 (E.D. Mich. 2001) (noting that one method of evaluating the impact of generic entry is to "select an appropriate set of drug products that have gone off patent and enter the price and generic penetration data into a regression equation. The use of statistical regression would allow one to learn from the experience of a number of other drugs and to model the empirical findings from those drugs in a manner that matches the characteristics of the drug being evaluated. . . ."). Thus, information regarding other CHCs—including information on the prices Rite Aid has paid for other generic CHCs and information about Rite Aid's purchasing

---

for Admissions to Defendant Barr Pharmaceuticals, Inc., attached as Exhibit D (including 73 requests for admissions regarding CHCs other that Ovcon 35 and its generic equivalents).

[2]    Rite Aid will almost certainly argue that to evaluate its damages, we need look no further than the real-world impact of Balziva, introduced by Barr in October 2006. But given the volatile and ever-changing nature of the CHC market, this would sacrifice accuracy for convenience. *See* Expert Report of Richard P. Dickey, M.D., Ph.D. at ¶ 14 (stating that as of September 2006, "there were 83 oral contraceptive products available for physicians to prescribe"); Dickey Dep. at 58 (stating that, seven months later, "the count is 87"). Direct Purchaser Plaintiffs' expert witness appears to agree, stating that we should consider CHC data from 2004, when Rite Aid alleges that its hypothetical generic version of Ovcon 35 would have entered the market. *See* May 18, 2007 Expert Report of Jeffrey J. Leitzinger, Ph.D. at 29 (noting that "[w]hile data reflecting actual prices, market shares, and purchase volumes [following Balziva's October 2006 entry] are available, *these same quantities have to be estimated in the but-for world involving earlier generic entry dates.*" (emphasis added)).

patterns for other CHCs—is relevant to Rite Aid's "but-for" world, including the impact of Rite Aid's hypothetical generic version of Ovcon 35.[3]

## II.    DOCUMENTS AND INFORMATION REGARDING RITE AID'S SALES AND PRICING OF OVCON 35 AND OTHER COMBINED HORMONAL CONTRACEPTIVES ARE DIRECTLY RELEVANT TO MATTERS AT ISSUE IN THIS CASE AND SHOULD BE PRODUCED.

Rite Aid additionally objects to Barr's requests that it produce documents and information regarding its sales and pricing of Ovcon 35 and other CHCs. (*See* Ex. A, at Req. Nos. 2, 3, 4, 5, 9, and 15; Ex. B, at Interrogatory Nos. 4, 5, 6, and 7.) This information is relevant to Rite Aid's damages claims, as it will permit Barr to evaluate the demand for Ovcon 35 in Rite Aid's "but-for" world. Additionally, this information is relevant to the claims of other Plaintiffs in this coordinated proceeding, including consumers and third party payors.

On September 13, 2006, Barr filed with the Court a motion to compel the plaintiffs in *Meijer, et al., v. Warner Chilcott Holdings Co. III, Ltd., et al.* and *Walgreen Co., et al., v. Warner Chilcott Holding Co. III, Ltd., et al.* to produce sales and pricing information for Ovcon 35 and other CHCs. This motion is pending before Judge Kay. Barr will not detain the Court with a lengthy restatement of its arguments regarding the relevance of a direct purchaser's sales and pricing data. Rather, Barr refers the Court to Barr's September 2006 motion, attached hereto as Exhibit E.

---

[3]    One of the Direct Purchaser Plaintiffs' expert witness cited three sources for data regarding this hypothetical "but-for" world: (1) economic literature and empirical data regarding the effect of generic entry on *other brand name drugs*, (2) Defendants' generic penetration models and forecasts (which are based on data regarding *other CHCs*), and (3) data for *other branded products* that have experienced generic competition. March 12, 2007 Expert Report of Jeffrey J. Leitzinger, Ph.D. at 17-28. According to Leitzinger, the third category of data in particular "provide a rich laboratory in which the effects of generic entry can be tracked first-hand. . . . Indeed, one could look to the very same brands that Warner Chilcott used in its own effort to project the likely consequences of unimpeded generic competition on Ovcon 35." *Id.* at 27-28.

**III.    THE SUPPLY AGREEMENT UNDER WHICH RITE AID PURCHASED OVCON 35 IS DIRECTLY RELEVANT TO MATTERS AT ISSUE IN THIS CASE AND SHOULD BE PRODUCED.**

Rite Aid cannot plausibly argue that the agreement under which it purchased Ovcon 35 is not relevant to the subject-matter of its claims. Yet, it refuses to produce this agreement. (*See* M. Rebuck's April 13, 2007 Letter to S. Bae, attached as Ex. F.) This agreement was specifically requested and is relevant insofar as it details the rebates, discounts, and other terms that determined the net price paid by Rite Aid for Ovcon 35. (*See* Ex. A, at Req. Nos. 1, 15, and 18; Ex. B, at Interrogatory No. 7.) This price, in turn, is relevant to Rite Aid's damages claims.

**IV.    DOCUMENTS REGARDING RITE AID'S JOINT PROSECUTION AGREEMENT WITH THE FTC ARE NOT PRIVILEGED AND SHOULD BE PRODUCED.**

Rite Aid contents that it and the FTC have orally agreed to jointly prepare their related cases. (*See* Ex. F.) Barr has requested documents regarding the existence, scope, and terms of this agreement. (*See* Ex. A, at Req. No. 11.) Yet, Rite Aid refuses to produce any documents regarding this agreement. This refusal is based on Rite Aid's apparent misunderstanding of the scope of the joint defense privilege, which it has repeatedly cited in its discussions with Barr.[4] Barr does not seek production of attorney-client communications or work-product exchanged between Rite Aid and the FTC pursuant to any "oral joint defense agreement." Rather, Barr seeks discovery of documents regarding the ***agreement itself***—that is, documents regarding the existence, terms, and scope of that agreement. Such documents are discoverable and not privileged. *See, e.g., Mineba Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005) (noting that an

---

[4]    The joint defense privilege protects communications between two or more parties and their respective counsel if they are engaged in a joint defense effort. *In re Sealed Case*, 29 F.3d 715, 719 n.5 (D.D.C. 1994). The party asserting the privilege must show: (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived. *Id.*

9

oral joint defense agreement "whose existence, terms and scope are proved by the party asserting it may be enforceable").[5]

## CONCLUSION

For all of the foregoing reasons, Barr respectfully requests that the Court order Rite Aid to produce documents and information responsive to its discovery requests, including: (1) documents and information regarding CHCs other than Ovcon 35 and its generic equivalents, (2) documents and information regarding Rite Aid's sales and pricing of Ovcon 35 and other CHCs, (3) Rite Aid's supply agreement with McKesson Corporation, and (4) documents regarding Rite Aid's joint prosecution agreement with the FTC.

Date: June 28, 2007                              Respectfully submitted,

                                                 /s/ Karen N. Walker
                                                 Karen N. Walker (D.C. Bar # 412137)
                                                 Mark L. Kovner (D.C. Bar # 430431)
                                                 Chong S. Park (D.C. Bar # 463050)
                                                 Patrick M. Bryan (D.C. Bar # 490177)
                                                 KIRKLAND & ELLIS LLP
                                                 655 Fifteenth Street, N.W.
                                                 Washington, District of Columbia 20005
                                                 Telephone: (202) 879-5000
                                                 Facsimile: (202) 979-5200

                                                 *Counsel for Barr Pharmaceuticals, Inc.*

---

[5]    In the alternative, Barr requests that the Court order Rite Aid to produce a log of all purportedly privileged communications and documents exchanged between it and the FTC under this agreement.