# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION, *et al.*,

                          Plaintiff,

        v.

WARNER CHILCOTT HOLDINGS
COMPANY III, LTD., *et al.*,

                       Defendants.

Civil Action Nos.   1:05-CV-02179-CKK
                          1:05-CV-02182-CKK

## PLAINTIFF FEDERAL TRADE COMMISSION'S AND PLAINTIFF STATES' JOINT FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS FROM DEFENDANT BARR PHARMACEUTICALS, INC.

Pursuant to Federal Rule of Civil Procedure 34, Defendant Barr Pharmaceuticals, Inc.

shall produce one set of the documents described below within 30 days after service at the offices

of the Federal Trade Commission, c/o Bradley S. Albert, 601 New Jersey Avenue, NW,

Washington, DC 20580 and one set to Attorney General, c/o Devin M. Laiho, 1525 Sherman

Street, 5th Floor, Denver, CO 80203.

## DEFINITIONS

A.    "Barr," "You," "Yours," or "the Company" refers to Barr Pharmaceuticals, Inc., Barr

    Laboratories, Inc., and Duramed, as well as their current and former parents, subsidiaries,

    affiliates, predecessors and successors.

B.    "ANDA" refers to an Abbreviated New Drug Application as defined at 21 U.S.C. §
      355(j), *et seq*.

C.    "Barr Contraceptive Product" refers to any oral contraceptive or combined hormonal
      contraceptive Product marketed, sold, manufactured, or developed by Barr.

D.    "Barr's Generic Ovcon" refers to the Product approved by the FDA as ANDA Nos.
      076198 and 076238.

E.    "Branded Contraceptive" refers to any oral contraceptive or combined hormonal
      contraceptive that the FDA has approved for introduction in interstate commerce under
      any application requiring submission of safety and effectiveness information.

F.    "Bristol-Myers Squibb" refers to Bristol-Myers Squibb Company, as well as its current
      and former parents, subsidiaries, and affiliates.

G.    "Communication" is used in the broadest possible sense, and means every conceivable
      manner or means of disclosure, transfer, or exchange of oral, written, or electronic
      information between one or more persons or entities.

H.    "Consumer" refers to any Person for whom a Finished Drug Product is prescribed by a
      licensed physician or other health care provider.

I.    "Document" or "documents" is used in the broadest possible sense and means, without

limitation, any written, printed, typed, photocopied, photographed, recorded, or otherwise

reproduced or stored communication or representation, whether comprised of letters,

words, numbers, data, pictures, sounds, or symbols, or any combination thereof.

"Document" means anything which may be considered to be a document or tangible thing

within the meaning of Rule 34 of the Federal Rules of Civil Procedure, and includes,

without limitation, correspondence, memoranda, notes, records, letters, envelopes,

telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts,

analytical records, reports and/or summaries of investigations, press releases,

comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets,

pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes

of meetings or communications, Electronically Stored Information of all kinds,

questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes,

disks, data cells, print-outs of information stored or maintained by electronic data

processing or word processing equipment, all other data compilations from which

information can be obtained (by translation, if necessary, by you through detection

devices into usable form), including, without limitation, electromagnetically sensitive

storage media such as floppy disks, hard disks and magnetic tapes and any preliminary

versions, as well as drafts or revisions of any of the foregoing, whether produced or

authored by Barr or anyone else.

J.    "Electronically Stored Information" refers to any portion of data available only on a
      computer or other device capable of storing electronic data, where such data is capable of
      being manipulated as an entry. "Electronically Stored Information" includes, but is not
      limited to, e-mail, spreadsheets, databases, word processing documents, images,
      presentations, application files, executable files, log files, and all other files present on
      any type of device capable of storing electronic data. Devices capable of storing
      Electronically Stored Information include, but are not limited to: servers, desktop
      computers, portable computers, handheld computers, flash memory devices, wireless
      communication devices, pagers, workstations, minicomputers, mainframes, and any other
      forms of online or offline storage, whether on or off company premises.

