IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CVS PHARMACY, INC., <br> RITE AID CORPORATION, <br> RITE AID HDQTRS. CORP, <br>    Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS CO. III, INC., <br> WARNER CHILCOTT CORP., WARNER <br> CHILCOTT (US), INC., WARNER CHILCOTT CO., <br> INC., and BARR PHARMACEUTICALS, INC. <br>    Defendants. | CIVIL ACTION <br> No. 06-00795-CKK <br><br> Judge Colleen Kollar-Kotelly |

**MEMORANDUM OF PLAINTIFFS RITE AID CORPORATION
AND RITE AID HDQTRS. CORP. IN OPPOSITION
TO DEFENDANT BARR PHARMACEUTICALS, INC.'S MOTION
TO COMPEL ANSWERS TO INTERROGATORIES
AND THE PRODUCTION OF DOCUMENTS**

Plaintiffs Rite Aid Corporation and Rite Aid Hdqtrs. Corp. ("Rite Aid") respectfully submit this memorandum in opposition to defendant Barr Pharmaceuticals, Inc.'s Motion to Compel Answers to Interrogatories and the Production of Documents ("Motion to Compel") (Dkt. No. 68, filed June 28, 2007).

## BACKGROUND

The genesis of this motion dates back to September 20, 2006. That is the date on which Rite Aid served its responses to the Requests for Production of Documents and Interrogatories that Barr had propounded. Within a month of serving those responses, Rite Aid produced not only the documents and data that it had agreed to produce, but also the Rite Aid witness that Barr requested to depose.

After the October 19 deposition of Rite Aid's witness, David Vucurevich, Rite Aid heard nothing from Barr regarding the adequacy of its discovery responses for nearly six months. Although Barr had filed a motion to compel certain discovery from other direct purchaser plaintiffs in September 2006,[1] it did not move to compel Rite Aid to produce additional discovery at that time. It was not until April 3, 2007 that Barr's counsel first contacted Rite Aid to challenge certain of the objections Rite Aid lodged in its September 2006 responses and at the October 2006 deposition.

Barr's Motion to Compel seeks four categories of documents: 1) downstream sales information; 2) detailed information regarding dozens of Combined Hormonal Contraceptive ("CHC") products; 3) Rite Aid's confidential agreement with McKesson Corporation; and 4) documents relating to Rite Aid's joint prosecution agreement with the Federal Trade Commission ("FTC"). Barr is not entitled to any of this discovery on the present record.

## ARGUMENT

### A. Barr's Motion Should Be Denied Because It Is Untimely.

As an initial matter, Barr's motion is untimely. Barr has known for nine months that Rite Aid objects to every one of the categories in Barr's motion to compel. Rite Aid's objections were clearly stated in its September 2006 discovery responses and at the October 2006 deposition. Yet Barr waited until June 28, 2007 to file this motion -- roughly a week before the July 6, 2007 close of fact discovery. *See* Order dated February 15, 2007 (Dkt. No. 54). There is no justification for this delay, and Barr's motion should be denied on that ground alone.

---

[1] *See Defendant Barr Pharmaceuticals Inc.'s Motion to Compel Answers to Interrogatories and the Production of Documents* (filed against the *Meijer* and *Walgreen* Plaintiffs, September 13, 2006) (attached as Ex. E to Motion to Compel).

Courts do not hesitate to deny motions to compel discovery that are served long after the moving party is on notice of a discovery dispute, particularly where that party can offer no justification for its delay. *See, e.g., Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Services North America L.L.C.*, No. 03-C-760, 2004 WL 3021842, *4 -*6 (N.D. Ill. Dec. 30, 2004) (denying motion to compel where moving party waited a year to file motion and motion was filed four days before the close of discovery). Granting Barr's motion would effectively extend the discovery deadline and likely would result in a completely unwarranted and unnecessary delay in the Court's existing pretrial schedule.

Even in the absence of a specific deadline for filing motions to compel, courts have recognized that litigants cannot wait indefinitely to bring discovery disputes before the court. In evaluating the timeliness of a motion to compel discovery, courts have looked primarily at three factors: (1) the length of the movant's delay; (2) whether the delay is justified; and (3) whether granting the motion would extend the pretrial schedule. *See Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, No. 05-C-6022, 2007 WL 1673563 (N.D. Ill. June 8, 2007); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331 (N.D. Ill. 2005); *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Services North America L.L.C.*, 2004 WL 3021842, *4-*6. In this case, all three factors militate against Barr's motion.

