# Exhibit  A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CVS PHARMACY, INC., One CVS Drive, Woonsocket, Rhode Island 02895, <br><br> RITE AID CORPORATION, 30 Hunter Lane, Camp Hill, Pennsylvania 17011, <br><br> RITE AID HDQTRS. CORP., 30 Hunter Lane, Camp Hill, Pennsylvania 17011, <br><br> Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC., <br><br> Defendants. | Civ. Action No.: 1:06-CV-00795-CKK <br><br> Judge Colleen Kollar-Kotelly <br><br> JURY TRIAL DEMANDED |

BARR PHARMACEUTICALS, INC.'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO RITE AID CORPORATION AND RITE AID HDQTRS. CORP.

Pursuant to FED. R. CIV. P. 34, Defendants hereby submit their First Request for Production of Documents to Rite Aid Corporation and Rite Aid Hdqtrs. Corp. (collectively, "plaintiffs"). For purposes of these document Requests, Rite Aid Corporation and Rite Aid Hdqtrs. Corp., include their current and former affiliates, subsidiaries, agents, assignors (including but not limited to McKesson Corporation), and representatives.

Defendants request that each plaintiff produce the following documents and things for inspection at the offices of Kirkland & Ellis, 655 Fifteenth Street, N.W., Suite 1200, Washington, DC 20005, or at such place as may be agreed upon by counsel. In accordance with FED. R. CIV. P. 34, each plaintiff shall submit separate responses to the following document

Requests within thirty (30) days, or by September 21, 2006. Each document Request is subject to the Definitions and Instructions set forth below.

## DEFINITIONS AND INSTRUCTIONS

1.    If you object to any part of a Request, set forth the basis for your objection and respond to all parts of the Request to which you do not object.

2.    "You," "your," "plaintiff" and "plaintiffs" mean Rite Aid Corporation and Rite Aid Hdqtrs. Corp., including their current and former affiliates, subsidiaries, agents, assignors, and representatives, both individually and collectively.

3.    "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photocopied, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. "Document" means anything which may be considered to be a document or tangible thing within the meaning of Rule 34 of the Federal Rules of Civil Procedure, and includes without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or communications, electronic mail/messages and/or "e-mail," instant messaging, questionnaires, surveys, charts, graphs, photographs, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as

2

CDs, DVDs, memory sticks, floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by a plaintiff or anyone else.

4.    "Relating to" is used in the broadest possible sense and means, in whole or in part, addressing, analyzing, concerning, constituting, containing, commenting, in connection with, dealing, discussing, describing, embodying, evidencing, identifying, pertaining, referring, reflecting, reporting, stating, or summarizing.

5.    "Communication" is used in the broadest possible sense and means every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

6.    "Describe," "state," and "set forth" mean to indicate fully and unambiguously each relevant fact of which you have knowledge.

7.    "Litigation" refers to the above-captioned case.

8.    "Warner Chilcott" means Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., Galen (Chemicals), Ltd., as well as their current and former parents, subsidiaries, and affiliates.

9.    "Barr" means Barr Pharmaceuticals, Inc., as well as its current and former parents, subsidiaries, and affiliates.

10.    "Third party" or "third parties" means any person or entity other than Barr, Warner Chilcott, or plaintiffs, including, but not limited to, those persons and entities identified by plaintiffs in all their Initial Disclosures, manufacturers, wholesalers, distributors, retailers, state attorneys general offices, formularies, insurers, the Food and Drug Administration,

3

the Federal Trade Commission, third-party payors, consumers, physicians, nurses, and other health care providers.

11. "Combined Hormonal Contraceptive," or "CHC," means any prescription pharmaceutical used to prevent pregnancy that contains hormones, including, but not limited to, Ovcon 35, oral contraceptives, transdermal patches, vaginal rings, and pills.

12. "Ovcon 35" or "Ovcon" is an oral contraceptive used to prevent pregnancy that is sold by Warner Chilcott, and is used herein in the same manner as it is used in the plaintiffs' Complaint.

