IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CVS PHARMACY, INC., <br> RITE AID CORPORATION, <br> RITE AID HDQTRS. CORP, <br>     Plaintiffs, <br> <br> v. <br> <br> WARNER CHILCOTT HOLDINGS CO. III, INC., <br> WARNER CHILCOTT CORP., WARNER <br> CHILCOTT (US), INC., WARNER CHILCOTT CO., <br> INC., and BARR PHARMACEUTICALS, INC. <br>     Defendants. | CIVIL ACTION <br> No. 06-00795-CKK <br> <br> Judge Colleen Kollar-Kotelly <br> <br> <br> Magistrate Judge Alan Kay |

MEMORANDUM OF CVS PHARMACY, INC. IN FURTHER
OPPOSITION TO WARNER CHILCOTT'S MOTION
TO COMPEL ANSWERS TO INTERROGATORIES
AND THE PRODUCTION OF DOCUMENTS

Pursuant to the Court's July 11 Order, Plaintiff CVS Pharmacy, Inc. submits this supplemental memorandum in further opposition to Warner Chilcott's Motion to Compel Answers to Interrogatories and the Production of Documents.[1]

---

[1] While Warner Chilcott's original motion sought the production of three categories of information, Warner Chilcott's supplemental memorandum (Dkt. No. 72) addresses only one of those categories -- downstream sales information. CVS will limit its response herein to the arguments raised by Warner Chilcott in its supplemental memorandum regarding that information. CVS filed its opening response to Warner Chilcott's motion on November 7, 2006 ("CVS Opening Brief," Dkt. No. 40). Rather than duplicate arguments set forth in that Opening Brief, CVS incorporates them by reference herein.

Warner Chilcott's supplemental memorandum is based upon a faulty premise: it is premised on the assumption that plaintiffs in related litigation have produced (and plaintiffs' experts have relied upon) the same downstream sales information that Warner Chilcott seeks in this motion to compel. That simply is not the case.

### BACKGROUND

Five retail pharmacy plaintiffs produced aggregate data showing, on a monthly basis, the rate at which AB-rated generic Balziva was being dispensed as compared to branded Ovcon 35. *See* Appendix, Exhibits 1-5.[2] Because Balziva's launch was delayed until October 2006, there was less than a year's worth of data to produce. The production of this summary dispensing data from all five plaintiffs totaled less than ten pages. *Id.*

This is the data that was relied upon by economic expert, Dr. Keith Leffler.[3] Dr. Leffler calculated the illegal overcharges that CVS (among other plaintiffs) paid as a result of the delay in the availability of generic Ovcon. To determine the amount of less expensive AB-rated generic product plaintiffs would have purchased but for the unlawful agreement, Dr. Leffler looked to the amount of generic product actually purchased when the generic launched in October 2006. But "[b]ecause of the very recent entry of Barr and Watson, complete purchasing

---

[2] The retail pharmacy plaintiffs that provided this data are Albertson's, Inc. (Appendix, Ex.1), Eckerd Corporation (Appendix, Ex. 2), The Kroger Co. (Appendix, Ex. 3), Rite Aid Corporation (Appendix, Ex. 4), and Safeway, Inc. (Appendix, Ex. 5).

[3] Contrary to Warner Chilcott's assertions, direct purchaser class plaintiffs' expert, Dr. Jeffrey Leitzinger, did not rely upon any dispensing data in his report. As Dr. Leitzinger makes clear in his report, the "sales data" upon which he relied is data showing sales of Ovcon and its AB-rated generic equivalents from Warner Chilcott, Barr and Watson to the retail pharmacies, not from retail pharmacies to their customers. *See* Leitzinger Report, Warner Chilcott Appendix Ex. 2 at p. 32 (indicating that he used purchase data from the opt-outs to determine volumes to exclude from the class damage calculation); *id.* at p. 29 (indicating that he "calculated actual world prices and volumes . . . by analyzing the transaction data provided by Warner Chilcott, Barr, and Watson").

records for the generic product [were] not available for many of the individual plaintiffs." Leffler Report, Warner Chilcott Appendix Ex. 1 at ¶ 68. Five retail pharmacy plaintiffs did, however, provide summary dispensing data. Dr. Leffler was able to use that dispensing data as a substitute for purchase data to calculate the amount of generic product that would have been purchased but for the unlawful agreement. *Id.* at ¶ 70.

