**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CVS PHARMACY, INC., *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>WARNER CHILCOTT HOLDINGS CO. )<br>III, LTD., *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No.: 1:06-CV-00795-CKK |

**DEFENDANT BARR PHARMACEUTICALS, INC.'S REPLY TO
RITE AID'S OPPOSITION TO BARR'S MOTION TO COMPEL**

In its opposition brief, Rite Aid fails to present *any* valid justification for denying Barr discovery of documents and information relating to: (1) Combined Hormonal Contraceptives ("CHCs") other than Ovcon 35 and its generic equivalents; (2) Rite Aid's sales and pricing of Ovcon 35 and other CHCs; (3) Rite Aid's supply agreement with McKesson Corporation (under which it purchased Ovcon 35); and (4) Rite Aid's joint prosecution agreement with the Federal Trade Commission ("FTC"). All of Rite Aid's objections to producing—and its justifications for its failure to produce—these documents are without merit.

*First*, Rite Aid's claim that Barr's motion to compel is untimely because it was filed one week prior to the close of discovery is wholly without merit. As Rite Aid well knows, Barr has repeatedly sought production of these documents and, in fact, negotiated and met and conferred with counsel for Rite Aid beginning in April 2007, more than three months prior the close of fact discovery. Moreover, courts in this Circuit regularly permit parties to file such motions well *after* the close of discovery. Thus, Barr's motion—filed *before* the close of discovery—can hardly be viewed as untimely.

*Second*, Rite Aid's claim that sales data are "irrelevant as a matter of law" is just wrong. No court has ever held this. In fact, this very Court has concluded that a direct purchaser's sales data are relevant to the issue of damages. In any event, Rite Aid's own expert witness relies on sales data in his expert report. Rite Aid's claim that this information is "irrelevant" when its own expert uses such data is, at best, disingenuous.

*Third*, Rite Aid's claim that production of its sales, pricing, and other data regarding Ovcon 35—the very product at issue in this case—and other CHCs is overly burdensome is wholly unsupported. As such, Rite Aid's claim of burden fails. Moreover, Rite Aid's Vice President of Pharmaceutical Purchasing testified that Rite Aid maintains much of this data in a single, centralized database. Thus, Rite Aid's claim of undue burden is belied by the testimony of its own senior officer.

*Fourth*, Rite Aid's claim that production of its supply agreement with McKesson Corporation would be duplicative of other documents already produced is simply false. As an initial matter, Rite Aid fails to identify with specificity those "other documents" already produced. This is not surprising because Rite Aid has *not* produced documents containing the relevant information included in the McKesson supply agreement.

*Finally*, Rite Aid misrepresents the scope of Barr's discovery requests regarding its joint prosecution agreement with the FTC. Barr does not seek discovery of privileged material. Rather, under the case law of this Circuit—which Rite Aid does not dispute—Barr is entitled to discover documents and communications regarding the scope, extent, and terms of that agreement.

In sum, all of Rite Aid's justifications for its failure to produce relevant and responsive documents and data are without merit. Accordingly, Barr's motion to compel should be granted.

**ARGUMENT**

**I.    BARR'S MOTION TO COMPEL IS TIMELY.**

Rite Aid claims that Barr's motion is untimely because it was filed one week ***before*** the close of fact discovery. This claim is without merit.

As an initial matter, neither the Federal Rules of Civil Procedure or any order of this Court sets out a limit on the time within which a motion to compel discovery must be filed. Equally important, courts within this Circuit have consistently permitted parties to file motions to compel even ***after*** the close of discovery.[1] *See*, *e.g.*, *Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 15 (D.D.C. 2007) (motion to compel filed one month after the close of discovery was timely); *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, No. 05-2401, 2007 WL 1880305, at *7 (D.D.C. June 29, 2007) (motion to compel filed two months after the close of discovery was timely).

Here, Barr's motion was filed one week ***before*** the close of fact discovery. Additionally, it is entirely unclear how granting Barr's motion would "delay [ ] the pretrial schedule," Opp'n at 4, given that expert discovery is ongoing and the dispositive motion briefing schedule has not yet been determined. Thus, despite Rite Aid's vague allegations to the contrary, there is no evidence that granting Barr's motion to compel would prejudice Rite Aid.

