**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF COLORADO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*,<br><br>Defendants. | Civil Action No. 1:05-cv-2182-CKK |
| MEIJER, INC., *et al.*,<br><br>Plaintiffs,<br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*,<br><br>Defendants. | Civil Action No. 1:05-cv-2195-CKK |
| WALGREEN CO., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*,<br><br>Defendants. | Civil Action No. 1:06-cv-494-CKK |

| | | |
|---|---|---|
| CVS PHARMACY, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06-cv-795-CKK |
| | ) | |
| WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**JOINT REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT AND DIRECT PURCHASER PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Devin M. Laiho
Assistant Attorney General
Consumer Protection Section
1525 Sherman Street, 5th Floor
Denver, Colorado 80203

Elinor R. Hoffmann
Margaret D. Martin
Assistant Attorneys General
Antitrust Bureau
New York State Office of the Attorney General
120 Broadway, 26th Floor
New York, New York 10271

Linda P. Nussbaum
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, New York 10022

Eric L. Cramer
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103

Scott E. Perwin
Kenny Nachwalter P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131

Steve D. Shadowen
Monica L. Rebuck
Hangley Aronchick Segal & Pudlin
30 North Third Street, Suite 700
Harrisburg, Pennsylvania 17101

[Additional counsel listed on signature pages]

**TABLE OF CONTENTS**

| | Page |
|---|---|
| ARGUMENT | 1 |
| I. THE SUPPOSED "PRESUMPTION" IN FAVOR OF RULE-OF-REASON TREATMENT IS IRRELEVANT | 1 |
| II. BARR'S ARGUMENTS AGAINST APPLICATION OF THE *PER SE* RULE ARE WITHOUT MERIT | 2 |
| A. Barr's Reliance on *BMI* Is Without Merit | 3 |
| B. Barr's Characterization of the Agreement as an "Exclusive Supply" Agreement Is Without Merit | 4 |
| III. BARR'S ASSERTED PROCOMPETITIVE JUSTIFICATIONS ARE IRRELEVANT | 5 |
| IV. BARR'S ATTEMPTS TO DISTINGUISH PLAINTIFFS' CASES ARE WITHOUT MERIT | 7 |
| CONCLUSION | 9 |

**TABLE OF AUTHORITIES**

Page

Cases

*Arizona v. Maricopa County Medical Society*,
457 U.S. 332 (1982) .................................................................... 2, 3, 5

*Augusta News Co. v. Hudson News Co.*,
269 F.3d 41 (1st Cir. 2001) .................................................................... 7

*Broadcast Music, Inc. v. CBS, Inc.*,
441 U.S. 1 (1979) .................................................................... 3

*California Dental Ass'n v. Federal Trade Comm'n*,
526 U.S. 756 (1999) .................................................................... 6

*Engine Specialities, Inc. v. Bombardier Ltd.*,
605 F.2D 1 (1st Cir. 1979) .................................................................... 4, 7

*Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*,
493 U.S. 411 (1990) .................................................................... 2

*Freeman v. San Diego Ass'n of Realtors*,
322 F.3d 1133 (9th Cir. 2003) .................................................................... 3, 6-7

*Geneva Pharms. Tech. Corp. v. Barr Laboratories, Inc.*,
386 F.3d 485 (2d Cir. 2004) .................................................................... 4

*In re Cardizem CD Antitrust Litigation*,
332 F.3d 896 (6th Cir. 2003) .................................................................... 7, 8

*In re Cardizem CD Antitrust Litigation*,
105 F. Supp. 2d 682 (E.D. Mich. 2000) .................................................................... 5

*In re Ciprofloxacin Hydrochloride Antitrust Litigation*,
261 F. Supp. 2d 188 (E.D.N.Y. 2003) .................................................................... 5

*In re Lorazepam & Clorazepate Antitrust Litigation*,
467 F. Supp. 2d 74 (D.D.C. 2006) .................................................................... 4

*In re Terazosin Hydrochloride Antitrust Litigation*,
352 F. Supp. 2d 1279 (S.D. Fla. 2005) .................................................................... 8