K.    "FDA" refers to the United States Food and Drug Administration.

L.    "Finished Drug Product" refers to a drug in the form in which it is ultimately dispensed to
      a Consumer.

M.    "FTC" refers to the Federal Trade Commission.

N.    "Generic Contraceptive" refers to an oral contraceptive or combined hormonal
      contraceptive which is (1) a Finished Drug Product that the FDA has approved for
      introduction in interstate commerce under any application requiring a determination of
      bioequivalence to any Branded Contraceptive, or (2) any Finished Drug Product

4

introduced in interstate commerce under a license (or other assignment) from an owner or holder of an application by the FDA by which the licensee markets a Finished Drug Product under such approved application.

O.  "Generic Ovcon" or "generic version of Ovcon" refers to any Product, whether approved by the FDA or not, that is bioequivalent to Ovcon.

P.  "ImpactRX" refers to ImpactRX®, Inc., as well as its current and former parents, subsidiaries and affiliates.

Q.  "ImpactRX data" or "ImpactRX reports" refers to any data or reports obtained from ImpactRX, whether in their original form or incorporated in other documents.

R.  "IMS" refers to IMS Health, Inc., as well as its current and former parents, subsidiaries, and affiliates.

S.  "IMS data" or "IMS reports" refers to any data or reports obtained from IMS, whether in their original form or incorporated in other documents.

T.  "Ovcon" refers to the Products marketed by Warner Chilcott as Ovcon-35 and Ovcon-50 in both 21-day and 28-day regimens.

U.    "Ovcon Chewable" refers to the Product Warner Chilcott developed as a chewable form of Ovcon.

V.    "Person" refers to natural persons, firms, partnerships, associations, joint ventures, corporations, sole proprietorships, and governmental entities, divisions, departments and agencies, including, but not limited to, Warner Chilcott and Barr.

W.    "Product" refers to both the commercialized version of a drug, as well as any pre-commercialized, proposed, or anticipated versions of a drug.

X.    "Relate to" is used in the broadest possible sense and means, in whole or in part, addressing, analyzing, concerning, constituting, containing, commenting, in connection with, dealing with, discussing, describing, embodying, evidencing, identifying, pertaining to, referring to, reflecting, reporting, stating, or summarizing.

Y.    "Relevant Barr Officials" refers to those Barr personnel listed on Schedule A of Warner Chilcott's Initial Disclosures, including:  Bruce Downey, Frederick J. Killion, Timothy Sawyer, Tim Catlett, Carole Pasquaretta, Carol Ben-Maimon, and Paul Bisaro.

Z.    "Summation" refers to the litigation support software marketed by CT Summation, Inc.

AA.    "Tenure" refers to the number of consecutive months that a woman takes an oral

contraceptive or combined hormonal contraceptive.


BB.    "Warner Chilcott," refers to Warner Chilcott Holdings Company III, Ltd., Warner

Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and

Galen (Chemicals) Ltd., as well as their current and former parents, subsidiaries,

affiliates, predecessors and successors.


CC.    "Warner Chilcott/Barr Agreement" refers to: (i) the Letter of Intent between Warner

Chilcott and Barr, signed on September 10, 2003 (BARR-07-0010-BARR-07-0018), (ii)

the Option and License Agreement Between Galen and Barr, signed on March 24, 2004

(BARR-29-00011-BARR-29-00039), (iii) the Finished Product Supply Agreement

(BARR-29-00040-BARR-29-00067), signed on March 24, 2004; and (iv) any other

agreements between Warner Chilcott and Barr relating to Ovcon.


## INSTRUCTIONS

A.    Unless otherwise indicated, these Requests cover any and all documents generated,

prepared, created, sent, or received during, and all documents relating to, the period from

January 1, 2000 to the present.


B.    Documents requested are those in actual or constructive possession, custody, or control of

Barr, and its representatives, attorneys, and other agents, including but not limited to,

consultants, accountants, lawyers, or any other Persons retained, consulted by, or working on behalf or under the direction of Barr, wherever they may be located.

C.    If you produce documents as they are kept in the ordinary course of business, designate the source and location of each responsive document, including the corporate entity and/or Person from which or whom it was obtained.

D.    Produce all documents in complete, unredacted form, unless privileged.  Submit documents as stored by the Company or individual.  Mark each page of each document with corporate, custodian identification and with consecutive Bates numbers.  Provide a translation of non-English documents into English; submit the foreign language document, with the English translation attached.