First, the length of the delay is substantial. This case is a little over a year old,[2] which means that Barr has been sitting on its motion to compel for most of the time the case has been pending. Delays of shorter duration have led to the denial of a motion to compel. *See Fast*

---

[2] The complaint in this case was filed on May 1, 2006. *See* Complaint, (Dkt. No. 1).

3

*Food Gourmet*, 2007 WL 1673563, *3 (three-month delay); *In re Sulfuric Acid*, 231 F.R.D. at 341 (eight-month delay).

Second, Barr has offered no justification for waiting to file its motion, and Rite Aid is not aware of any justification. While discovery was stayed for several months in late 2006 and early 2007, that stay expired many months ago. Since then, the parties have been completing fact depositions and serving expert reports. Barr's dilatoriness is both unexplained and inexplicable.

Third, granting Barr's motion likely would result in substantial additional discovery that could not be completed within the Court's current pretrial schedule. As noted above, fact discovery in these cases closed on July 6, 2007. All discovery is required to be completed by August 22, 2007, and the Court has scheduled a status conference to establish a briefing schedule for dispositive motions on September 7, 2007. The discovery Barr is seeking is extensive and could not possibly be completed before August 22. Moreover, much of the data Barr is seeking relate to various areas of expert testimony and may result in supplemental expert reports and additional expert depositions.

Where (as here) the result of granting a late-filed motion to compel would be a substantial delay in the pretrial schedule, the motion should be denied. *See Fast Food Gourmet*, 2007 WL 1673563, *4 (denying motion to compel because, "if the motion were granted, potentially extensive, additional discovery would be required"); *Ridge Chrysler Jeep*, 2004 WL 3021842, *6 (denying motion to compel that, while filed before the discovery cutoff, was filed "so late as to make it impossible to conduct the requested discovery within the discovery period"); *United States v. Philip Morris USA, Inc.*, 219 F.R.D. 203, 205-06 (D.D.C. 2004)

4

(denying late-filed motion to compel where the practical effect of granting the motion would be to delay the trial schedule).

### B. Barr's Motion For The Production Of Downstream Sales Information Should Be Denied Because This Information Is Not Relevant To Any Issue In This Case And Is Extremely Burdensome.

Barr seeks documents and data from Rite Aid concerning Rite Aid's sales to its customers, including confidential third-party payor contracts and data concerning those sales. *See* Barr Pharmaceutical, Inc.'s First Request for Production of Documents to Rite Aid Corporation and Rite Aid Hdqtrs. Corp., Request Nos. 2-4, 9, 15 (attached hereto as Ex. A); Barr Pharmaceuticals, Inc.'s First Set of Interrogatories to Rite Aid Corporation and Rite Aid Hdqtrs. Corp., Interrogatory Nos. 4, 6-7 (attached hereto as Ex. B). Efforts to obtain such downstream discovery have been denied as irrelevant by courts in this Circuit. Furthermore, even if such downstream discovery were relevant, the downstream discovery sought by Barr is unduly burdensome and should be denied.

#### 1. Downstream Discovery Is Not Relevant.

Under well-established Supreme Court precedent, direct purchasers are entitled to recover the full amount of an overcharge and any "downstream" effects of the overcharge -- including the direct purchaser's own sales and profits -- are irrelevant as a matter of law.[3] *See*

---

[3] Rite Aid has asserted a claim under Section 1 of the Sherman Act and Section 4 of the Clayton Act. As in virtually all federal antitrust cases brought by direct purchasers, Rite Aid seeks to recover illegal overcharges it paid as a result of the absence of competition that flowed from the delay in the availability of generic Ovcon. The Supreme Court endorsed this measure of damages nearly 100 years ago. *See Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S 390, 396 (1906). An overcharge is "the difference between the price paid and the market or fair price that the [plaintiff] would have had to pay under natural conditions" if the antitrust violation had not occurred. *Id.* No additional information is relevant or admissible in determining the amount of an illegal overcharge. Specifically, the defendant is not permitted to introduce evidence that the actual harm suffered by the plaintiff is less than the full overcharge

(continued...)

5

*Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). See also *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 (M.D. Pa. 2005) (listing cases where courts have disallowed discovery of downstream sales data).