13. "Transaction" means Warner Chilcott's option to license, and its exercise of the option to license Barr's ANDA for a generic form of Ovcon 35, and the related supply agreement between Warner Chilcott and Barr.

14. You are to produce entire documents including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs, and labels appended to or containing any documents. Copies which differ in any response from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Privileged redactions must be included in a privilege log; any non-privileged redactions must also be included in a log describing the basis for the redaction.

15. If any privilege is claimed as a ground for not producing a document or tangible thing, provide a privilege log describing the basis for the claim of privilege and all

information necessary for Defendants and the Court to assess the claim of privilege, in accordance with FED. R. CIV. P. 26(b)(5). Separately, for each document and attachment withheld or redacted, the log shall include the following: (i) specific grounds for the claim of privilege; (ii) the title of the document or attachment; (iii) the date of the document or attachment; (iv) the author of the document or attachment; (v) the addressees and recipients of the document or attachment or any copy thereof (including persons "cc'd," "bcc'd" or "blind cc'd"); (vi) a description of the subject matter of the document or attachment in sufficient detail to assess the claim of privilege; (vii) the bates range or page length of the document or attachment; and (viii) the Requests to which the document or attachment are responsive.

16.    Whenever necessary to bring within the scope of a Request a response that might otherwise be construed to be outside its scope, the following constructions should be applied:

a)    Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the Request more inclusive;

b)    Construing the singular form of any word to include the plural and the plural form to include the singular;

c)    Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

d)    Construing the masculine form to include the feminine form;

e)    Construing the term "Date" to mean the exact day, month and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters; and,

f)    Construing negative terms to include the positive and vice versa;

g)    Construing "include" to mean include or including "without limitation."

17.    Each Request is propounded separately upon each named plaintiff and requires a separate response from each plaintiff.

18.    Documents requested are those in the actual or constructive possession, custody, or control of plaintiffs, or anyone acting on behalf of a plaintiff.

19.    These document Requests are continuing in nature, up to and during the course of trial. Documents and tangible things sought by these requests that you obtain after you serve your answers must be produced to counsel for Defendants by supplemental answers or productions pursuant to FED. R. CIV. P. 26(e).

20.    The relevant time period for these Requests is from January 1, 2000 through the date of these Requests, unless otherwise stated.

## DOCUMENT REQUESTS

1.    All documents relating to your purchases of Ovcon, including but not limited to inventory logs, price lists, contracts, purchase orders, bills of lading, invoices, bills, canceled checks, receipts, and all other documents or data reflecting the amounts of Ovcon you purchased, the prices you paid for the Ovcon you purchased, and all applicable rebates, allowances, offsets, chargebacks, or discounts relating to the Ovcon you purchased.

2.    All documents relating to your sales of Ovcon, including but not limited to pharmacy logs, customer lists, price lists, contracts, purchase orders, bills of lading, invoices, bills, checks received, receipts, and all other documents or data reflecting the amounts of Ovcon you sold and the prices charged for Ovcon you sold, including all applicable rebates, discounts, chargebacks, offsets, and allowances, the amount of any insurance or other health benefit co-payment(s) that applied to the transaction, the name of each insurance carrier or other health benefit provider that covered any portion of the purchase price, the name of the insurance or other health benefit plan(s) that provided coverage, and the total amount the customer paid.

3.    All documents relating to the resale of Ovcon by your direct or indirect customers, including all available information for each sale such as the date and location of the

6

transaction, the name of the customer, the quantity of Ovcon sold, the price charged per unit, the amount of any discounts, coupons, or rebates that the customer received.

4.    All price lists and other documents identifying the prices you charge for all of the Combined Hormonal Contraceptives you sell.

5.    All documents relating to how you decide which Combined Hormonal Contraceptives to sell and how to price Combined Hormonal Contraceptives, including whether or not to stock both brand-name and generic versions of a given Combined Hormonal Contraceptive, whether or not to stock more than one generic version or label of a given brand-name product, whether or not to stock a brand-name product but not its generic counterpart, whether or not to stock a generic Combined Hormonal Contraceptive but not its brand-name counterpart, how much to charge for generic and brand-name oral contraceptives, and how much to differentiate between the prices charged for generic and brand-name versions of a given Combined Hormonal Contraceptive product.