This summary dispensing data bears no resemblance to the voluminous transactional information that Warner Chilcott seeks. Warner Chilcott has moved to compel, *inter alia*, the following:[4]

- Documents and information relating in any way to sales of Ovcon to CVS' customers (Request No. 2; Interrogatory No. 4);

- Price lists and other documents identifying the prices CVS charges for all of the Combined Hormonal Contraceptives ("CHC's") it sells (Request No. 4);

- Documents and information relating to how CVS decides which CHC's to sell and how to price those products (Request No. 5; Interrogatory No. 5);[5] and

- Documents relating to insurance coverage and reimbursements (Request No. 9).

The summary data utilized by Dr. Leffler arguably relates to only the first of these categories, and even within that category it relates to only a fraction of the more than six years of information requested by Warner Chilcott. Furthermore, producing the information that is

---

[4] In its supplemental memorandum, Warner Chilcott asserts that the document requests related to its motion to compel downstream sales information include numbers 2, 3, 4 and 5. *See* Warner Chilcott Supp. Mem. at 1. Warner Chilcott's motion to compel did not seek to compel the production of documents responsive to Request No. 3.

[5] Document Request Nos. 4 and 5 and Interrogatory No. 5 seek information not only for Ovcon, but also for 67 different Combined Hormonal Contraceptive products. For the reasons set for in CVS' Opening Brief, discovery on products other than Ovcon is irrelevant. *See* CVS Opening Br. at 13-17.

3

responsive to this first category, even for an abbreviated period of time, would be unduly burdensome.

## ARGUMENT

As detailed in CVS' Opening Brief, CVS is entitled to recover the full amount that it was overcharged, and any "downstream effects" of the overcharge, including CVS' own sales and profits, are irrelevant as a matter of law. *See* CVS Opening Br. at 6-11.

Warner Chilcott argues that every one of its requests for downstream sales information has been made relevant by the fact that Dr. Leffler utilized some summary dispensing data to calculate this overcharge. This dispensing data, however, has absolutely nothing to do with three of the four categories of downstream sales information sought by Warner Chilcott. The data does not contain the prices charged to individual customers for the product (Request No. 4),[6] or any information regarding how retail pharmacies decide which products to sell or how to price those products (Request No. 5; Interrogatory No. 5). Nor does it contain any information regarding insurance coverage or reimbursements for these products (Request No. 9). As to these categories, Warner Chilcott cannot argue that the utilization of summary dispensing data by Dr. Leffler makes these requests relevant.[7]

---

[6] Data produced by four of the five retail pharmacies contains absolutely no price information. One retail pharmacy, Safeway, included aggregated information titled "cost" and "price" in its production. *See* Appendix, Ex. 5. It is unclear what this information represents. What is clear, however, is that Dr. Leffler did not rely upon any information regarding the prices Safeway (or any other retail pharmacy) charged its customers for Ovcon or its AB rated generic equivalents.

[7] If anything, subsequent events have *eliminated* a basis to argue that the requested downstream sales information is relevant. In its opening brief, CVS responded to Warner Chilcott's argument that this information is relevant to class certification issues in the related third-party payor and consumer class cases. *See* CVS Opening Br. at 9-11. Since CVS filed that brief, the parties in those cases have reached a settlement. On June 27, 2007, this Court preliminarily approved the proposed settlements in both the consumer and third party payor cases. *See Cohen v. Warner Chilcott Public Ltd Co.*, No. 06 Civ 00401 (Dkt. No. 89); *Vista Healthplan, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, No. 05 Civ. 2327 (Dkt. No. 100). Any relevance of the

With regard to the fourth category -- documents and information relating to sales of Ovcon (Request No. 2; Interrogatory No. 4) -- although the summary dispensing data utilized by Dr. Leffler arguably falls within this very broad request, it does so in a very limited way. Warner Chilcott is seeking information dating back to January 1, 2000. Dr. Leffler used the summary dispensing data for a very specific purpose -- as a substitute for purchase data to show the amount of generic product that would have been purchased but for the unlawful agreement. For this purpose, the only relevant data would be data for the period during which a generic was on the market. The first AB-rated generic Ovcon product, Balziva, did not enter the market until October 2006. As such, the only relevant information would be information for the period beginning in October 2006.