Rite Aid's entire argument thus rests on three district court cases from the Northern District of Illinois, which found that the "length of the movant's delay" is one factor in

---

[1]    This very Court recently explained that "if [a motion to compel] could not be filed after the discovery period, it would create an incentive to delay responses and then 'run out the clock.'" *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, No. 05-2401, 2007 WL 1880305, at *7 (D.D.C. Jun. 29, 2007).

determining whether a motion to compel is timely.² (*See* Opp'n at 3.) Even if these decisions were controlling (which they are not), here there was *no* unreasonable delay. Barr contacted counsel for Rite Aid regarding outstanding discovery issues in April 2007, approximately three months before the close of fact discovery. (*See* S. Bae's Apr. 3, 2007 Letter to M. Rebuck, attached as Exhibit A.) Pursuant to their obligation under Local Rule 7(m), counsel for Barr and Rite Aid exchanged correspondence on April 13, 2007, April 23, 2007, and April 30, 2007, before speaking by telephone on May 29, 2007.³ During this period, Rite Aid made two supplemental productions of documents. Prior to the parties' final meet and confer on May 29, 2007, Barr had no reason to believe that it was necessary to seek the intervention of the Court. Barr filed its motion to compel less than one month later. Thus, Barr's motion to compel was timely and Rite Aid's argument to the contrary should be rejected.

---

² Notwithstanding that the decisions of the Northern District of Illinois are not binding here, each of the three cases cited by Rite Aid is easily distinguishable. First, *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, No. 05-C-6022, 2007 WL 1673563 (N.D. Ill. June 8, 2007), dealt with a motion to compel filed six weeks *after* the close of discovery. Second, the court in *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. North America, L.L.C.*, No. 03-C-760, 2004 WL 3021842 (N.D. Ill. Dec. 30, 2004), denied the plaintiffs' motion to compel because the plaintiffs had not fulfilled their obligations to meet and confer with the defendant. Finally, the court in *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331 (N.D. Ill. 2005), actually *granted* in part the plaintiffs' motion to compel and noted that "even . . . motions made after the close of discovery are not inevitably out-of-bounds [citations omitted]." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 331 n.1. Plainly, these cases are distinguishable from the facts here: Barr began meeting and conferring with Rite Aid and filed the instant motion *before* the close of discovery.

³ Rite Aid would have this Court rigidly require parties to file motions to compel within a short time after disclosures or discovery responses are due. Such a rule would interfere with the achievement of two of the principal objectives of the meet and confer requirements: (1) to encourage more communication and cooperation across party lines with respect to disclosure and discovery, and (2) to reduce the number of discovery motions that courts must address. *See* 7-37 *Moore's Federal Practice (Civil)* § 37.05.

## II. DOCUMENTS AND INFORMATION REGARDING RITE AID'S SALES AND PRICING OF OVCON 35 AND OTHER COMBINED HORMONAL CONTRACEPTIVES ARE RELEVANT AND MUST BE PRODUCED.

This and other courts have held that a direct purchaser's sales and pricing data may be relevant to matters at issue in similar antitrust actions. *See In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) (direct purchasers' sales data were "relevant" to the issue of damages); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1190-91 (11th Cir. 2003), *remanded to* 223 F.R.D. 666 (S.D. Fla. 2004) (direct purchasers' sales data were relevant and discoverable for the purpose of evaluating the propriety of class certification). Though Rite Aid claims otherwise, no court has *ever* held that a direct purchaser's sales and pricing data were irrelevant as a matter of law.[4]

Documents and information regarding Rite Aid's sales and pricing of Ovcon 35 and other CHCs are, at minimum, relevant to: (1) Rite Aid's damage claims; and (2) whether Barr is entitled to raise a "pass-on" defense under the "cost-plus" exception to *Hanover Shoe, Inc. v. United Shoe Machinery Co.*, 392 U.S. 481 (1968).[5] Indeed, Rite Aid's own expert witness relied on this sales data in his expert report. (*See* May 18, 2007 Expert Report of Keith Leffler at ¶ 70 ("As a substitute for purchasing data, I have obtained pharmacy dispensing data . . . from

---

[4] Rite Aid repeatedly invokes *Hanover Shoe, Inc. v. United Shoe Machinery Co.*, 392 U.S. 481 (1968), as if that case somehow absolves it of its obligation to produce relevant documents and information. *Hanover Shoe **did not*** hold that a direct purchaser's sales "are irrelevant as a matter of law" as Rite Aid claims. (Opp'n at 5.) Rather, *Hanover Shoe* held that in certain circumstances not present here, a direct purchaser's sales data—even if relevant—should not be produced for policy reasons. *See Hanover Shoe v. United Shoe*, 392 U.S. 481, 491-94 (1968); *see also In re Vitamins*, 198 F.R.D. at 299 ("*Hanover Shoe* and its progeny did not render irrelevant plaintiffs' individualized [sales] data because defendants are not seeking discovery of this data in order to assert a pass-on defense . . .").