*Leegin Creative Leather Products v. PSKS, Inc.*,
127 S. Ct. 2705 (2007) .................................................................. 5

*National Society of Professional Engineers v. United States*,
435 U.S. 679 (1978) ...................................................................... 6

*New York v. Saint Francis Hospital*,
94 F. Supp. 2d 399 (S.D.N.Y. 2000) ................................................ 3

*Palmer v. BRG of Georgia, Inc.*,
498 U.S. 46 (1990) ........................................................................ 4

*Palmer v. BRG of Georgia, Inc.*,
874 F.2d 1416 (11th Cir. 1989) ..................................................... 4, 7

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
792 F.2d 210 (D.C. Cir. 1986) ...................................................... 7

*Texaco, Inc. v. Dagher*,
547 U.S. 1 (2006) .......................................................................... 3

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
344 F.3d 1294 (11th Cir. 2003) ..................................................... 6, 8

Plaintiff States and Direct Purchaser Plaintiffs respectfully submit this joint reply memorandum in support of Plaintiff States' Motion for Summary Judgment and Direct Purchaser Plaintiffs' Motion for Partial Summary Judgment. In light of the number of pages that have already been devoted to the parties' cross-motions for summary judgment, Plaintiffs will be as brief as possible.[1]

The dispute between Plaintiffs and Barr is a legal one: whether the *per se* rule applies. Barr does *not* dispute Plaintiffs' contention that, if the *per se* rule applies, summary judgment on the existence of a violation is appropriate. Nor does Barr dispute any of the factual premises underlying Plaintiffs' invocation of the *per se* rule. The only dispute before the Court is one about the law, and Barr is wrong about the law.

**ARGUMENT**

**I. THE SUPPOSED "PRESUMPTION" IN FAVOR OF RULE-OF-REASON TREATMENT IS IRRELEVANT.**

Barr concedes that at least "some" horizontal market-allocation agreements are illegal *per se*. Barr Br. at 21. The relevant issue, therefore, is whether the Agreement is one of those *per se* illegal agreements. Barr barely addresses that issue in its brief.

Instead, Barr argues at length that the rule of reason is the "presumptive" standard in section 1 cases. Barr Br. at 18-22. As we have explained in response to Barr's own motion for summary

[1] Among other things, Plaintiffs will not repeat their responses to: (i) pages 5 through 17 of Barr's responsive memorandum, which are essentially a repeat of the "Background" section of Barr's November 14, 2007 Motion for Summary Judgment; or (ii) Barr's repeated reliance on the alleged inaction of the FTC's Merger Division, which Plaintiffs disposed of in footnote 1 of their respective memoranda in opposition to Barr's Motion for Summary Judgment.


judgment,[2] this principle is irrelevant here.  In cases governed by an ***established*** *per se* rule, such as the rule condemning horizontal market-allocation agreements, the Supreme Court has expressly and repeatedly held that lower federal courts may not disregard the rule simply because *other* restraints (including other restraints that may be part of the same agreement) are usually evaluated under the rule of reason.

For example, in *Arizona v. Maricopa County Medical Society*, 457 U.S. 332 (1982), the district court had declined to apply the *per se* rule against horizontal price-fixing based in part on its view that the rule of reason "'is the preferred method of determining whether a particular practice is in violation of the antitrust law.'" *Id.* at 336 n.2 (quoting district court opinion).  The Supreme Court held that the district court had committed reversible error by applying the rule of reason.  *Id.* at 344-48.  *See also FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 432 (1990) (lower court erred in failing to apply *per se* rule, since such rules "have the same force and effect as any other statutory commands").  Barr's opposition ignores these holdings.

## II. BARR'S ARGUMENTS AGAINST APPLICATION OF THE *PER SE* RULE ARE WITHOUT MERIT.

In Plaintiffs' motion, we demonstrated that the Agreement: (i) was horizontal, i.e., between actual or potential competitors; and (ii) allocated all sales of Ovcon 35 Products[3] in the United States to Warner Chilcott for five years.  Barr ***does not dispute either fact***.  Its arguments against the *per se* rule are purely legal arguments, and they do not succeed.