    1.    You may, with the prior approval from the FTC, submit copies of original hard copy documents as either hard copies or electronic copies in lieu of original documents, provided that such copies are accompanied by an affidavit of an officer of the company stating that the copies are true, correct, and complete copies of the original documents.

        a.    Hard copies.  Provide color photocopies where the original document is in color.  Mark each page with corporate, custodian identification and with consecutive Bates numbers.  Submit copies in sturdy cartons not larger than 1.5 cubic feet.  Number and mark each box with corporate identification.  Produce all documents as they are kept in the ordinary

8

course of business (e.g., produce documents that in their original condition were stapled, clipped, or otherwise fastened in the same form).

b.  Electronic copies.  You may submit original hard copy documents as fully text-searchable electronic copies in single-page, 300 DPI (dots per inch) - Group IV TIFF (tagged image file format) files, named for the Bates number of the document, and accompanied by a Summation image load file (*.dii) which denotes the appropriate information to allow the loading of the images into Summation with all document breaks (document delimitation) preserved, and a corresponding text file containing the optical character recognition (OCR) for either each page or each document.

2.  Electronically Stored Information.  You may, with the prior approval of the FTC, produce Electronically Stored Information in the following forms and formats, provided that such copies are true, correct, and complete copies of the original documents:

a.  Microsoft Excel files must be submitted in native format.

b.  TIFF files.  Submit files as single-page, 300 DPI - Group IV TIFF files, with a corresponding file containing the extracted text from the document. Name each file, comprised of both images and text, for the Bates number of the document.  Include a Summation DII file that denotes the appropriate information and allows the loading of the images into Summation, while preserving all document breaks (document

9

delimitation). Include metadata and other information about the
documents in delimited ASCII format. Produce Microsoft PowerPoint
presentations in "Notes Pages" format. "Notes Pages" includes a small
version of the slide that appears at the top of the page with any notes
appearing directly below.

c.    PDF format. Electronic Files produced in PDF format must be searchable
and include all metadata and attachments.

d.    Native format. Submit files, accompanied by a Summation Class III DII
file containing document control numbers for each document. Provide any
documents that are originally stored in .ZIP format, or any other
compressed format, as extracted, uncompressed files. Microsoft Outlook
files may be produced as Outlook .PST files. Each .PST file should
contain e-mails from only one custodian, and should be accompanied by a
Summation Class III DII file containing a Bates number and Message ID
for each e-mail. Please note that any .MSG files located on a file system
should be treated as an electronic document and not as an e-mail. All
other e-mail formats must be produced in TIFF or PDF formats.

3.    Data productions as ASCII text files. You may submit database files, with prior
approval, as delimited ASCII text files, with field names as the first record, or as
fixed-length flat files with appropriate record layout. For ASCII text files, provide
field-level documentation and ensure that delimiters and quote characters do not
appear in the data. All database files should include or be accompanied with the

10

definitions of the field names, codes, and abbreviations used in the database and, upon request from the FTC, the instructions for using the database. The FTC may require that a sample of the data be sent for testing. File and record structures must conform to the following requirements:

     i.     File structures. The FTC will accept sequential files only. Convert all other file structures into sequential format.

     ii.     Record structures. The FTC will accept fixed-length records only. Include all data in the record as it would appear in printed format: i.e., numbers unpacked, decimal points and signs printed.

4.     Submit Electronically Stored Information and images in any combination of the following forms:

     a.     For any production over 10 gigabytes, use IDE and EIDE hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data.

     b.     For productions under 10 gigabytes, CD-R CD-ROMs formatted to ISO 9660 specifications and DVD-ROM for Windows-compatible personal computers are also acceptable storage formats.

5.     The FTC will scan all electronic media for viruses and return any infected media for replacement.

E.     If you object to any part of a Request, set forth the basis for your objection and respond to all parts of the Request to which you do not object. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions

11

thereof, shall be waived. All objections must be made with particularity and must set forth all the information upon which you intend to rely in response to any motion to compel.

F.     All objections must state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the scope of any search for documents or withholding any responsive document. If you are withholding responsive information pursuant to any general objection, you should so expressly indicate. If, in responding to any Request, you claim any ambiguity in interpreting either the Request or a definition or instruction applicable thereto, set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the Request, and produce all documents that are responsive to the Request as you interpret it.