As a result, this Court has unambiguously concluded that efforts to obtain downstream discovery, like those of Barr, should be denied. In fact, in denying such a request, this Court has explained that "no court has ever allowed production of individualized downstream data." *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000).

The prevailing rule outside of this District also is that downstream discovery from a direct purchaser is irrelevant and not available as a matter of law. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2006 WL 1479819, *8 (E.D. Pa. May 26, 2006) ("[W]e will deny Defendants' request that we depart from the long-held practice of proscribing discovery of downstream data and financial information."); *Pressure Sensitive Labelstock,* 226 F.R.D. at 498 (rejecting defendants' arguments to take downstream discovery); *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578, 578 (D. Minn. 1990) (plaintiff's financial information irrelevant in overcharge case); *Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.*, 508 F. Supp. 200, 206 & n.12 (N.D. Ill. 1981) (defendants' pass-on defense stricken and related downstream discovery terminated); *In re Folding Carton Antitrust Litig.*, No. MDL 250, 1978 U.S. Dist. Lexis 20409, *9 (N.D. Ill. May 5, 1978) ("Whether purchasers absorbed,

---

(continued...)

because the plaintiff recovered some of the overcharge from its own customers in the form of higher prices. *Hanover Shoe,* 392 U.S. at 494.

passed-on, or made a profit on the overcharges in comparison with the industry generally is irrelevant, and investigations into such matters are proscribed by *Illinois Brick*.").[4]

Apparently recognizing the extent of the authority prohibiting downstream discovery from direct purchasers, Barr argues that the downstream discovery that it seeks is "relevant to the claims of other Plaintiffs in this coordinated proceeding, including consumers and third party payors." Motion to Compel at 8. As an initial matter, any relevance of this data to the cases of the consumers and third party payors dissipated along with the settlement of those cases. On June 27, 2007, this Court preliminarily approved the proposed settlements in both the consumer and third party payor cases. *See Cohen v. Warner Chilcott Public Ltd Co.*, No. 06 Civ 00401 (Dkt. No. 89); *Vista Healthplan, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, No. 05 Civ. 2327 (Dkt. No. 100).

Even if for some reason final approval of those settlements is not granted, the downstream discovery sought by Barr would be of limited use, if any, in the third-party payor and consumer class cases. For a majority of the time period for which Barr seeks information about Rite Aid's sales to its retail customers, there was no generic on the market. Generic Ovcon did not launch until October 2006. Nevertheless, Barr seeks downstream discovery going back to January 2000. *See* Ex. A, Instruction No. 20; Ex. B, Instruction No. 22. For the vast majority of this period, no amount of downstream discovery would show a difference in the retail

---

[4] Barr's argument that downstream sales data will allow Barr to construct what demand would have looked like in the "but-for" world is equally as flawed. Now that generic Ovcon is on the market, there is no need to construct a complicated model of that demand. We now have actual evidence of demand -- what has actually happened in the real world. That real world purchasing data, which Rite Aid has produced, demonstrates the demand for Ovcon and its generic substitutes.

prices charged for branded versus generic Ovcon because, as a result of Barr's illegal scheme, no generic version of Ovcon was on the market until October 2006.

Furthermore, to the extent that Barr seeks downstream discovery from Rite Aid for use in the (now settled) third-party and consumer class case, Rite Aid is not a party to either of those cases. As a result, Barr should have to meet Rule 45's standards to obtain downstream discovery for purposes of evaluating those class claims. *Vitamins*, 198 F.R.D. at 299. Under those standards, a party "has a duty to take reasonable steps to avoid imposing undue burden or expense on the person subpoenaed." MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL 4TH") § 11.447 (Supp. 2006); *see also Zukoski v. Philadelphia Elec. Co.*, No. CIV. A. 93-4780, 1994 WL 637345, *3 (E.D. Pa. Nov. 14, 1994) ("It is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery."). Before resorting to subpoena, the party should consider "the possibility of acquiring the needed information . . . from other sources." MCL 4TH §21.447.

Here, not only could Barr obtain third-party contracts and purchase data from the indirect class representatives, but, as Barr well knows, it also could obtain comprehensive data reflecting prices paid by end payors from data vendors such as IMS. *See e.g., In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (recognizing that IMS is "the recognized industry leader in data collection for the pharmaceutical industry"). This is data that Barr already has or could easily obtain. Such industry-wide data has been found to be preferable over the kind of burdensome individualized downstream discovery such as that sought by Barr here. *See, e.g., Vitamins*, 198 F.R.D. at 299-300. Given this, and given that the Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive

8

discovery that such an inquiry would entail, the marginal relevance of the information sought is clearly outweighed by the burden and expense that the proposed discovery would impose. *Pressure Sensitive Labelstock,* 226 F.R.D. at 497-98 (citing *Hanover Shoe,* 392 U.S. at 494).