6.    All documents relating to competition among Combined Hormonal Contraceptives, including Ovcon.

7.    All documents relating to a generic form of Ovcon, including whether or not you might purchase a generic form of Ovcon if one became available.

8.    All documents relating to the impact that drug product detailing of Combined Hormonal Contraceptives has on your business, including but not limited to the practice of providing free drug product samples to medical professionals who in turn provide those free samples to their patients.

9.    All documents relating to insurance coverage and reimbursements, co-payments, third party payor coverage, and other health benefit coverage for Ovcon, including,

but not limited to, communications with insurance companies, health maintenance organizations, managed care organizations, third party payors, pharmacy benefit managers, state and federal governments, and others.

10.    All documents concerning any assignment of rights or other transfer of interests relating to your participation in this Litigation.

11.    All documents relating to or reflecting your communications with third parties, including but not limited to the Federal Trade Commission and any State Attorneys General office, that relate to Ovcon, your participation in this Litigation, or any of the Defendants in this Litigation.

12.    All documents relating to damages you claim to have suffered, including calculations of the total amount of damages claimed and how such damages were calculated.

13.    All sworn testimony given by you, or any of your agents or representatives in their capacity as such, in any litigation relating to prescription drugs or prescription drug benefits.

14.    All documents relating to each instance in which a government entity or agency has accused, charged, or convicted you of a crime or other violation of law.

15.    All documents relating to any contract, agreement, or understanding with a third party in which you or the third party agreed to purchase, sell, manufacture, supply, or distribute any pharmaceutical product on an exclusive basis.

16.    All documents relating to this Litigation and your decision to participate in this Litigation.

17.    All documents relating to any manner of payment or compensation you have received or expect to receive as a result of your participation in this Litigation.

18.    All documents relating to any of the following individuals or entities: McKesson Corporation.

19.    All expert reports, other materials or documents which were reviewed or relied upon, in whole or in part, by any expert you expect to call or may call to testify in this Litigation at any time, including but not limited to class certification proceedings, summary judgment proceedings, and trial.

20.    All documents you intend to use in support of your allegations in this Litigation.

21.    All documents you referred to, described, or relied upon in your responses to Barr Pharmaceuticals, Inc.'s First Set Of Interrogatories To Rite Aid Corporation and Rite Aid Hdqtrs. Corp.

22.    All documents not mentioned above that relate to Ovcon or this Litigation.


Date:   August 22, 2006                    Respectfully submitted,

Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Chong S. Park (D.C. Bar # 463050)

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 879-5000
(202) 879-5200

*Attorneys for Defendant Barr Pharmaceuticals, Inc.*

9

# Exhibit  B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CVS PHARMACY, INC., One CVS Drive, Woonsocket, Rhode Island 02895,<br><br>RITE AID CORPORATION, 30 Hunter Lane, Camp Hill, Pennsylvania 17011,<br><br>RITE AID HDQTRS. CORP., 30 Hunter Lane, Camp Hill, Pennsylvania 17011,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC.,<br><br>Defendants. | Civ. Action No.: 1:06-CV-00795-CKK<br><br>Judge Colleen Kollar-Kotelly<br><br>JURY TRIAL DEMANDED |

BARR PHARMACEUTICALS, INC.'S FIRST SET OF INTERROGATORIES TO
RITE AID CORPORATION AND RITE AID HDQTRS. CORP.

Pursuant to FED. R. CIV. P. 33, Barr Pharmaceuticals, Inc. ("Barr") hereby submits its first set of Interrogatories to Rite Aid Corporation and Rite Aid Hdqtrs. Corp. (collectively, "plaintiffs"). For purposes of these Interrogatories, Rite Aid Corporation and Rite Aid Hdqtrs. Corp., include each of their current and former affiliates, subsidiaries, agents, assignors (including but not limited to McKesson Corporation), and representatives.