Even if the request was limited to this shorter period of time, the burden of producing the wide range of information that has been requested still would be outweighed by its relevance. Warner Chilcott argues that producing the requested downstream sales information cannot be burdensome since "five out of the eight opt-out class plaintiffs have managed to provide such information without excessive burden." Warner Chilcott Supp. Mem. at 5. This argument completely ignores the fact that the information produced by those five plaintiffs bears no resemblance to the information requested by Warner Chilcott.[8]

Warner Chilcott is not seeking summary reports showing aggregated sales of Ovcon and its generic counterparts for the period in which generics were available -- the data

---

downstream sales information to the cases of the consumers and third party payors dissipated along with the settlement of those cases.

[8] In fact, each of those five plaintiffs is currently opposing motions to compel the very downstream sales data sought by Warner Chilcott here. *See Walgreen Co. v. Warner Chilcott Holdings Co. III, Ltd.*, No. 06 Civ. 494 (Dkt. No. 70) (Walgreen, Albertson's, Safeway, Eckerd); *CVS Pharmacy, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, No. 06-795 (Dkt. No. 73) (Rite Aid).

relied upon by Dr. Leffler. Warner Chilcott is seeking individual dispensing data for each and every such prescription dispensed by any CVS store beginning nearly six years before a generic even entered the market.

CVS currently has more than 6,000 stores in 38 states. In the last year alone, CVS pharmacies filled over 500 million prescriptions. Because CVS does not store dispensing data in a manner that is organized by drug, in order to gather the requested data CVS would have to create a program to search the relevant files and extract the information. CVS would then have to remove confidential information from the data pull to ensure compliance with federal privacy laws.[9] And, because Document Request No. 2 is written so broadly, that would be just the beginning of the collection effort. This request seeks:

> All documents relating to your sales of Ovcon, including but not limited to pharmacy logs, customer lists, price lists, contracts, purchase orders, bills of lading, invoices, bills, checks received, receipts, and all other documents or data reflecting the amounts of Ovcon you sold and the prices charged for Ovcon you sold, including all applicable rebates, discounts, chargebacks, offsets, and allowances, the amount of any insurance or other health benefit co-payment(s) that applied to the transaction, the name of each insurance carrier or other health benefit provider that covered any portion of the purchase price, the name of the insurance or other health benefit plan(s) that provided coverage, and the total amount the customer paid.

This request calls for CVS to search through every pharmacy log in every one of it 6,200 stores and produce copies of any such logs that reflect a pharmacist filing a prescription for Ovcon or its AB rated generics. It also calls for CVS to delve into the records at its headquarters and every one of those 6,200 stores to find any bills of lading or purchase orders related to Ovcon or its AB

---

[9] Warner Chilcott takes issue with the fact that CVS did not submit a declaration in support of its argument that the production of the downstream sales information would be unduly burdensome. While a declaration is not necessary to conclude that compiling the vast amount of information requested will be extremely burdensome, a declaration is attached supporting facts that underlie this conclusion. *See* Declaration of Monica L. Rebuck, Appendix Ex. 5, at ¶¶ 2-4.

rated generics. In fact, because the request is written so broadly, it would call for the production of virtually every piece of paper at either CVS' headquarters or in one of CVS' 6,200 stores that somehow relates to the sale of an Ovcon product.

Dr. Leffler relied on ten pages of very specific *summary* dispensing data for a narrow period of time. The burden associated with responding to Warner Chilcott's request for vast amounts of transactional information, even if it is limited to the time period used by Dr. Leffler, is unquestionably weighty. As such, to the extent that an expanded production of downstream sales information for a narrow time period would be deemed relevant, that limited relevance would be greatly outweighed by the enormous efforts that CVS would have to undertake to gather the requested information.

## CONCLUSION

For the foregoing reasons, CVS Pharmacy, Inc. respectfully requests that the Court deny Warner Chilcott's Motion to Compel in its entirety.

Respectfully submitted,

s/ Robert D.W. Landon III
Robert D.W. Landon III
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

OF COUNSEL:

Steve D. Shadowen
Monica L. Rebuck
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713
Telephone: (717) 364-1030
Telecopy: (717) 364-1020

*Attorneys for Plaintiff CVS Pharmacy, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2007, I caused to be electronically filed the Memorandum of Plaintiff CVS Pharmacy, Inc. in Further Opposition to Warner Chilcott's Motion to Compel Answers to Interrogatories and the Production of Documents with the Clerk of Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system, and parties may access this filing through the Court's CM/ECF system.

                                                                           s/ Robert D. W. Landon III
                                                                           Robert D.W. Landon III