[5] Additionally, Rite Aid concedes that the sales and pricing data requested by Barr are relevant to the claims of other classes of plaintiffs in this coordinated proceeding. (*See* Opp'n at 7.) The "Indirect Purchaser Plaintiffs" are consumers and third party payors who allege that they have been damaged by paying too much for Ovcon 35. Because *Hanover Shoe* does not apply to claims brought by indirect purchasers, Rite Aid cannot reasonably claim that *Hanover Shoe* disallows discovery of sales and pricing data relevant to these claims.

5

individual plaintiffs. These data are based on actual units [sold] at the counter.").) Accordingly, this information is relevant and must be produced.[6]

### A. Documents and Information Regarding Rite Aid's Sales and Pricing of Ovcon 35 and Other Combined Hormonal Contraceptives Are Relevant to Rite Aid's Damage Claims and Must Be Produced.

Rite Aid's entire case is founded on a "but-for" world in which a generic version of Ovcon 35 would have been available for its purchase and resale beginning in 2004. Rite Aid's damages, according to its own expert, therefore depend on: (1) the price of a hypothetical generic version of Ovcon 35, (2) the percent of Ovcon 35 purchases that would have been replaced by generic Ovcon 35 purchases, and (3) the percent of Ovcon 35 purchases that would have been replaced with purchases of other branded and generic CHCs. To accurately evaluate the impact of a 2004 version of generic Ovcon 35 (and, by extension, the amount of Rite Aid's damages), it is necessary to look to sales and pricing data for similar drugs from the same period. Even the direct purchaser plaintiffs' expert economist agrees, noting that "[w]hile data reflecting actual prices, market shares, and purchase volumes [following Balziva's October 2006 entry] are available, *these same quantities have to be estimated in the but-for world involving earlier generic entry dates.*" (May 18, 2007 Expert Report of Jeffrey J. Leitzinger, Ph.D., at 29 (emphasis added).) Rite Aid does not dispute this point.[7]

---

[6] Notably, Rite Aid bears the burden of proving that the sales information requested by Barr is not relevant and should not be produced. *See Peskoff v. Faber*, Civ. No. 04-526, 2006 WL 1933483, at *2 (D.D.C. July 11, 2006) ("The party resisting discovery based on relevance 'bears the burden of demonstrating that the information sought is not legally relevant.'"). Rite Aid has not carried its burden here.

[7] Rite Aid cites the decision of this Court in *Vitamins*. As in this case, the defendants in *Vitamins* moved to compel the production of the sales data to enable them to determine the amount of overcharges allegedly suffered by the plaintiffs. Though the defendants' motion was ultimately denied, Chief Judge Hogan expressly recognized that individualized sales data was relevant to the issue of damages. *In re* Vitamins, 198 F.R.D. at 301.

Indeed, Rite Aid's position regarding the relevance of its sales and pricing data is completely undermined by its own expert witness's reliance on this data. (*Compare* Opp'n at 5 ("Downstream Discovery Is Not Relevant") *with* Leffler Report at ¶ 71 ("I then take the switching rates ***from the dispensing data*** [*i.e.*, Rite Aid's sales data] and extrapolate them based on Barr's own predictions for market penetration.") (emphasis added) *and id.* ("To calculate the 'but-for' generic switching rate, I take the individual plaintiffs' actual rates ***from the dispensing data*** and then extrapolate these based on the percentage growth underlying Barr's predictions.") (emphasis added).) The data relied on by Rite Aid's expert includes some of Rite Aid's market share and pricing data for Ovcon 35.

Rite Aid's reliance on this data in its expert report, by definition, renders it relevant to the claims and defenses in this litigation. Given that Rite Aid has decided to produce some of its sales and pricing information, Barr is entitled to discover the remainder. *See*, *e.g.*, *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (party producing documents is not the "sole arbiter" of what relevant documents to produce and what not to produce); *Whitbeck v. Vital Signs*, 163 F.R.D. 398, 399 (D.D.C. 1995) ("the party presenting evidence cannot merely choose how much to disclose but must submit his or her evidence to the adversarial process."). Rite Aid should not be permitted to pick and choose what relevant information it will produce to Barr.