---

[2] *See* Direct Purchaser Plaintiffs' Memorandum of Points and Authorities in Opposition to Barr's Motion for Summary Judgment at 7-9; Plaintiff States' Memorandum of Points and Authorities in Opposition to Barr's Motion for Summary Judgment at 4-5.

[3] Plaintiffs use this term to refer to Ovcon 35 and its AB-rated generic equivalents.

        A.        Barr's Reliance On *BMI* Is Without Merit

Relying on *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1 (1979), Barr argues that it is guilty of only "literal" horizontal market allocation, in the same way that the members of BMI and ASCAP were deemed guilty only of "literal" price fixing. *BMI* is of no relevance here. In that case, the Supreme Court concluded that the members of ASCAP and BMI were in fact not marketing competing goods (i.e.., were not horizontal competitors), but were instead partners in a joint venture that was able to offer a more efficient product that would not otherwise exist. *See BMI*, 441 U.S. at 22 (blanket license offered by ASCAP was a different product from the compositions of individual artists). As the Court explained a few years later, the reasoning used in *BMI* applies only to cases in which the conspirators have integrated their assets and formed a partnership or joint venture, so that "the partnership is regarded as a single firm competing with other sellers in the market." *Maricopa County*, 457 U.S. at 356.[4] The so-called *BMI* defense does *not* apply to agreements "among independent competing entrepreneurs." *Id.* at 357.

Barr does not dispute that it was preparing to enter, and intended to enter, the market with a competing generic version of Ovcon 35, nor that it stated as much publicly.[5] The Agreement is therefore a horizontal agreement, and Barr's reliance on *BMI* fails.

---

[4]    *See also Texaco Inc. v. Dagher*, 547 U.S. 1 (2006) (joint venture partners do not violate section 1 by agreeing on the price of the product sold by the joint venture) (citing *BMI*). *Cf. Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147-49 (9th Cir. 2003) (*BMI* single-entity defense was inapplicable where the defendant associations did not function as an economic unit in providing the services whose prices were fixed); *New York v. Saint Francis Hospital*, 94 F. Supp. 2d 399, 417 (S.D.N.Y. 2000) (rejecting defense based on *BMI* where the defendants had not created any new product, and granting the plaintiffs' motion for summary judgment on a *per se* theory).

[5]    *See* News Release, *Barr's Generic Ovcon-35 Tablets Approved* (April 23, 2004) (announcing Barr's intention to begin immediately marketing generic Ovcon 35 if Warner Chilcott chose not to exercise its option under the Agreement) (Ex. 5 in Plaintiffs' Appendix).

B. Barr's Characterization of the Agreement as an "Exclusive Supply" Agreement Is Without Merit

Barr's attempt to euphemize the Agreement as an "exclusive supply" agreement rather than a market-allocation agreement likewise is unpersuasive. While there is ample evidence (canvassed elsewhere) that the supply relationship was merely a pretext to disguise the Agreement's actual purpose, Barr's problem is more fundamental: a horizontal market-allocation agreement does not lose its horizontal status simply because it may also create a vertical relationship between the parties. The Supreme Court has squarely rejected Barr's argument. *See Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46 (1990) (exclusive license agreement containing an agreement not to compete was illegal *per se*). *See also Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1 (1st Cir. 1979) (exclusive distribution agreement containing agreement not to compete was illegal *per se*)*; Palmer v. BRG of Georgia, Inc.*, 874 F.2d 1417, 1432 (11th Cir. 1989) ("[i]t is firmly established that entities in a seemingly vertical relationship may be capable of horizontal restraints if they are actual or potential competitors") (Clark, J., dissenting).[6]

The *Cipro* decision, cited by Barr, supports Plaintiffs' position rather than Barr's. The dispositive difference between *Cipro* and this case is that, in *Cipro*, the defendant (Bayer) owned a patent. The court declined to apply the *per se* rule not because of the supply relationship between Bayer and Barr[7] but because, in the court's view, the plaintiffs in that case failed to show that the market-allocation agreement "impose[d] restraints with anticompetitive effects broader than the