G.     You are to produce entire documents, including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs and labels appended to or containing any documents. Copies which differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these Requests. If you have redacted any portion of a document, stamp the word "redacted" where the redacted material originally appeared, on each page of the document that you have

12

redacted. Privileged redactions must be included in a privilege log prepared pursuant to paragraph H; any non-privileged redactions must also be included in a log describing the basis for redaction, prepared pursuant to paragraph I.

H.     If any privilege is claimed as a ground for not producing a document or tangible thing, provide a privilege log describing the basis for the claim of privilege and all information necessary for plaintiffs and the Court to assess the claim of privilege, in accordance with Federal Rule of Civil Procedure 26(b)(5). Separately, for each document and attachment withheld or redacted, the log shall include the following: (i) specific grounds for the claim of privilege; (ii) the title of the document or attachment; (iii) the date of the document or attachment; (iv) the author of the document or attachment; (v) the addressees and recipients of the document or attachment or any copy thereof (including persons "cc'd," or "bcc'd" or "blind cc'd"); (vi) a description of the subject matter of the document or attachment in sufficient detail to assess the claim of privilege; (vii) the Bates range or page length of the document or attachment; and (viii) the Request to which the document or attachment is responsive. Additionally, for each document withheld under a claim of attorney work product immunity, state whether the document was produced in anticipation of litigation or for trial, and, if so, identify the anticipated litigation or trial upon which the assertion is based. Any attachment to a document withheld under a claim of privilege or immunity shall be produced unless the attachment is also subject to a claim of privilege or immunity, and the basis for such claim is described in a privilege log.

13

I.    If any documents are redacted on a basis other than privilege, provide the information and reason for redacting that document per instruction H.

J.    Whenever necessary to bring within the scope of a Request a response that might otherwise be construed to be outside its scope, the following constructions should be applied:

1.    Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the Request more inclusive;

2.    Construing the singular form of any word to include the plural and the plural form to include the singular;

3.    Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

4.    Construing the masculine form to include the feminine form; and

5.    Construing the term "Date" to mean the exact day, month, and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

K.    These Requests exclude any documents that Barr has previously produced to the FTC in the course of FTC file number 041-00341, the investigation which led to the issuance of the complaint in this litigation.

14

L.      Unless otherwise stated, each paragraph of these Requests shall be construed

        independently and without reference to any other paragraph for the purpose of limitation.

M.      A written response to these Requests, as well as all responsive documents, should either

        be produced or made available for inspection and copying at the offices of counsel for

        Plaintiff within the time prescribed by Fed. R. Civ. P. 34, unless otherwise agreed.

N.      These Requests are continuing in nature, and you must supplement your responses

        pursuant to Federal Rule of Civil Procedure 26(e).

O.      If you have any questions, please contact Bradley S. Albert at 202-326-3670.

## DOCUMENTS REQUESTED

1.      One copy of each organization chart and personnel directory for the Company as a whole

        and for each of the Company's facilities or divisions involved in any activity relating to

        oral contraceptives or combined hormonal contraceptives.

2.      Documents that relate in any way to any departures from the Company's policies,

        procedures, and practices relating to the retention and destruction of documents that

        would otherwise be called for by these Requests.

3.   All documents that relate in any way to any investor conference calls or meetings relating to Ovcon, Ovcon Chewable, or the introduction of a generic version of Ovcon.

4.   All documents that relate in any way to any presentation to industry analysts or to industry conferences relating to Ovcon, Ovcon Chewable, or the introduction of a generic version of Ovcon.

5.   A copy of each final audited annual financial statement since 2000.

6.   A copy of the most recent resume or curriculum vitae for the Relevant Barr Officials.

7.   All documents that relate in any way to the Warner Chilcott/Barr Agreement, including, but not limited to, discussions, analyses, consultant reports, communications, forecasts, projections, presentations, or negotiations, concerning the Warner Chilcott/Barr Agreement, and drafts of the Warner Chilcott/Barr Agreement (whether or not incorporated in the executed agreement).

8.   All documents that relate in any way to Barr's plans for Generic Ovcon, including, but not limited to:  business plans; short term and long range strategies and objectives; collaboration plans, budgets and financial projections; regulatory plans; and, presentations to management committees, executives committees, or boards of directors.