### 2. The Downstream Discovery Sought Is Unduly Burdensome.

Even if downstream discovery were arguably relevant, the downstream discovery sought by Barr is so burdensome that Barr's motion to compel its production should be denied.

Rule 26(b)(1) of the Federal Rules of Civil Procedure was "designed to encourage district judges to identify instances of needless discovery and to limit the use of the various discovery devices accordingly." FED. R. CIV. P. 26(b)(1) advisory committee notes to 1983 amendments.[5] Federal district courts are given broad discretion to limit discovery where the burden or expense of the proposed discovery outweighs its likely benefit. It is within the sound discretion of courts to preclude discovery where on balance the burden outweighs the relevance of the discovery sought. *See id.*

Here, producing the requested downstream sales information would be a substantial undertaking. Barr is not simply seeking summary reports showing aggregated sales of Ovcon and its generic counterparts for the period in which generics were available. Rather, Barr is seeking individual dispensing data for each and every such prescription that Rite Aid dispensed over a **six year** period of time. Rite Aid currently has 5,000 stores in 31 states. In the

---

[5] Rule 26(b)(1) provides that the "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). Rule 26(b)(1) was amended in 2000, in part to address overbroad discovery based upon the prior wording of the Rule which referred to "subject-matter of the action" by focusing the attention of both the parties and the Court on the actual claims and defenses involved in the suit in determining the proper scope of discovery. *See* FED. R. CIV. P. 26(b)(1) advisory committee notes to 2000 amendments.

last year alone, Rite Aid pharmacies filled nearly 200 million prescriptions. With the acquisition of the former Brooks and Eckerd stores earlier this year, Rite Aid expects that number to grow to over 300 million. Responding to the downstream sales requests would require Rite Aid to gather six years worth of this individualized prescription sales data. Because this data is not organized by drug, in order to obtain the requested data, a program would have to be written to search the relevant files and extract information. Furthermore, some of the requested data is now stored only in archives. To obtain that archived data, the entire year's worth of sales data would have to be reconstructed before the relevant data could be extracted. Clearly, the limited relevance this data would have is greatly outweighed by the enormous efforts that Rite Aid will have to undertake to gather the requested information.

Although it would be extremely burdensome for Rite Aid to collect this data, its utility to Barr would be questionable. Rite Aid's sales account for only a small portion of the national sales of Ovcon. As a result, unless Barr intends to subpoena all other retail pharmacies in the country, the data would be of limited use.

The third-party payor contracts also would be of limited use to Barr since Rite Aid can only provide contracts to which it is a party.[6] Barr can get a much more complete set of third-party contracts from representative third-party payor class members and from managed care entities that it has subpoenaed. In this respect, Barr's motion is silent as to whether it has been able to obtain any of the information sought from Rite Aid from the class representatives or other subpoenaed parties. If it has, there is no reason to put Rite Aid to the burden and expense

---

[6] Rite Aid would also be forced to address the confidentiality provisions that appear in many of its third-party contracts.

of reproducing that same information, especially if Barr does not seek to use it in Rite Aid's case.

For all of these reasons, the Court should deny Barr's Motion to Compel this downstream sales data. *See Vitamins*, 198 F.R.D. at 301 ("[T]he proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry [Barr's] burden of showing that this information ought to be produced by the direct purchasers."); FED. R. CIV. P. 45(c)(1).

### C. Barr's Request For Discovery Relating To Dozens Of Combined Hormonal Contraceptives Is Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence And Its Production Would Impose An Undue Burden.

Barr has requested that Rite Aid produce a broad range of documents for dozens of other CHC products. *See* Ex. A, Request Nos. 4-6, 8; Ex. B., Interrogatory No. 5. The documents and data sought are irrelevant to this case. At the same time, these CHC requests are overbroad and unduly burdensome.