In accordance with FED. R. CIV. P. 33, each plaintiff shall submit separate responses to the following Interrogatories within thirty (30) days, or by September 21, 2006. Each Interrogatory is subject to the Definitions and Instructions set forth below.

## DEFINITIONS AND INSTRUCTIONS

1.      In answering these Interrogatories, furnish all information, however obtained, including hearsay, that is available to plaintiffs, including information in the actual or constructive possession of plaintiffs, their attorneys, investigators, experts, and anyone else acting on plaintiffs' behalf.    In answering the Interrogatories, furnish all knowledge and information available to you or subject to your reasonable inquiry, access, or control, including, but not limited to, all knowledge and information available to your counsel in this case.

2.      "You," "your," "plaintiff" and "plaintiffs" mean Rite Aid Corporation and Rite Aid Hdqtrs. Corp., including their current and former affiliates, subsidiaries, agents, assignors, and representatives, both individually and collectively.

3.      "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photocopied, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof.  "Document" means anything which may be considered to be a document or tangible thing within the meaning of Rule 34 of the Federal Rules of Civil Procedure, and includes without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings or communications, electronic mail/messages and/or "e-mail," instant messaging, questionnaires, surveys, charts, graphs, photographs, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which

2

information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, storage media such as CDs, DVDs, memory sticks, floppy disks, hard disks and magnetic tapes, and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by a plaintiff or anyone else.

4.    "Relating to" is used in the broadest possible sense and means, in whole or in part, addressing, analyzing, concerning, constituting, containing, commenting, in connection with, dealing, discussing, describing, embodying, evidencing, identifying, pertaining, referring, reflecting, reporting, stating, or summarizing.

5.    "Communication" is used in the broadest possible sense and means every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities.

6.    "Describe," "state," and "set forth" mean to indicate fully and unambiguously each relevant fact of which you have knowledge.

7.    "Identify," when used with reference to a natural person, means to state his or her full name, current or last known address and telephone number, and current or last known job title or business affiliation.

8.    "Identify," when used with respect to any other entity, means to state its full name and its address or its principal place of business.

9.    "Identify," when used with respect to a document or other material or information, means either to produce such document or other material or information or to state (a) the name or title of the document; (b) the type of document (e.g., letter, memorandum, telegram, computer input or output, chart, minutes, etc.); (c) its date; (d) full name and title of the person(s) who prepared the document; (e) full name and title of the person(s) who signed the

3

document; (f) full name and title of the person(s) to whom the document was addressed; (g) full name and title of the person(s) to whom the document was sent; (h) number of pages; (i) its current location; and (j) its current custodian.

10.     "Litigation" refers to the above-captioned case.

11.     "Warner Chilcott" means Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., Galen (Chemicals), Ltd., as well as their current and former parents, subsidiaries, and affiliates.

12.     "Barr" means Barr Pharmaceuticals, Inc., as well as its current and former parents, subsidiaries, and affiliates.

13.     "Third party" or "third parties" means any person or entity other than Barr, Warner Chilcott, or plaintiffs, including, but not limited to, those persons and entities identified by plaintiffs in all their Initial Disclosures, manufacturers, wholesalers, distributors, retailers, state attorneys general offices, formularies, insurers, the Food and Drug Administration, the Federal Trade Commission, third-party payors, consumers, physicians, nurses, and other health care providers.

14.     "Combined Hormonal Contraceptive" or "CHC" means any prescription pharmaceutical used to prevent pregnancy that contains hormones, including, but not limited to, Ovcon 35, oral contraceptives, transdermal patches, vaginal rings, and pills.

15.     "Ovcon 35" or "Ovcon" is an oral contraceptive used to prevent pregnancy that is sold by Warner Chilcott, and is used herein in the same manner as it is used in plaintiffs' Complaint.

16.    "Transaction" means Warner Chilcott's option to license, and its exercise of the option to license Barr's ANDA for a generic form of Ovcon 35, and the related supply agreement between Warner Chilcott and Barr.