> **B.    Documents and Information Regarding Rite Aid's Sales and Pricing of Ovcon 35 and Other Combined Hormonal Contraceptives Are Relevant and Discoverable Under the Cost-Plus Exception to *Hanover Shoe*.**

*Hanover Shoe* explicitly allows a manufacturer to raise a "pass-on" defense where a direct purchaser sells the product at issue through "cost-plus" sales—*i.e.*, where a direct purchaser's pricing of the product is determined by its cost from the manufacturer plus a set additional amount. *See Hanover Shoe*, 392 U.S. at 494; *see also Illinois Brick Co. v. Illinois*, 431

7

U.S. 720, 736 (1977). Barr should be allowed to discover Rite Aid's sales and pricing data in order to determine whether Rite Aid sells Ovcon 35 on a cost-plus basis to indirect purchasers. Such discovery would permit Barr to assess whether, under the clear authority of *Hanover Shoe*, it is entitled to raise a pass-on defense to Rite Aid's claims. Rite Aid does not dispute this point.

Because Rite Aid's sales and pricing data for Ovcon 35 and other CHCs are relevant to the claims and defenses in this litigation, Barr's motion to compel this information should be granted.

### III. RITE AID HAS FAILED TO SUBSTANTIATE ANY CLAIM OF UNDUE BURDEN.

Rite Aid claims—without support—that production of responsive documents and data would be unduly burdensome. However, the law in this District is clear: "the party opposing discovery based on burden 'must make a specific showing, **supported by declaration**, as to why the production sought would be unreasonably burdensome.'" *Peskoff v. Faber*, No. 04-526, 2006 WL 1933483, at *2 (D.D.C. July 11, 2006) (emphasis added); *see also Williams v. Johanns*, 235 F.R.D. 116, 123 (D.D.C. 2006) ("like every other judge, I will not even consider claims of burdensomeness without an affidavit specifying exactly why this is so."). Rite Aid has failed to provide a declaration outlining why each of Barr's discovery requests is unduly burdensome and thus has deprived the Court of information necessary to evaluate its claim.[8] On this basis alone, Rite Aid's argument should be rejected.

---

[8] For example, Rite Aid has not offered any estimates of potential costs, time demands, or any other objective facts relevant to this analysis. Rite Aid claims that responding to Barr's requests would require it to "gather six years of worth of this individualized prescription sales data." (Opp'n at 10.) But Barr has only requested data for Ovcon 35 and other CHCs; though Rite Aid may very well have filled "several hundred million prescriptions each year," Opp'n at 11, Barr has only requested a small amount of this information. Rite Aid also claims that to obtain the data requested by Barr, "a program would have to be written to search the relevant files and extract information" and that Barr's requests "call for the production of documents at the store level. . .
(Continued…)

Rite Aid attempts to rely on this Court's decision in *Vitamins*. But the facts of *Vitamins* (the only case cited by Rite Aid on this issue) are easily distinguishable from those here. Defendants in *Vitamins* sought to compel the production of data regarding "thousands of different products" sold by the plaintiffs, data which would consist of "literally every document relating to the businesses of the plaintiffs selling those products." *In re Vitamins*, 198 F.R.D. at 298-99. Barr seeks the production of documents and information regarding only Ovcon 35 and its generic equivalents (which have, for the most part, already been produced), and other CHCs. Rite Aid has not and cannot reasonably claim that the small imposition created by Barr's discovery requests at all approaches that faced by the *Vitamins* plaintiffs.

In any event, the sworn testimony of Rite Aid's Vice President of Pharmaceutical Purchasing belies its claim of burden. Specifically, Rite Aid's Vice President of Pharmaceutical Purchasing testified that Rite Aid maintains much of the information requested by Barr in a central database. (*See* Oct. 19, 2006 Dep. Tr. of David Vercurevich at 151-52 (describing a "central database" in which Rite Aid maintains its purchasing data, prescription dispensing data, patient records, accounts payable and receivable, and inventory data.)

Accordingly, because Rite Aid has offered only conclusory statements—statements that are belied by the testimony of its own officer—in support of its burdensomeness argument, this argument should be rejected.[9]

---

." (*Id*. at 10-11.) But Rite Aid has not provided any information about why such considerations should foreclose Barr's discovery of relevant information.

[9] Rite Aid has claimed that documents and information regarding CHCs other than Ovcon 35 and its generic equivalents are not relevant to the claims in this litigation. Rather than outline this argument in its opposition brief, Rite Aid has incorporated the direct purchaser plaintiffs' argument on this issue. (*See* Opp'n at 12.) Barr likewise refers the Court to its arguments regarding the relevance of this information, included in its Reply to Direct Purchaser Plaintiffs' Opposition to Barr's Motion to Compel, filed on July 24, 2007.