---

[6] An exclusive supply agreement is evaluated under the rule of reason *only* when the parties to the agreement are not actual or potential competitors. *See, e.g., Geneva Pharms. Tech. Corp. v. Barr Laboratories, Inc.*, 386 F.3d 485, 508-10 (2d Cir. 2004) (exclusive agreement between raw material manufacturer and generic drug manufacturer); *In re Lorazepam & Clorazepate Antitrust Litigation*, 467 F. Supp. 2d 74, 81 (D.D.C. 2006).

[7] Barr was a defendant in the case.

exclusionary effects of Bayer's patent." *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 261 F. Supp. 2d 188, 257 (E.D.N.Y. 2003).[8] In fact, the court expressly found that the agreement was horizontal notwithstanding its supply provisions. *Id.* at 240-41.[9]

## III. BARR'S ASSERTED PROCOMPETITIVE JUSTIFICATIONS ARE IRRELEVANT

Contrary to Barr's assertions, an antitrust defendant cannot escape application of a *per se* rule by offering procompetitive justifications for the challenged restraint, plausible or otherwise. Such an assertion "indicates a misunderstanding of the *per se* concept." *Maricopa County*, 457 U.S. at 351. The Supreme Court recently reaffirmed this principle. *See Leegin Creative Leather Products v. PSKS, Inc.*, 127 S. Ct. 2705, 2712 (2007) (*per se* rule applied by lower courts "rendered irrelevant any procompetitive justifications for [the defendant's] pricing policy").

Barr's contrary argument is based on *California Dental*, a case having nothing to do with the treatment of procompetitive justifications in a *per se* case. *California Dental* considered whether the Court should apply "quick look" analysis to a horizontal agreement among a group of dentists

---

8 In this case, of course, Ovcon 35 is not subject to patent protection of any kind, so there is no need to determine whether the Agreement exceeded the scope of such protection. *See* pages 7-8 *infra*.

9 Barr refers to deposition testimony given by Dr. Rubinfeld, Plaintiff States' economic expert. Dr. Rubinfeld's expert opinion was that Barr's conduct was anticompetitive. *See* Rubinfeld Report (12/11/06); Rubinfeld Disgorgement Report (12/11/06); Rubinfeld Rebuttal Report (1/8/07). In response to a hypothetical question, Dr. Rubinfeld stated that an agreement that allows for the expansion of output for one differentiated product by delaying the market entry of another differentiated product would not be "*per se*, anticompetitive." Rubinfeld Dep. at 65-66. Of course, generic and branded Ovcon are not differentiated products. Moreover, Dr. Rubinfeld has not offered any opinion on the legal standard to be applied in this case, and such an opinion would be both outside his expertise and irrelevant to the legal issue before the Court. *See In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 682, 694 (E.D. Mich. 2000) (opinion of defendant's expert that agreement should be analyzed under the rule of reason rather than the *per se* rule inappropriately rendered an opinion on an issue of law resting solely within the province of the Court, and would not be considered), *aff'd*, 332 F.3d 896 (6th Cir. 2003).

to limit certain forms of advertising. The parties before the Court did not argue for *per se* treatment.[10] Indeed, the Court acknowledged that, in *per se* cases, harm to competition is presumed rather than demonstrated through market analysis. *See California Dental Ass'n v. FTC*, 526 U.S. 756, 779 (1999).

Barr is equally mistaken in suggesting that the anticompetitive aspects of the Agreement were somehow "ancillary" to other, efficiency-enhancing elements. Barr Br. at 34. There were no such efficiency-enhancing elements. In fact, the alleged "efficiencies" identified by Barr (such as the continued promotion and sustained sales of branded Ovcon 35) are simply the inherent consequences of an absence of generic competition. They are the fruits of Warner Chilcott's extended monopoly, courtesy of the Agreement. Thus, Barr's argument "confirms rather than refutes the anticompetitive purpose and effect of its agreement." *National Society of Professional Engineers v. United States*, 435 U.S. 679, 693 (1978).