9.    All documents that relate in any way to Barr's efforts or preparations to begin commercial marketing of Generic Ovcon, including, but not limited to: product launch checklists, oral contraceptive clinical communications status reports, and launch packs.

10.    All documents that relate in any way to the projected or anticipated effect that a generic version of Ovcon would have on Warner Chilcott's sales, revenues, or profits of Ovcon.

11.    All documents that relate in any way to the projected or anticipated effect that any Branded Contraceptive or Generic Contraceptive (other than a generic version of Ovcon) would have Warner Chilcott's sales, revenues, or profits of Ovcon.

12.    All documents that relate in any way to the projected or anticipated effect that any Branded Contraceptive or any Generic Contraceptive, including but not limited to Ovcon Chewable, would have on Barr's sales, revenues, or profits of any Barr Contraceptive Product, including but not limited to Barr's Generic Ovcon.

13.    For each rebate period from January 1, 1998 to the present, with respect to the sales of any Barr Contraceptive Product, all documents that relate in any way to the Medicaid Rebate Program under 42 U.S.C. § 1396r-8, including, but not limited to:

    a.    agreements with the Department of Health and Human Services, or the Centers for Medicaid and Medicare Services;

17

b.      submissions of Barr to the Department of Health and Human Services or the Center for Medicaid and Medicare Services or the Plaintiff States pursuant to the Medicaid Rebate Program; and

c.      calculations of the "manufacturer's best price," "average manufacturer price," "the manufacturer's average sales price," the "manufacturer's wholesale acquisition cost," and "sales made at a nominal price," as those terms are defined in 42 U.S.C. § 1396r-8.

14.      All documents that relate in any way to the inventory and distribution of Barr Contraceptive Product samples required to be maintained pursuant to 21 U.S.C. § 353(d)(3)(C).

15.      All documents that relate in any way to the Barr's manufacture, production, or sale of Ovcon or Generic Ovcon for Warner Chilcott.

16.      All documents that relate in any way to communications between Warner Chilcott and Barr concerning Ovcon, Ovcon Chewable, or Generic Ovcon.

17.      A copy of each Warner Chilcott purchase order for Ovcon or Generic Ovcon from Barr.

18.    All documents that relate in any way to Barr's performance in manufacturing and/or delivering Ovcon or Generic Ovcon to Warner Chilcott pursuant to each purchase order provided in response to Document Request No. 17.

19.    All documents that relate in any way to Warner Chilcott purchases of Ovcon supply from Bristol-Myers Squibb.

20.    All documents that relate in any way to the validation required by the FDA of Barr's manufacturing process for Barr's Generic Ovcon.

21.    All documents that relate in any way to any actual or proposed changes made by Barr to the placebo pill used in Barr's Generic Ovcon.

22.    All documents that relate in any way to the risk of cross-contamination in those circumstances in which an oral contraceptive placebo pill is the same size as an oral contraceptive active ingredient pill.

23.    All documents that relate in any way to Barr's compliance with current Good Manufacturing Practices (cGMPs) for any Barr facility that manufactures any Barr Contraceptive Product.

19

24.    Documents sufficient to identify the production capacity for any Barr facility, including, but not limited to, any portion of a manufacturing facility, such as a manufacturing line, that is used or capable of being used to produce any Barr Contraceptive Product.

25.    Documents sufficient to identify the other products manufactured on any line used or capable of being used to produce Ovcon or any Barr Contraceptive Product.

26.    For each product manufactured on any line used or capable of being used to produce Ovcon or any Barr Contraceptive Products, from January 2003 to the present, documents sufficient to determine any and all revenues and costs of producing, manufacturing, marketing, and/or selling each product on a monthly, quarterly, and annual basis, including the following measures of costs and profits:

a.    gross revenue;

b.    net revenue;

c.    cost of goods sold;

d.    manufacturing cost;

e.    sales and/or distribution cost;

f.    marketing cost;

g.    any and all other costs, including but not limited to allocation of depreciable equipment, capital improvements, research and development, technology related expenses, and licensing fees and/or royalties, individuated by category;

h.    short-run average variable costs;

20

      i.      long run average variable costs;

      j.      fixed costs;

      k.     materials cost;

      l.      labor cost; and

      m.    marginal cost.

27.     One copy of each agreement in which Barr manufactures or supplies a Finished Drug

Product for another company.