By way of example, Request No. 4 seeks, *inter alia*, all "documents identifying the prices you charge for all of the Combined Hormonal Contraceptives you sell" for the time period January 2000 to the present. Ex. A, Request No. 4 & Instruction No. 20. As described above, Rite Aid pharmacies fill several hundred million prescriptions each year. Responding to this request would require Rite Aid to extract from its data six years worth of pricing data for each of the dozens of CHC products, and some of that data would have to be reconstructed from archive tapes before it could be extracted. The burden would not stop there. Because the request is so broad, it would also call for the production of documents at the store level that relate to each of the relevant transactions. And it would call for the production of documents and data

11

regarding reimbursements, co-payments and other monies received from third-party payors. The sheer magnitude of this request is daunting.[7]

At the same time, this burdensome discovery simply is not relevant. On the same day that Barr filed this motion to compel against Rite Aid, Barr moved to compel similar CHC discovery against the plaintiffs in the *Meijer* and *Walgreen* actions. Rather than offer duplicative argument in this brief, Rite Aid incorporates by reference the Sections III to VI of the Statement of Points and Authorities in Opposition to Barr's June 28, 2007 Motion to Compel Discovery filed today by the plaintiffs in the *Meijer* and *Walgreen* actions.

### D. The Production Of Rite Aid's Confidential Supply Agreement With McKesson Would Be Duplicative.

Barr seeks the production of Rite Aid's agreement with McKesson, the wholesaler through which Rite Aid purchases the vast majority of prescription drugs that it sells. Barr's basis for seeking the production of this agreement is that it "details the rebates, discounts, and other terms that determined the net price paid by Rite Aid for Ovcon 35." Motion to Compel at 9.

The McKesson agreement at issue is a master agreement that governs the purchase of every one of the thousands of pharmaceutical products Rite Aid purchases from McKesson. It does not relate solely to Rite Aid's purchase of Ovcon. As such, the production of this agreement would involve not only the disclosure of information about Ovcon, but also the disclosure of terms that are wholly-irrelevant to this case.

---

[7] Barr's Motion to Compel also seeks three additional categories of discovery related to CHC products (Request Nos. 5, 6 and 8), thus multiplying the burden that would be associated with producing the requested CHC discovery.

12

Rite Aid considers the terms of this master agreement to be among its most closely held and highly confidential information. Through a vigorous negotiation process, Rite Aid was able to extract favorable terms from McKesson -- terms that Rite Aid believes provides it with a competitive edge. Rite Aid does not want to risk losing that edge.

And there is no reason to take that risk here. The only relevant information in this agreement has already been disclosed. Rite Aid already produced purchase data that shows the actual prices Rite Aid paid for Ovcon 35 and its generic counterparts. Furthermore, Rite Aid's witness answered questions regarding the terms under which Rite Aid purchases Ovcon from McKesson. Production of the Rite Aid/McKesson agreement would merely duplicate what's already been disclosed.

Federal Rule of Civil Procedure 26(b)(2)(c)(i) expressly provides that discovery "shall be limited by the court if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Courts have not hesitated to invoke this rule to deny requests to compel production of duplicative information. In *Birdine v. City of Coatesville*, for example, the court denied a motion to compel information because it was "already provided at depositions." No. 03-5569, 2004 WL 2786150, *1 (E.D. Pa. Aug. 30, 2004) (citing Fed. R. Civ. P. 26(b)(2)(i)); *see also Access 4 All, Inc. v. W&D Davis Investment Co., Ltd.*, No. 06-cv-504, 2007 WL 614091, *3 (S.D. Ohio Feb. 21, 2007) (denying motion to compel the production of documents that were duplicative given information provided in interrogatory responses). So too should this court deny Barr's motion to compel this highly sensitive agreement since the only arguably relevant information in this agreement has already been disclosed.

### E. Rite Aid Has An Oral Joint Prosecution Agreement With The Federal Trade Commission.

This Court has recognized that communications will be protected from disclosure if it is shown that: 1) the communications were made in the course of a joint prosecution effort, 2) the communications were designed to further that effort, and 3) the privilege has not been waived. *See In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C. Cir. 1994). This privilege is aimed at allowing "persons who share a common interest in litigation . . . .to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990); *see also United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 25 (D.D.C. 2002) ("The overarching principle that governs these privileges . . . [is] protecting attorney's preparations for trial and encouraging the fullest preparation without fear of access by adversaries" (internal quotations omitted)). In order for this privilege to apply, it is *not* necessary for there to be a written agreement; oral joint prosecution agreements are equally as enforceable. *See Mineba Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005) (recognizing enforceability of oral joint defense agreement).