17.    If you cannot answer all or part of an Interrogatory after exercising due diligence to secure the full information to do so, so state and answer to the fullest extent possible, specifying your inability to answer the remainder; stating whatever information or knowledge you have concerning the unanswered portion; and detailing what you did in attempting to secure the unknown information.

18.    If any privilege is claimed as a ground for not answering an Interrogatory, describe the basis for the claim of privilege and all information necessary for Defendants and the Court to assess the claim of privilege, in accordance with FED. R. CIV. P. 26(b)(5).

19.    Whenever necessary to bring within the scope of an Interrogatory a response that might otherwise be construed to be outside its scope, the following constructions should be applied:

(i)    Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the Interrogatory more inclusive;

(ii)    Construing the singular form of any word to include the plural and the plural form to include the singular;

(iii)    Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

(iv)    Construing the masculine form to include the feminine form;

(v)    Construing the term "Date" to mean the exact day, month and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters; and,

(vi)    Construing negative terms to include the positive and vice versa;

5

(vii) Construing "include" to mean include or including "without limitation."

20.     Each Interrogatory is propounded separately upon each named plaintiff and requires a separate response from each plaintiff.

21.     These Interrogatories are continuing in nature, up to and during the course of trial. Information or data sought by these Interrogatories that you obtain after you serve your answers must be produced to counsel for Defendants by supplemental answers or productions pursuant to FED. R. CIV. P. 26(e).

22.     The relevant time period for these Interrogatories is from January 1, 2000 through the date of these Interrogatories, unless otherwise stated.

## INTERROGATORIES

1.     Identify all persons, including, but not limited to, your current and former employees, who have, claim to have, or whom you believe may have knowledge or information relating to this Litigation, any fact alleged in the pleadings (as defined in FED. R. CIV. P. 7(a)) filed in this Litigation, or any fact underlying the subject matter of this Litigation, and identify the nature and substance of the knowledge you believe each such person may have.

2.     For each year since January 1, 2000, identify all persons, including, but not limited to, your current and former employees, who have responsibilities relating to the purchase or sale of Combined Hormonal Contraceptives, including, but not limited to, Ovcon 35.

3.     For each year since January 1, 2000, and by month within each such year, identify your purchases of Ovcon 35, including for each transaction the date and location of the transaction, the name of the purchaser, the quantity of Ovcon 35 purchased, the price charged per unit, the amount of any discounts, coupons, or rebates that you received, and the total amount you paid.

6

4.     For each year since January 1, 2000, by month within each such year, identify your sales of Ovcon 35, including for each transaction the date and location of the transaction, the name of the customer, the quantity of Ovcon 35 sold, the price charged per unit, the amount of any discounts, coupons, offsets, or rebates that the customer received, the amount of any insurance or other health benefit co-payment that applied to the transaction, the name of each insurance carrier or other health benefit provider that covered any portion of the purchase price, the name of the insurance or other health benefit plan(s) pursuant to which coverage was provided, and the total amount the customer paid.

5.     Identify and describe how you decide which Combined Hormonal Contraceptives to sell and how to sell them, including: (i) whether or not to stock both the brand-name and generic versions of a given Combined Hormonal Contraceptive product; (ii) whether or not to stock more than one generic version or label of a given Combined Hormonal Contraceptive product; (iii) whether or not to stock a brand-name Combined Hormonal Contraceptive but not its generic counterpart; (iv) whether or not to stock a generic Combined Hormonal Contraceptive but not its brand-name counterpart; (v) how much to charge for generic and brand-name Combined Hormonal Contraceptives; and (vi) how much to differentiate between the price you charge for generic and brand-name versions of a given Combined Hormonal Contraceptive product.

6.     For each year since January 1, 2000, and by month within each such year, identify all insurance providers, third party payors, or other health benefit providers from whom you received any payments, reimbursements, or compensation relating to the sale of Ovcon 35, including for each transaction the provider's name(s) and address(es), the plan name(s), whether the plan was employer-sponsored, and if so, by whom, the policy number(s), the group I.D.