**IV.    RITE AID'S SUPPLY AGREEMENT IS NOT DUPLICATIVE OF OTHER DISCOVERY AND MUST BE PRODUCED.**

Rite Aid claims that it need not produce its supply agreement with McKesson Corporation ("McKesson") because this agreement duplicates other documents already produced. Given that Rite Aid bears the burden of showing why discovery should not be compelled, it must identify these "other documents." *See Alexander v. Fed. Bureau of Investigation*, 194 F.R.D. 299, 302 (D.D.C. 2000) ("[b]y simply objecting to the plaintiffs' request without specifically referring to any documents already produced or describing the relevant search already performed, Mrs. Clinton has not met her burden of demonstrating that this request is in fact 'unreasonably cumulative or duplicative'"); *cf. Peskoff v. Faber*, 230 F.R.D. 25, 28 (D.D.C. 2005) ("[a]bsent any specific representation of duplication . . . this Court cannot find that the defendant has shown good cause for the entry of a protective order"). By failing to identify any such documents, Rite Aid has not met its burden. Nor could it as none of the documents produced by Rite Aid outline the terms on which Rite Aid purchased Ovcon 35 from McKesson, nor were these terms discussed in detail during the deposition of Rite Aid's Vice President of Pharmaceutical Purchasing.[10] (*See* Vercurevich Dep. Tr. at 136-37 ("Q. Under the McKesson agreement, which manufacturer discounts would qualify to be passed on to Rite Aid? A. I don't know that off the top of my head.").) For this reason alone, Barr's motion to compel the McKesson agreement should be granted.

---

[10]   Even if Rite Aid's witness had testified extensively regarding the rebates, discounts, and other terms applicable to Rite Aid's purchases of Ovcon 35 from McKesson, Barr is still entitled to have discovery of the supply agreement. *See In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003) (defendant's argument that deposition testimony would be duplicative on the ground that the information sought was available in documents already produced rejected because "the two forms of discovery are not equivalent.").

Though Rite Aid claims that its supply agreement with McKesson is duplicative of other discovery, its true concern appears to be that the "terms of this master agreement [are] among its most closely held and confidential information." (Opp'n at 13.) Barr does not dispute the confidentiality of Rite Aid's supply agreement. But such concerns are not material here—there is a protective order in place safeguarding such information from disclosure. Rite Aid has not shown that the protective order is, in any manner, insufficient to satisfy its confidentiality concerns. Accordingly, because Rite Aid has failed to substantiate its purported concerns regarding confidentiality and because Rite Aid's McKesson supply agreement contains relevant information not available from any other source, it must be produced.[11]

## V. DOCUMENTS REGARDING THE EXISTENCE, SCOPE, AND TERMS OF RITE AID'S ORAL JOINT PROSECUTION AGREEMENT WITH THE FTC ARE NOT PRIVILEGED AND MUST BE PRODUCED.

Contrary to Rite Aid's assertion, Barr does not seek discovery of privileged material exchanged between Rite Aid attorneys and FTC attorneys; rather, Barr seeks discovery of documents regarding *the agreement itself*—that is, documents regarding the existence, terms, and scope of the agreement. Such documents are not privileged and discoverable. *See*, *e.g.*, *Mineba Co., Ltd. v. Pabst*, 228 F.R.D. 13, 16 (D.D.C. 2005) (only an oral joint defense agreement "whose *existence, terms and scope are proved by the party asserting it*[ ] may be enforceable" (emphasis added)). Rite Aid does not dispute this point; thus, Barr's motion to compel these documents should be granted.[12]

---

[11] Barr has produced countless documents it regards as highly confidential, including internal e-mails and memoranda, business plans, pricing models, forecasts, and other documents. Rather than refuse to produce these documents, Barr designated them as "highly confidential" pursuant to the Joint Protective Order Governing Discovery, entered by the Court on April 5, 2006.

[12] In the alternative, Barr requests that the Court order Rite Aid to produce a log of all purportedly privileged communications and documents exchanged between it and the FTC under this agreement.

## **CONCLUSION**

For all of the foregoing reasons, Barr respectfully requests that the Court order Rite Aid to produce documents and information responsive to its discovery requests, including: (1) documents and information regarding CHCs other than Ovcon 35 and its generic equivalents, (2) documents and information regarding Rite Aid's sales and pricing of Ovcon 35 and other CHCs, (3) Rite Aid's supply agreement with McKesson Corporation, and (4) documents regarding Rite Aid's joint prosecution agreement with the FTC.

Date: July 24, 2007                               Respectfully submitted,

                                                     */s/ Karen N. Walker*
Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Chong S. Park (D.C. Bar # 463050)
Patrick M. Bryan (D.C. Bar # 490177)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, District of Columbia  20005
Telephone: (202) 879-5000
Facsimile: (202) 979-5200

*Counsel for Barr Pharmaceuticals, Inc.*