It is ironic that one of the largest generic manufacturers in the U.S. wants to argue that the public is better off without generic competition. Such an argument, in addition to being implausible,[11] is not cognizable. As the Supreme Court has explained, the purpose of antitrust analysis is not "to decide whether a policy favoring competition is in the public interest . . . . [T]hat policy decision has been made by the Congress." *National Society of Professional Engineers*, 435 U.S. at 692. *See also Freeman v. San Diego Ass'n of Realtors*, 332 F.3d 1133, 1152 (9th Cir. 2003)

---

[10] As we have noted previously, Barr's assertion that the Supreme Court's decision "rejected application of the *per se* rule" (Br. at 24 n.12) is incorrect. *See California Dental Ass'n v. FTC*, 526 U.S. 756, 759 (1999) (identifying the two issues in the case, neither of which has anything to do with *per se* rules).

[11] *See Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 344 F.3d 1294, 1311 n.27 (11th Cir. 2003) (rule-of-reason analysis is inappropriate in generic exclusion cases because "the anticompetitive effects of exclusion cannot be seriously debated").

("Antitrust law presumes that competitive markets offer sufficient incentives and resources for innovation, and that cartel pricing leads not to a dedication of newfound wealth to the public good but to complacency and stagnation").[12]

## IV. BARR'S ATTEMPTS TO DISTINGUISH PLAINTIFFS' CASES ARE WITHOUT MERIT.

Barr's attempts to distinguish the cases cited by Plaintiffs are unsuccessful. As an initial matter, Barr makes no effort to distinguish the Supreme Court's holding in *Palmer*, a case in which the defendant also argued in vain that the challenged arrangement was "vertical." *See Palmer*, 874 F.2d at 1423 (district court declined to apply *per se* rule based in part on the defendants' assertion that they were "in a vertical supplier-retailer relationship at the time of the first license agreement"), *rev'd*, 498 U.S. 46 (1990); *see also In re Cardizem CD Antitrust Litigation*, 332 F.3d 896, 903 n.6 (6th Cir. 2003) (finding horizontal agreement illegal *per se* notwithstanding vertical provision); *Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1 (1st Cir. 1979) (same).[13] Barr and Warner Chilcott cannot camouflage a horizontal market-allocation agreement with vertical terms and thereby avoid *per se* antitrust liability.

Barr contends that *Cardizem* is distinguishable because the generic manufacturer in that case agreed not to market *both* infringing *and* non-infringing generic products. Barr Br. at 38. In this case, Ovcon has no patent protection, so there are only non-infringing products. Given that the public indisputably is entitled to *non-infringing* competition, this distinction makes the Agreement

---

[12] In each of the cases cited by Barr, there was a genuine joint venture offering services that none of the joint venture partners could have offered on their own. *See, e.g.*, *Augusta News Co. v. Hudson News Co.*, 269 F.3d 41 (1st Cir. 2001) (joint venture of magazine distributors formed to meet retailer demands); *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210 (D.C. Cir. 1986) (joint venture creating a nationwide van line).

[13] Barr also makes no effort to distinguish the *Engine Specialties* case.

between Barr and Warner Chilcott *worse* (not better) than the agreement between HMR and Andrx involving Cardizem CD.[14] In *Terazosin*, the Eleventh Circuit made clear that, but for the existence of Abbott's patent, it would have affirmed the district court's ruling that the challenged agreement was illegal *per se*. *See Valley Drug*, 344 F.3d at 1304 ("If this case merely involved one firm making monthly payments to potential competitors in return for their exiting or refraining from entering the market, we would readily affirm the district court's order").[15] Here, given that Warner Chilcott *has* no patent rights, the patent analysis described at length in *Valley Drug* is irrelevant and the restraints imposed by the Agreement plainly are unlawful *per se*.