28.     All documents that relate in any way to setting or prioritizing production schedules for

any manufacturing line that produces or could produce Ovcon or Generic Ovcon.

29.     All documents that relate in any way to whether, and how, the introduction of any oral

contraceptive product or combined hormonal contraceptive would affect Barr's

distribution of samples of any Barr Contraceptive Product.

30.     All documents that relate in any way to Barr's strategies, plans, objectives, or policies

with respect to the distribution of samples of any Barr Contraceptive Product to

physicians, including, but not limited to:

      a.     the decision whether to distribute samples of a Barr Contraceptive Product;

      b.     the decision whether, and when, to discontinue the distribution of Barr

            Contraceptive samples;

21

     c.     the standards for determining the number of samples for Barr to distribute; and

     d.     the standards for determining how Barr allocates the number of Barr

          Contraceptive samples to be distributed to particular physicians.

31.     All documents that relate in any way to the FDA regulatory approval of Barr's Generic

     Ovcon.

32.     All IMS reports or IMS data in electronic format for oral contraceptives or combined

     hormonal contraceptives from January 1, 1998 to the present.

33.     All ImpactRX reports or ImpactRX data in electronic format for oral contraceptives or

     combined hormonal contraceptives from January 1, 1998 to the present.

34.     From January 1, 1998 to the present, for each SKU of each Barr Contraceptive Product,

     all documents in electronic format relating to any measure of the sales, price, revenues,

     profit, and marketing expense of each SKU, including, but not limited to:

     a.     gross and net sales in units and dollars;

     b.     gross number and dollar value of promotional sample units distributed;

     c.     gross and net profits in dollars;

     d.     cost of goods sold in dollars;

     e.     sales, promotion, or marketing expenses; and

     f.     rebates, credits, allowances, charge-back, and any other adjustments to price.

35.    All documents that relate in any way to pricing plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, pricing projections, and pricing decisions regarding Barr's Contraceptive Products.

36.    All forecasts, analyses, projections, consultant reports, business plans, strategic plans, launch packs, or planning documents that relate in any way to generic substitution with respect to any Barr Contraceptive Product.

37.    All analyses, studies, surveys, or other data concerning the use of contraceptives, including, but not limited to:

    a.    the average Tenure of a woman using a Branded Contraceptive;

    b.    the average Tenure of a woman using a Generic Contraceptive;

    c.    the average Tenure of a woman using a Branded Contraceptive that is sampled to physicians;

    d.    the average Tenure of a woman using Ovcon.

38.    A copy of each manufacturing or supply agreement for a Finished Drug Product between Barr and any other company relating to any Barr Product.

39.    All documents that relate in any way to the advantages or benefits, or disadvantages or concerns, of entering into an exclusive supply agreement.

23

40.     All documents that relate in any way to the advantages or benefits, or disadvantages or concerns, of entering into a supply agreement that was not exclusive.

41.     Provide one month supply of each Barr Contraceptive Product in both trade and sample form.

42.     All documents that relate in any way to the benefits or savings generic drugs provide to consumers.

43.     All documents Barr intends to use in defense of the allegations in the Complaint or in support of your affirmative defenses.

Respectfully submitted,


WILLIAM BLUMENTHAL                    _____/s/_____
(D.C. Bar #339283)                   MARKUS H. MEIER (D.C. Bar # 459715)
General Counsel                      BRADLEY S. ALBERT
                                     THOMAS H. BROCK (D.C. Bar # 939207)
JOHN A. SINGER (D.C. Bar # 411894)
Attorney                             Attorneys for Plaintiff
Office of the General Counsel        Bureau of Competition
Federal Trade Commission            Federal Trade Commission
                                     600 Pennsylvania Avenue, N.W.
                                     Washington, D.C. 20580
                                     Telephone: (202) 326-3759
                                     Facsimile: (202) 326-3384

                                     STATE OF COLORADO
                                     JOHN W. SUTHERS
                                     Attorney General

                                     _____/s/_____
                                     DEVIN M. LAIHO
                                     Assistant Attorney General

                                     Consumer Protection Section
                                     Attorneys for the State of Colorado
                                     State of Colorado
                                     1525 Sherman Street, 5th Floor
                                     Denver, CO 80203
                                     Telephone: (303) 866-5079