The joint prosecution privilege applies here. Rite Aid and the FTC agreed to meet and discuss the joint preparation of their related cases, and the communications at issue were designed to further that effort. *See* Declaration of Monica L. Rebuck, ¶ 3 (attached hereto as Ex. C). The Rite Aid and FTC cases -- both of which are pending before this Court -- stem from the same core of operative facts. Both cases charge that the agreement between Barr and Warner Chilcott to delay entry of generic Ovcon is anticompetitive. Given this overlap in claims, Rite Aid recognized that it shares a common interest with the FTC in litigating these claims against

Warner Chilcott and Barr.[8] *Id.* As such, when the FTC contacted Rite Aid's counsel and requested a meeting to discuss issues related to the litigation, Rite Aid agreed to participate. *Id.* That meeting took place on July 26, 2006. *Id.* at ¶ 4. In attendance at that meeting were David Vucurevich (Rite Aid's Vice President of Pharmaceutical Purchasing), Rite Aid's counsel, counsel for the FTC and FTC economists. *Id.*

Rite Aid participated in the meeting with the understanding that it would be protected by the joint prosecution privilege. *Id.* at ¶ 5. In fact, before the meeting began, Rite Aid's counsel expressly confirmed with counsel for the FTC that the meeting was being conducted pursuant to Rite Aid's and the FTC's desire to jointly prosecute the cases. *Id.* Rite Aid's counsel further made it clear that anything disclosed in that meeting must be treated as confidential and protected from disclosure pursuant to the joint prosecution privilege. *Id.* The FTC agreed to those terms. *Id.* Were it not for the oral joint prosecution agreement, Rite Aid would not have participated in this meeting. *Id.* at ¶ 6.

Under these circumstances, there can be no doubt that the joint prosecution privilege applies. Rite Aid and the FTC share a common interest in this litigation, and they agreed to meet and discuss issues related to this litigation. Furthermore, they took "effective steps to ensure that all participants were aware of the need to maintain confidentiality, and to show that mechanisms were in place to accomplish that objective before the information was

---

[8] The recognition of a joint prosecution privilege between a private party and a governmental entity is nothing new in this Circuit. In *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285 (D.C. Cir. 1980), MCI and the United States were "proceeding on overlapping antitrust issues against a common adversary, AT&T. The United States and MCI shared common interests in developing legal theories and analyses of documents on which to proceed on those issues where they both made the same antitrust claims against AT&T." *Id.* at 1299-1300. As such, the Court recognized a joint prosecution privilege between MCI and the United States.

shared." *See Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 349 (N.D. Ohio 1999); *see also Ken's Foods, Inv. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (oral agreement is established where the participants "agreed to engage in a joint effort and to keep the shared information confidential from outsiders").

Since this July 2006 meeting, Rite Aid has not waived the privilege that attached to its communications with the FTC at the July 26 meeting. Rebuck Dec. (Ex. C), ¶ 7. Nor does Rite Aid intend to waive that privilege. *Id.* As such, the communications remain protected by the joint prosecution privilege.

## CONCLUSION

For the foregoing reasons, Rite Aid respectfully requests that the Court deny Barr's Motion to Compel in its entirety.

<div style="text-align:right">

Respectfully submitted,

<u>s/ Robert D.W. Landon, III</u>
Robert D.W. Landon III
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

</div>

OF COUNSEL:

Steve D. Shadowen
Monica L. Rebuck
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713
Telephone: (717) 364-1030
Telecopy: (717) 364-1020

*Attorneys for Plaintiffs Rite Aid Corporation and Rite Aid Hdqtrs. Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2007, I caused to be electronically filed the Memorandum of Plaintiffs Rite Aid Corporation and Rite Aid Hdqtrs. Corp. in Opposition to Defendant Barr Pharmaceuticals, Inc.'s Motion to Compel Answers to Interrogatories and the Production of Documents ("Opposition Memorandum") with the Clerk of Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system, and parties may access this filing through the Court's CM/ECF system. I further certify that on July 12, 2007, the Opposition Memorandum was hand delivered on the following:

> Karen N. Walker
> Kirkland & Ellis
> 655 Fifteenth St., N.W.
> Washington, DC 20005

> s/ Robert D.W. Landon, III
> Robert D.W. Landon III