7

number(s), the patient name, and whether the patient was the principal insured or a dependant of a principal insured.

7.    Identify and describe each contract, agreement, or understanding with a third party in which you or the third party agreed to purchase, sell, manufacture, supply, or distribute any product on an exclusive basis. Include in your answer a description of the product and the terms of your agreement.

8.    Identify all damages you claim to have suffered. Please include in your response the total amount of damages claimed and how such damages were calculated.

9.    Identify and describe every agreement or communication reflecting, referring, or relating to your employment or retention of counsel in this action, and any arrangement regarding fees, costs or expenses, rights to share in a potential recovery, and fee-sharing in this action with any person not a member of plaintiffs' counsels' firm(s).

Date:   August 22, 2006                         Respectfully submitted,

                                                _____
                                                Karen N. Walker (D.C. Bar # 412137)
                                                Mark L. Kovner (D.C. Bar # 430431)
                                                Chong S. Park (D.C. Bar # 463050)

                                                KIRKLAND & ELLIS LLP
                                                655 Fifteenth Street, N.W.
                                                Washington, D.C. 20005
                                                (202) 879-5000
                                                (202) 879-5200

                                                *Attorneys for Defendant Barr*
                                                *Pharmaceuticals, Inc.*

8

# Exhibit  C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CVS PHARMACY, INC.,<br>RITE AID CORPORATION,<br>RITE AID HDQTRS. CORP,<br>    **Plaintiffs,**<br><br>    v.<br><br>WARNER CHILCOTT HOLDINGS CO. III, INC.,<br>WARNER CHILCOTT CORP., WARNER<br>CHILCOTT (US), INC., WARNER CHILCOTT CO.,<br>INC., and BARR PHARMACEUTICALS, INC.<br>    **Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br>**No. 06-00795-CKK**<br><br>**Judge Colleen Kollar-Kotelly** |

## DECLARATION OF MONICA L. REBUCK

I, Monica L. Rebuck, declare the following based upon my own personal knowledge of the facts herein:

1.    I am a shareholder in the law firm Hangley Aronchick Segal & Pudlin, counsel for Plaintiffs Rite Aid Corporation and Rite Aid Hdqtrs. Corp. ("Rite Aid") in the above-captioned litigation.

2.    I am submitting this declaration in support of Rite Aid's opposition to Barr Pharmaceuticals, Inc.'s Motion to Compel.

3.    In the summer of 2006, Rite Aid and the Federal Trade Commission ("FTC") agreed to meet and discuss the joint preparation of our related cases. Counsel for the FTC contacted me and requested a meeting with Rite Aid to discuss issues related to the cases. Given

the overlap in claims between the two cases, Rite Aid recognized that it shared a common interest with the FTC in pursuing these claims. Rite Aid therefore agreed that David Vucurevich, Rite Aid's Vice President of Pharmaceutical Purchasing, would meet with the FTC to discuss issues related to these cases.

4.      The meeting between Rite Aid and the FTC took place on July 26, 2006. In attendance at that meeting were David Vucurevich, myself and Steve Shadowen (as counsel on behalf of Rite Aid), counsel for the FTC, and FTC economists.

5.      Rite Aid participated in the meeting with the understanding that it would be protected by the joint prosecution privilege. Before the meeting began, we expressly confirmed with counsel for the FTC that the meeting was being conducted pursuant to Rite Aid's and the FTC's desire to jointly prosecute the cases. We further made it clear that anything disclosed in the meeting must be treated as confidential and protected from disclosure pursuant to the joint prosecution privilege. The FTC agreed to those terms.

6.      Were it not for the oral joint prosecution agreement with the FTC, Rite Aid would not have participated in this meeting.

7.      Since the July 2006 meeting, Rite Aid has not waived the privilege that attached to its communications with the FTC. Nor does Rite Aid intend to waive that privilege.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Monica L. Rebuck

Dated:   July 11, 2007

2