Barr also attempts to distinguish the "explicit" findings in *Cardizem* and *Terazosin* that the relevant product market consisted of the branded drug (Cardizem CD and Hytrin, respectively) and its AB-rated generic equivalents, suggesting that the facts of those cases were somehow unique. Barr Br. at 41.[16] However, a decision to apply the *per se* rule does not depend on any inquiry into market definition or market power, since such an inquiry (if necessary at all) is made only *after* a court has decided *not* to apply the *per se* rule. As Barr itself previously has acknowledged in this

---

[14] Barr's statement that the defendants in *Cardizem* agreed not to compete "in markets unrelated to the [their] patent settlement" (Br. at 38) is incorrect. The only market affected by the illegal agreement was the market for Cardizem CD and its AB-rated generic equivalents. *See* 332 F.3d at 911.

[15] On remand, the district court undertook the patent-related analysis ordered by the Court of Appeals and concluded once again that, since the agreement imposed restraints that went beyond Abbott's patent rights, it was illegal *per se*. *See In re Terazosin Hydrochloride Antitrust Litigation*, 352 F. Supp. 2d 1279, 1314-15 (S.D. Fla. 2005).

[16] For reasons explained elsewhere (*see* Direct Purchaser Plaintiffs' Memorandum of Points and Authorities in Opposition to Barr's Motion for Summary Judgment at 23-29), Direct Purchaser Plaintiffs contend that the facts which led the courts in *Cardizem* and *Terazosin* to define the market as the branded drug and its AB-rated generic equivalents are the very same facts which compel the same conclusion in this case. However, neither the Court nor the jury will need to resolve this issue if the Court agrees with Plaintiffs' arguments regarding the applicability of the *per se* rule.

litigation, market definition is not an issue in a *per se* case. *See* Defendant Barr Pharmaceuticals, Inc.'s Reply to Direct Purchaser Plaintiffs' Opposition to Barr's Motion to Compel (D.E. 123 in Case No. 05-2195) at 8 n.7 ("market definition is not a relevant consideration in a *per se* antitrust case").

**CONCLUSION**

For the reasons stated above and in our initial moving papers, Plaintiff States' Motion for Summary Judgment and Direct Purchaser Plaintiffs' Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

/s/ Devin M. Laiho
Devin M. Laiho
Assistant Attorney General
Consumer Protection Section
State of Colorado
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Telephone: (303) 866-5079

Elinor R. Hoffmann
Margaret D. Martin
Assistant Attorneys General
Antitrust Bureau
New York State Office of the Attorney General
120 Broadway, 26th Floor
New York, New York 10271
Telephone: (212) 416-8288

*Lead Counsel for the Plaintiff States*

/s/ Scott E. Perwin
Scott E. Perwin
Lauren C. Ravkind
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-1000

*Counsel for Walgreen Plaintiffs*

/s/ Steve D. Shadowen
Steve D. Shadowen
Monica L. Rebuck
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, Pennsylvania 17101
Telephone: (717) 364-1010

*Counsel for Plaintiffs Rite Aid Corp. and Rite Aid Hdqtrs. Corp.*

/s/ Linda P. Nussbaum
Linda P. Nussbaum (D.C. Bar No. 483254)
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, New York 10022
Telephone: (212) 687-1980

Daniel Berger
Eric L. Cramer
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000

Thomas M. Sobol
David S. Nalven
HAGENS BERMAN SOBOL & SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700

William Isaacson (D.C. Bar No. 414788)
Tanya Chutkan (D.C. Bar No. 420478)
BOIES SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727

Richard B. Drubel (D.C. Bar No. 334359)
Kimberly H. Schultz
BOIES SCHILLER & FLEXNER LLP
26 South Main Street
Hanover, New Hampshire 03755
Telephone: (603) 643-9090

Bruce E. Gerstein
Kevin S. Landau
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, New York 10011
Telephone: (212) 398-0055

                    Dianne M. Nast
                    RODA NAST P.C.
                    801 Estelle Drive
                    Lancaster, PA 17601
                    Telephone: (717) 892-3000

*Executive Committee for the Direct Purchaser Class*

318514.2